20 Civ. 3389 (AT) (GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRYL CHALMERS, DARREN CONNORS, GLENN MENDEZ, JAMES NOVA, and FATIMA Q. ROSEMOND, on behalf of themselves and all others similarly situated, and AFSCME DISTRICT COUNCIL 37 LOCAL 2507, on behalf of its members,

                                          Plaintiffs,

-against-

CITY OF NEW YORK,

                                          Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

### JAMES E. JOHNSON

*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-315
New York, New York 10007-2601

*Of Counsel*: Amanda C. Croushore
Tel.: (212) 356-4074

Matter No.: 2020-020833

# **TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS** ........................................................................................................ 2

**ARGUMENT** ............................................................................................................................. 3

    **POINT I:**     **PLAINTIFFS HAVE FAILED TO ADMINISTRATIVELY EXHAUST THEIR TITLE VII CLAIMS** ............................................... 3

    **POINT II:**     **THE WHITE MEMBERS OF THE CLASS CANNOT STATE A DISPARATE TREATMENT CLAIM UNDER TITLE VII OR THE CHRL** ..........................................................................................4

    **POINT III:**     **ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE BUILDINGS INSPECTORS ARE NOT PROPER COMPARATORS** ................................................................................. 6

**CONCLUSION** ........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Adeniji v. Admin. for Children Servs.*,
    43 F. Supp. 2d 407 (S.D.N.Y. 1999), *report and recommendation adopted
    by* 43 F. Supp. 2d 407 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999) ....................11

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d Cir. 2016)................................................................................................4

*Brunson-Bedi v. N.Y. (Hudson Valley DDSO)*,
    15-CV-9790 (NSR), 2018 U.S. Dist. LEXIS 74031 (S.D.N.Y. May 1, 2018)....................3

*Collier v. City of N.Y.*,
    07-CV-532 (PKC), 2009 U.S. Dist. LEXIS 14814 (S.D.N.Y. Feb. 24, 2009) ....................3

*Duplan v. City of New York*,
    888 F.3d 612 (2d Cir. 2018) ...............................................................................................2

*Foss v. Coca Cola Enters.*,
    07-CV-1322 (JS), 2011 U.S. Dist. LEXIS 34945 (E.D.N.Y. Mar. 31, 2011) .....................9

*Fowlkes v. Ironworkers Local 40*,
    790 F.3d 378 (2d Cir. 2015)................................................................................................3

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000)................................................................................................10

*Henny v. New York State*,
    842 F. Supp. 2d 530 (S.D.N.Y. 2012)...............................................................................10

*Hill v. City of N.Y.*,
    136 F. Supp. 3d 304 (E.D.N.Y. 2015) ................................................................................9

*Holcomb v. Iona Coll.*,
    521 F.3d 130 (2d Cir. 2008)................................................................................................6

*Hollingsworth v. Theatrical Teamsters Union Local 817 IBT*,
    16-CV-4700 (JMA), 2020 U.S. Dist. LEXIS 80948 (E.D.N.Y. May 7, 2020) ..................6

*Krasner v. HSH Nordbank AG*,
    680 F. Supp. 2d 502 (S.D.N.Y. 2010)................................................................................5

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
    274 F.3d 683 (2d Cir. 2001)................................................................................................3

*Leibovitz v. N.Y.C. Transit Auth.*,
    252 F.3d 179 (2d Cir. 2001)...................................................................................................5

*Levin v. Yeshiva Univ.*,
    96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001)................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).........................................................................5

*Liburd v. Bronx Leb. Hosp. Ctr.*,
    07-CV-11316 (HB), 2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009) ....................8

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)................................................................................................6

*Longe v. City of New York*,
    802 Fed. App'x 635 (2d Cir. Feb. 21, 2020).......................................................................2

*Malcolm v. Honeoye Falls-Lima Educ. Ass'n (HFLEA)*,
    684 Fed. App'x 87 (2d Cir. 2017).......................................................................................6

*Shaw v. McHugh*,
    12-CV-6834 (CS), 2015 U.S. Dist. LEXIS 39410 (S.D.N.Y. Mar. 26, 2015),
    *aff'd*, 641 Fed. App'x 95 (2d Cir. 2016)..............................................................................8

*Shumway v. UPS*,
    118 F.3d 60 (2d Cir. 1997)..................................................................................................8

*Thompson v. No. Am. Stainless, LP*,
    562 U.S. 170 (2011).............................................................................................................6

*Toussaint v. NY Dialysis Servs.*,
    230 F. Supp. 3d 198 (S.D.N.Y. 2017), *aff'd* 706 Fed. App'x 44 (2d Cir. 2017)...............11

*Tsombanidis v. W. Haven Fire Dep't*,
    352 F.3d 565 (2d Cir. 2003)................................................................................................6

*Ulrich v. Moody's Corp.*,
    13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438 (S.D.N.Y. 2017), *aff'd* 721
    Fed. App'x 17 (2d Cir. 2018)............................................................................................10

*Varughese v. Mount Sinai Med. Ctr.*,
    12-CV-8812 (CM) (JCF), 2015 U.S. Dist. LEXIS 43758 (S.D.N.Y. Mar. 27,
    2015), *aff'd* 693 Fed. App'x 41 (2d Cir. 2017)....................................................................6

*Warth v. Seldin*,
    422 U.S. 490, 501 (1975) .................................................................................................. 5

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir 2018) ............................................................................................... 6

## **Statutes and Other Authorities**

42 U.S.C. § 1981 ............................................................................................................... 2, 6

42 U.S.C. § 1983 .................................................................................................................. 2

42 U.S.C. § 2000e *et seq.* .............................................................................................. *passim*

Fed. R. Evid. 201 ................................................................................................................. 9

N.Y. City Admin. Code § 8-101 *et seq.* ......................................................................... *passim*

**PRELIMINARY STATEMENT**

Plaintiffs allege that the City of New York has engaged in both intentional and unintentional racial discrimination against Fire Department of the City of New York ("FDNY") fire protection inspectors and associate fire protections inspectors (collectively "FPIs") because they are 70% non-white, as compared to New York City Department of Buildings ("DOB") building inspectors ("BIs"), who are 50% non-white. Their claims suffer from several fundamental flaws and should be dismissed.

First, plaintiffs' Title VII claims are premature because they have not yet received right-to-sue letters from the EEOC. As such, those claims must be dismissed.

Second, the purported class of FPIs that the named plaintiffs seek to represent consists of both non-white *and white* FPIs. The white FPIs cannot both support plaintiffs' theory of racial discrimination against non-white FPIs and claim that they were discriminated against on account of their *own* race. As such, the white FPIs cannot state a disparate treatment claim, and cannot be class members with persons who allege such a claim.

Finally, and most significantly, the allegations in the Complaint itself make clear that DOB BIs are not sufficiently similar to serve as comparators to FDNY FPIs: they have different educational requirements, different experiential requirements, different training, different hours, different supervisors, and different union representation, just to name a few. Moreover, the disparities in the two positions are further highlighted by the descriptions in the relevant Notices of Examination. In short, because of the disparities between the two positions, BIs cannot serve as a comparison group to support plaintiffs' theory of racial discrimination against FPIs.

Accordingly, plaintiffs' Complaint should be dismissed in its entirety.

**STATEMENT OF FACTS**

In this putative class action, plaintiffs allege that defendant the City of New York (the "City") discriminates against FPIs who work for the FDNY because 70% of FPIs are non-white and 30% are white.[1]  Their central claim is that the City pays DOB BIs—50% of whom are non-white and 50% of whom are white—more than it does the FPIs, allegedly because of the respective racial composition of each of the groups.  Plaintiffs allege that the pay differential between FPIs and BIs "cannot be explained by differences in job duties," which they allege are "substantially similar."  Compl. ¶ 12.  They also allege that the educational and experiential requirements for each job are "similar," and that the "topics covered" in their respective trainings are "virtually identical although the FPI training takes longer."  *Id.*

Plaintiffs assert that the alleged discrimination they complain of is implemented both intentionally and through the facially neutral practice of paying "almost all FPIs" the minimum amounts allowed under their collective bargaining agreements ("CBA") while paying "virtually all" BIs "more than the minimum" amounts under their CBAs.  Compl. ¶ 15.  Plaintiffs allege that this policy has a disparate impact on racial minorities.  *Id.*

Plaintiffs seek to represent a class of FPIs—both white and non-white members— and a subclass of only non-white FPIs.  The class brings disparate treatment (intentional) racial discrimination claims under 42 U.S.C. Section 1981 (through Section 1983),[2] Title VII of the

---

[1]   This Statement of Facts is derived from the allegations in the Complaint. The material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.  A copy of the Complaint is attached as Exhibit A to the Declaration of Amanda C. Croushore ("Croushore Decl.").

[2]   To the extent that plaintiffs assert a Section 1981 claim separate and apart from their Section 1983 claim, it must be dismissed, as "Section 1981 does not provide a right of action against the City, as it is a state governmental unit."  *Longe v. City of New York*, 802 Fed. App'x 635  (2d Cir. Feb. 21, 2020) (summary order) (citing *Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018)).

2

Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "CHRL"). The sub-class brings disparate impact (unintentional) racial discrimination claims under Title VII and the CHRL.

## ARGUMENT

### POINT I

### PLAINTIFFS HAVE FAILED TO ADMINISTRATIVELY EXHAUST THEIR TITLE VII CLAIMS

"It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). In particular, "[a] Plaintiff cannot file suit for alleged violations of Title VII until she timely files charges with the EEOC *and obtains a letter of a right to sue*." *Brunson-Bedi v. N.Y. (Hudson Valley DDSO)*, 15-CV-9790 (NSR), 2018 U.S. Dist. LEXIS 74031, at *9 (S.D.N.Y. May 1, 2018) (citing 42 U.S.C. § 2000e-5(f)(3)) (emphasis added). *See also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court.") (internal quotation marks omitted).

Here, plaintiffs admit that the purported class representatives have each "filed a charge of discrimination with the" EEOC but that they "have not yet exhausted the administrative exhaustion requirement under Title VII because they have not yet received right-to-sue letters from the EEOC." Compl. ¶ 20. As a result, their Title VII claims must be dismissed. *See Collier v. City of N.Y.*, 07-CV-532 (PKC), 2009 U.S. Dist. LEXIS 14814, at *9 (S.D.N.Y. Feb. 24, 2009) (dismissing Title VII claim "[b]ecause the plaintiff commenced this action without first filing the necessary EEOC complaint and attaining a right-to-sue letter").

3

**POINT II**

**THE WHITE MEMBERS OF THE CLASS CANNOT STATE
A DISPARATE TREATMENT CLAIM UNDER TITLE VII
OR THE CHRL**

Plaintiffs' proposed class is made up of the entire body of FPIs working for the City, including both white and non-white FPIs. However, the white members of this proposed class do not allege that they were discriminated against on the basis of their *own* race. As such, they cannot state a claim under Title VII or the CHRL.³ Nonetheless, plaintiffs purport to assert a disparate treatment claim on behalf of all putative class members under both statutes.

Fundamentally, to assert a claim for relief, "a plaintiff must have a cause of action under the applicable statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). Both Title VII and the CHRL require plaintiffs to plead that they were discriminated against *because of their own race*. Specifically, Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of **such individual's** race*, color, religion, sex, or national origin." 42 USCS § 2000e-2. Likewise, the CHRL states, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer[,] . . . *because of* the actual or perceived . . . race . . . *of any person* . . . [t]o discriminate against **such person** in compensation or in terms, conditions or privileges of employment." CHRL § 8-107(1)(a)(3) (emphasis added).

Here, to remain consistent with plaintiffs' theory of the case, the white FPIs claim that they were discriminated against on the basis of *their non-white colleagues' race*, not their

---

³   Plaintiffs' Section 1981 disparate treatment claim must also be dismissed for the reasons provided in Point III *infra*.

4

own. In other words, the white FPIs do not allege that they were discriminated against because they are white. Instead, they allege that they have received lower compensation because they are grouped with a large number of non-white FPIs.

But only "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others . . . ." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). That is because the principle of "prudential standing . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* at 509.[4]

In the context of discrimination claims, an individual who is not in the allegedly discriminated-against category cannot claim to be the victim of discrimination on that basis, or to claim discrimination on behalf of someone who is in the subject category. *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 515-16 (S.D.N.Y. 2010) ("Krasner's concern for a woman's right to be free of workplace discrimination, and offense taken upon being surrounded by conduct believed to impinge on that right, admirable as it may be, does not make Krasner himself a victim of gender-based discrimination within the scope of Title VII's protections."). *Cf. Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 185-86 (2d Cir. 2001) (Prudential standing issue not presented because the plaintiff was "a member of the protected class that she claims was subjected to discrimination," but citing cases in which "courts . . . have denied standing to plaintiffs alleging injury because of third-party discrimination").[5]

---

[4] The Supreme Court has since questioned whether this is actually a "standing" issue, describing it instead as a question of whether the plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387, 188 L. Ed. 2d 392 (2014)). The principle remains the same regardless of how it is categorized. *Id.*

[5] Moreover, the white FPIs cannot claim "associational discrimination" here. The Second Circuit has held that "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the

5

Accordingly, the white FPI's disparate treatment claims under Title VII and the CHRL must be dismissed.

## POINT III

### ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE BUILDINGS INSPECTORS ARE NOT PROPER COMPARATORS

To state a disparate treatment claim—whether under Section 1981, Title VII or the CHRL—a plaintiff must allege "'more favorable treatment of employees not in the protected group' to whom the plaintiff is 'similarly situated in all material respects.'" *Malcolm v. Honeoye Falls-Lima Educ. Ass'n (HFLEA)*, 684 Fed. App'x 87, 90 (2d Cir. 2017) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311-12 (2d Cir. 2015) (Title VII)); *Hollingsworth v. Theatrical Teamsters Union Local 817 IBT*, 16-CV-4700 (JMA) (AYS), 2020 U.S. Dist. LEXIS 80948, at *21 (E.D.N.Y. May 7, 2020) (Section 1981); *Varughese v. Mount Sinai Med. Ctr.,* 12-CV-8812 (CM) (JCF), 2015 U.S. Dist. LEXIS 43758, at *107 (S.D.N.Y. Mar. 27, 2015), *aff'd* 693 Fed. App'x 41 (2d Cir. 2017) (summary order) (CHRL). Similarly, for a disparate impact claim to survive, "plaintiffs must . . . utilize the appropriate comparison groups." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 576-77 (2d Cir. 2003). "They must first identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." *Id*. (Title VII); *Levin v.*

---

employee's own race" and thus has standing. *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (emphasis in the original). However, this rule cannot be said to extend beyond the scope of interpersonal relationships to include any and all white individuals who "work with" or "share the same job title as" a non-white individual. *See*, *e.g.*, *Thompson v. No. Am. Stainless, LP*, 562 U.S. 170 (2011) (fiancé); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 128 (2d Cir 2018) (same-sex romantic association).

*Yeshiva Univ.*, 96 N.Y.2d 484, 493-96, 730 N.Y.S.2d 15, 21-23, 754 N.E.2d 1099 (2001) (CRHL).

Here, plaintiffs attempt to draw similarities between FPIs and BIs to show that the latter are appropriate comparators. However, the opposite becomes apparent from the facts asserted in the Complaint—the differences between the two groups are in fact overwhelming. For example, the Complaint alleges:

- "The educational requirements for an FPI include an *associate's degree in any major* (generally 60 credits); a high school diploma and *20 college credits* with at least nine credits in specified subjects related to FPI work; or completion of specified types of plumbing programs." Compl. ¶ 36 (emphasis added).

    o By contrast, "[t]he educational requirements for a BI include at least *60 college credits* towards a degree *in civil engineering, engineering technology, architecture, architectural technology, construction management, or a closely related field.*" *Id.* ¶ 37 (emphasis added).

- "The experiential requirements [for FPIs] include at least three years of full-time experience in fields directly *related to fire protection or of inspection of facilities* for compliance with fire and building codes and other safety standards." *Id.* ¶ 36.

    o By contrast, "[t]he experiential requirements [for BIs] include at least two years of full-time experience working *in the construction trades or related work or a license as a professional engineer, registered architect, or site safety manager issued by New York State or the City.*" *Id.* ¶ 37.

- Plaintiffs state that FPI training is longer, but then plaintiffs acknowledge that the BI training is focused because "BI hires receive only the portions of the training that deal with the specific area in which they are expected to work." *Id.* ¶¶ 40, 41.

- Plaintiffs admit that, unlike BIs, "FPIs inspect one- and two-family housing only in connection with joint task forces." *Id.* ¶ 45.

    o Plaintiffs further acknowledge that FPI inspections are limited in scope, as their full title suggests, in that "they inspect fixtures and equipment that are related to fire suppression, such as sprinklers, alarms, standpipes, and gravity tanks; evacuation plans and maintenance of safe ingress and egress issues; gas tanks, oil and gas pipelines, and terminals; and hazardous activities such as storing explosives, radioactive waste, fireworks, and other flammable materials." *Id.*

7

- According to plaintiffs, FPIs perform "annual or other periodic inspections," which they contend BIs "largely" do not. *Id.* ¶ 46.

- "BIs are authorized to direct issuance of certificates of occupancy after final construction signoff or certificates of assembly for places where large groups of people gather." *Id.* ¶ 49.

    o "FPIs are authorized to direct issuance of permits authorizing continued use of facilities that previously received certificates of occupancy or assembly." *Id.*

- While plaintiffs argue that "FPIs . . . [can] authorize renewals of certificates of fitness" *id.* ¶ 50, and "BIs . . . do not," plaintiffs also admit that these certificates are based on agency-specific, Fire Department criteria, *see id.*

- Plaintiffs contend that "FPIs are peace officers and . . . . have the power to issue criminal summonses and court appearance tickets[,] while BIs generally lack that power." *Id.* ¶ 53.

- Not even the titles are readily comparable. There are four levels of FPIs – from "Fire protection inspector I" through "Associate fire protection inspector III." *Id.* ¶ 60.

    o There are just three levels of BIs – "Apprentice inspector," "Inspector; Senior inspector," and Associate inspector; Principal inspector." *Id.*

- Their hours expectations are different: "BIs are paid on a 40 hour week whereas FPIs have been paid on either a 35 or 37.5 hour week." *Id.* ¶ 119.

- They have different unions and CBAs: "Local 2507, representing the FPIs, and Allied Building Inspectors, Local 211, International Union of Operating Engineers ("Local 211"), which represents the building inspectors, have negotiated separate [CBAs] with the City." *Id.* ¶ 165.

These differences invalidate plaintiffs' claims and make clear that BIs are not proper comparators for FPIs. *See, e.g., Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997) (Plaintiff's comparators were insufficient because they had different supervisors, among other things); *Shaw v. McHugh*, 12-CV-6834 (CS), 2015 U.S. Dist. LEXIS 39410, at *25 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 641 Fed. App'x 95 (2d Cir. 2016) ("Distinctions in assignment, reporting structure, responsibilities and workplace standards undercut Plaintiff's argument that his comparators are similarly situated."); *Liburd v. Bronx Leb. Hosp. Ctr.*, 07-CV-11316 (HB), 2009 U.S. Dist. LEXIS 61131, at *18 n.8 (S.D.N.Y. Apr. 2, 2009) (Comparators not similarly situated

as they "were employed by a different department and had different responsibilities than Plaintiff."); *Foss v. Coca Cola Enters.*, 07-CV-1322 (JS) (WDW), 2011 U.S. Dist. LEXIS 34945, at *22-23 (E.D.N.Y. Mar. 31, 2011) (Noting that although "similarly situated employees do not necessarily need to share the same job or position[,] or report to the same supervisor[,] . . . the elastic nature of the similarly situated inquiry can only stretch so far," and finding that there were "too many differences to properly consider" plaintiff and her comparators "similarly situated."). *Cf. Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 335-36 (E.D.N.Y. 2015) (finding that FDNY and EMS dispatchers were adequate comparators to 911 dispatchers, where—unlike here—the dispatchers all "work[ed] together and in tandem to perform the same function of answering public emergency calls and dispatching the appropriate emergency resources, sometimes conducting these calls jointly. . . [and] the 911 Operators and the City's other dispatcher units are part of the PSAC, and work on the same floor in the same building as the other dispatcher units").

Moreover, the relevant Notices of Examination for FPIs and BIs highlight additional differences between the two jobs. For example, persons considering applying to be an FPI are told that the position involves working "under supervision," and "perform[ing] work in the conduct of inspections to detect violations of laws that are intended to reduce or eliminate fire hazards or assist in extinguishing fires." *See* Croushore Decl. Exh. B.[6] Although they inspect certain equipment and facilities, in other instances they "witness" such tests, and they "research applicable codes." *Id*.

---

[6] The Court may take judicial notice of the requirements and descriptions of the FPI and BI positions contained in the Notices of Examination because they are "not subject to reasonable dispute" in that they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(3).

In contrast, persons applying for the BI position are told that their work will involve "general supervision," and that the position involves "perform[ing] technical work in the inspection of construction, repair or alteration of structures." Croushore Decl. Exh. C. BIs also "study architectural and engineering designs of buildings . . . to obtain details for inspections." *Id*. BIs are authorized to "issue violations for unsafe conditions" as well as "stop work orders." *Id*. They also "check all material used as to quality" and "explain and interpret building codes and regulations." *Id*. Finally, BIs "may train and supervise" apprentices. *Id*.

Given the litany of apparent differences in responsibilities, plaintiffs cannot credibly contend that they have proffered an appropriate comparator position. As such, in accord with the case law above, all their claims should be dismissed.

In addition, plaintiffs' attempts to draw comparisons between FPIs and BIs in New York City and other cities and states (*see* Compl. ¶¶ 103-108) and between FPIs and inspectors from other Departments within the City structure (*see id.* ¶¶ 110-12, 114) also fall short for one particularly glaring reason: They do not allege the racial composition of the FPIs and BIs in those other purported comparator cities and states, or the inspectors for other City Departments. Without that information, the comparison is useless. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (A plaintiff must show that that he was "treated . . . less favorably than a similarly situated employee *outside his protected group*.") (emphasis added).

Finally, BIs as a group do not make for good comparators to FPIs because, according to plaintiffs' own figures, many of BIs and FPIs would appear to be of the same race. *See* Compl. ¶¶ 9, 31-32 (50% of BIs are non-white). *See Ulrich v. Moody's Corp.*, 13-CV-8 (VSB), 2017 U.S. Dist. LEXIS 50438, *39 (S.D.N.Y. 2017), *aff'd* 721 Fed. App'x 17 (2d Cir. 2018) (summary order) (where alleged comparators in a disparate treatment claim are in the

10

same protected class as plaintiff, any inference of discrimination is negated); *Henny v. New York State*, 842 F. Supp. 2d 530, 555 n.24 (S.D.N.Y. 2012) (Because there were other African-American employees who were not terminated, this "undermine[d] any inference that [the] [d]efendants [fired the plaintiff] based on discriminatory animus against African-Americans"); *Adeniji v. Admin. for Children Servs.*, 43 F. Supp. 2d 407, 426 n.7 (S.D.N.Y. 1999), *report and recommendation adopted by* 43 F. Supp. 2d 407 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999) (because the comparators identified by the plaintiff were the same race as the plaintiff, he could not "claim that employees outside the Title VII protected class were treated differently than those within the protected class"); *Toussaint v. NY Dialysis Servs.*, 230 F. Supp. 3d 198, 212-13 (S.D.N.Y. 2017), *aff'd* 706 Fed. App'x 44 (2d Cir. 2017) (same).

Of course, the obviously appropriate comparators for the non-white FPIs are the white FPIs. Presumably, that comparison is not made because there is no meaningful difference in pay or treatment between those two groups. As such, and because plaintiffs have failed to allege that BIs are proper comparators to FPIs, all of plaintiffs' claims—both disparate treatment and disparate impact—must fail.

## **CONCLUSION**

For the foregoing reasons, each of plaintiffs' claims is insufficient as a matter of law and should be dismissed. Defendant thus respectfully requests that its Motion to Dismiss the complaint be granted, that the complaint be dismissed with prejudice, that the relief requested in the complaint denied in all respects, that judgment be entered for defendant, and that defendant be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         September 21, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-315
New York, New York 10007-2601
(212) 356-4074
acrousho@law.nyc.gov


By:      /s/ Amanda C. Croushore
         Amanda C. Croushore
         Assistant Corporation Counsel