# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARRYL CHALMERS, DARREN CONNORS,
GLENN MENDEZ, JAMES NOVA, and
FATIMA Q. ROSEMOND, on behalf of themselves
and all other similarly situated, and

AFSCME DISTRICT COUNCIL 37 LOCAL 2507,
on behalf of its members,

                Plaintiffs,

      v.

CITY OF NEW YORK,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 20-cv-03389 (AT) (GWG)


## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT


**VALLI KANE & VAGNINI LLP**

Robert J. Valli, Jr.
Sara Wyn Kane
Matthew L. Berman
600 Old Country Road
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248
rvalli@vkvlawyers.com
skane@vkvlawyers.com
mberman@vkvlawyers.com

**MEHRI & SKALET PLLC**

Cyrus Mehri (*pro hac vice* motion to be filed)
Michael D. Lieder (*pro hac vice*)
Aisha Rich (*pro hac vice*)
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
arich@findjustice.com

*Attorneys for Plaintiffs*

# Table of Contents

INTRODUCTION ................................................................................................... 1

FACTUAL ALLEGATIONS .................................................................................. 2

STANDARD OF REVIEW .................................................................................... 8

ARGUMENT .......................................................................................................... 9

    I.    PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT BUILDING INSPECTORS ARE SIMILARLY SITUATED TO FIRE PROTECTION INSPECTORS. ............................................................................................... 9

        1.    The Court Should Not Consider the Extrinsic Evidence Offered by The City in Deciding the Motion to Dismiss. ........................................ 10

        2.    Regardless of Whether the Court Takes Judicial Notice of the Notices of Examination, the Court Should Deny the City's Motion to Dismiss Because a Jury Plausibly Could Find That BIs and FPIs Are Similarly Situated. .......................................................................... 12

    II.    WHITE FIRE PROTECTION INSPECTORS HAVE VIABLE DISPARATE TREATMENT CLAIMS UNDER TITLE VII AND THE NYCHRL. ........................................................................................ 18

    III.    PLAINTIFFS' TITLE VII CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY DILIGENTLY SOUGHT THEIR RIGHT-TO-SUE LETTERS, WHICH WERE ISSUED ON SEPTEMBER 16, 2020 ........ 22

CONCLUSION .................................................................................................... 25

# Table of Authorities

Page(s)

**Cases**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)........................................................................................18

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012)....................................................................................8, 12

*Andrews v. City of New York*,
118 F. Supp. 3d 630 (S.D.N.Y. 2015)..........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................8, 14

*Bagley v. Yale Univ.*,
42 F. Supp. 3d 332 (D. Conn. 2014)...........................................................................24

*Bakeer v. Nippon Cargo Airlines, Co.*,
No. 09 CV 3374 (RRM), 2011 U.S. Dist. LEXIS 90102 (E.D.N.Y. July 25,
2011) ...............................................................................................................................9

*Bartman v. Shenker*,
5 Misc. 3d 856 (N.Y. Sup. Ct. 2004) ..........................................................................22

*Ben-Levy v. Bloomberg*,
518 Fed. Appx. 17 (2d Cir. 2013) ...............................................................................17

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020)..................................................................................................20

*Branch v. State Univ. of N.Y.*,
No. 18-cv-9516 (AT), 2020 U.S. Dist. LEXIS 127422 (S.D.N.Y. July 20,
2020) ...............................................................................................................................8

*Brown v. Daikin Am., Inc.*,
756 F.3d 219 (2d Cir. 2014).............................................................................9, 10, 12

*Fort Bend Cty. v. Davis*,
139 S. Ct. 1843 (2019)..................................................................................................23

*Foss v. Coca Cola Enters.*,
No. 07-CV-1322 (JS) (WDW), 2011 U.S. Dist. LEXIS 34945 (E.D.N.Y. Mar.
31, 2011) .................................................................................................................12, 14

*Gordon v. City of New York*,
   No. 14 Civ. 6115 (JPO) (JCF), 2016 U.S. Dist. LEXIS 118962 (S.D.N.Y.
   Sept. 2, 2016) ............................................................................................................16

*Hill v. City of New York*,
   136 F. Supp. 3d 304 (E.D.N.Y. 2015) .....................................................................15

*Holcomb v. Iona Coll.*,
   521 F.3d 130 (2d Cir. 2008)....................................................................................20

*Hourahan v. Ecuadorian Line*,
   No. 95 Civ. 10698 (AGS), 1996 U.S. Dist. LEXIS 19435 (S.D.N.Y. Dec. 31,
   1996) ........................................................................................................................23

*Kauffman v. Maxim Healthcare Servs.*,
   No. 04-CV-2869 (TCP), 2006 U.S. Dist. LEXIS 47514 (E.D.N.Y. July 13,
   2006) ........................................................................................................................20

*Kennedy v. Empire Blue Cross & Blue Shield*,
   989 F.2d 588 (2d Cir. 1993).....................................................................................23

*Klaes v. Jamestown Bd. of Pub. Utils.*,
   No. 11-CV-606, 2013 U.S. Dist. LEXIS 45872 (W.D.N.Y. Mar. 29, 2013)..........25

*Krasner v. HSH Nordbank AG*,
   680 F. Supp. 2d 502 (S.D.N.Y. 2010)......................................................................21

*Lapko v Grand Mkt. Intl. Corp.*,
   2020 N.Y. Misc. LEXIS 4641 (N.Y. Sup. Ct. Aug. 12, 2020) ................................22

*Leibovitz v. N.Y.C. Transit Auth.*,
   252 F.3d 179 (2d Cir. 2001).....................................................................................21

*Liburd v. Bronx Lebanon Hospital Center*,
   07-CV-11316 (HB), 2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009) .......14

*Mandala v. NTT Data, Inc.*,
   No. 19-2308, 2020 U.S. App. LEXIS 29985 (2d Cir. Sep. 21, 2020) ......................9

*Marzano v. Comput. Sci. Corp.*,
   91 F.3d 497 (3d Cir. 1996).......................................................................................16

*Mazzocchi v. Windsor Owners Corp.*,
   No. 11 Civ 7913 (LBS), 2012 U.S. Dist. LEXIS 112479 (S.D.N.Y. 2012) ....21, 22

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).................................................................................................9

*McGuinness v. Lincoln Hall*,
   263 F.3d 49 (2d Cir. 2001) ........................................................................................12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013) ......................................................................................17

*O'Toole v. Cty. of Orange*,
   No. 16 Civ. 2059 (NSR), 2019 U.S. Dist. LEXIS 38001 (S.D.N.Y. Mar. 8,
   2019) ..........................................................................................................................10

*Parra v. Bashas, Inc.*,
   536 F.3d 975 (9th Cir. 2008) .....................................................................................15

*Puglisi v. Underhill Park Taxpayer Assoc.*,
   947 F. Supp. 673 (S.D.N.Y. 1996) ............................................................................18

*Rodriguez v. Town of Ramapo*,
   412 F. Supp. 3d 412 (S.D.N.Y. 2019) ..........................................................10, 12, 13, 14

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ......................................................................................11

*Shaw v. McHugh*,
   No. 12-CV-6834 (CS), 2015 U.S. Dist. LEXIS 39410 (S.D.N.Y. Mar. 26,
   2015) ..........................................................................................................................14

*Shumway v. UPS*,
   118 F.3d 60 (2d Cir. 1997) ........................................................................................14

*Smith v. Xerox Corp.*,
   196 F.3d 358 (2d Cir. 1999) ......................................................................................17

*Staehr v. Hartford Fin. Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) ......................................................................................11

*Sullivan v. Little Hunting Park Inc.*,
   396 U.S. 229 (1969) ..................................................................................................18

*Thompson v. No. Am. Stainless, LP*,
   562 U.S. 170 (2011) ......................................................................................18, 19, 20

*Trafficante v. Metro. Life Ins. Co.*,
   409 U.S. 205 (1972) ..................................................................................................18

*United States v. City of New York*,
   637 F. Supp. 2d 77 (E.D.N.Y. 2009) .........................................................................16

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir. 2018)...................................................................................20

*Zhang v. Jenzabar, Inc.*,
    No. 12-CV-2988 (RRM) (RER), 2015 U.S. Dist. LEXIS 41254 (E.D.N.Y.
    Mar. 30, 2015)......................................................................................................22

**Statutes**

42 U.S.C. § 1981 ....................................................................................... *passim*

42 U.S.C. § 1982 ...............................................................................................18

42 U.S.C. § 1983 .................................................................................................1

42 U.S.C. § 2000e-1 *et seq.* ("Title VII") ............................................... *passim*

42 U.S.C. § 2000e-1 ...........................................................................................1

42 U.S.C. § 2000e-2 .........................................................................................19

42 U.S.C. § 2000e-2(a) .....................................................................................19

42 U.S.C. § 2000e-3(a) .....................................................................................19

42 U.S.C. § 2000e-5(f)(1) ...........................................................................19, 23

N.Y.C. Admin. Code § 8-101 *et seq.* ("NCHRL") ................................. *passim*

**Rules and Regulations**

29 C.F.R. § 1601.28(a)(2), (d)(2)......................................................................23

Fed. R. Civ. P. 12(b) .........................................................................................11

Fed. R. Evid. 201(b).........................................................................................11

## INTRODUCTION

Five fire protection inspectors or associate fire protection inspectors (together "FPIs")
employed at the Fire Department of New York ("FDNY") and their union allege that the City
pays FPIs less than building inspectors and associate building inspectors ("BIs") employed at the
City's Department of Buildings.  Plaintiffs assert that the pay differences cannot be justified by
business reasons: the two types of employees have similar qualifications, perform similar job
duties, and indeed, FPIs face greater risks to their health and safety in performing their duties
than BIs.  Plaintiffs instead claim that the pay differences are racially discriminatory and that the
City pays FPIs less because FPIs work on a majority non-white workforce, while BIs do not.
Indeed, as discussed further below, the percentage of minority FPIs is so much greater than the
percentage of minority BIs as to trigger a presumption of discrimination under EEOC guidance.
Plaintiffs bring their claims on behalf of themselves and a proposed class and subclass under 42
U.S.C. § 1983 for violations of 42 U.S.C. § 1981,[1] under Title VII of the 1964 Civil Rights Act
("Title VII"), 42 U.S.C. § 2000e-1 *et seq.*, and under the New York City Human Rights Law
("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

The City has filed a motion to dismiss, Dkt. No. 26 ("Def. Mem."), arguing that (1) all of
Plaintiffs' claims fail because BIs are not proper comparators; (2) Plaintiffs cannot state a
disparate treatment claim on behalf of white FPI class members under Title VII or the NYCHRL;
and (3) Plaintiffs' Title VII claims must be dismissed as the EEOC has yet to issue right-to-sue
letters.  All three arguments are meritless.  As discussed more fully below, Plaintiffs have

---

[1]         The City notes that individuals bringing claims that a state actor violated the rights
guaranteed under 42 U.S.C. § 1981 must seek relief under § 1983.  Dkt. 26, Def. Mem. at 2 n.2.
Plaintiffs here have indeed asserted their rights pursuant to § 1983.  *See* Dkt. 6, Compl. at ¶¶ 16,
193-199.  There is no legal defect.

adequately pled that BIs are similarly situated to FPIs.  In addition, long-standing case law recognizes associational discrimination claims under both Title VII and the NYCHRL.  Finally, the Plaintiffs have exercised due diligence to obtain their right-to-sue letters from the EEOC, which were issued on September 16, 2020, and dismissal is not warranted under the circumstances.  For these reasons, the Court should deny the City's motion to dismiss.

## FACTUAL ALLEGATIONS

Plaintiffs are five FPIs employed at FDNY and their union, AFSCME District Council 37 Local 2507.  Dkt. 6, Compl. at ¶¶ 23-28.  FPIs conduct inspections in which they examine buildings, facilities, vehicles, and public activities in New York City to ensure compliance with safety codes, rules, and regulations.  *Id.* at ¶ 1.  The FPI workforce has been both effective at promoting fire safety and profitable for the FDNY.  *Id.* at ¶¶ 3-4.  Notwithstanding the valuable and important work that they do, since at least FY 2008, the City has paid FPIs much less than the BIs assigned to the City's Department of Buildings who perform similar work.  *Id.* at ¶¶ 5-6, 62.  The average salary gap between the two groups has ranged from about $1,600 in 2010 to a high of about $9,000 in recent years.  *Id.* at ¶¶ 6, 69-98.  That salary gap has resulted in a sizable overtime gap and retirement benefits gap as well.  *Id.* at ¶¶ 7-8, 102, 116-138.

For the past 15-20 years, only about 30% of the FPIs have been white.  *Id.* at ¶¶ 2, 31.  By contrast, during this same period, about 50% of BIs have been white.  *Id.* at ¶¶ 14, 32.  Plaintiffs allege that the City pays FPIs less because of the difference in the racial composition of FPIs and BIs, *id.* at ¶¶ 139-141, and has no bona fide business reason to pay BIs more.  *Id.* at ¶¶ 159-164.

Indeed, this pay discrimination is part of a broader pattern of racial discrimination inflicted on FPIs by the City.  FDNY has three groups of employees whom the City recognizes

2

as uniformed as opposed to civilian: firefighters, EMS, and FPIs.  *Id.* at ¶ 142.  In multiple ways, the City treats FPIs as separate from firefighters, who are over 80% white, and—to a lesser extent—as separate from EMS employees, who are about 50% white.  *Id.*  The City has established more generous pension plans for firefighters and for EMS employees than for FPIs. *Id.* at ¶ 145.  The City also provides more generous medical, dental, and educational benefits to firefighters and EMS.  *Id.* at ¶ 146.  In addition, FDNY issues FPIs fewer and inferior safety equipment and protective clothing, *id.* at ¶¶ 10, 147, and treats FPIs separately and unequally when it comes to uniforms and ceremonies, *id.* at ¶¶ 148-149.

The discriminatory treatment of FPIs is not surprising given the City's long history of racial discrimination at FDNY.  *Id.* at ¶¶ 151-158.  During the past 50 years, two large class action lawsuits against the City have resulted in rulings that FDNY has discriminated against African Americans and Hispanics in the hiring of firefighters.  *Id.* at ¶ 151.  In 2017, a new racial discrimination class action lawsuit was filed against the City on behalf of African Americans whose applications for civilian positions with the FDNY were rejected and civilian African American employees who claim that FDNY discriminated against them in favor of white employees in terms of promotion and compensation decisions.  That case is ongoing.  *Id.* at ¶ 158.

The pay disparities between BIs and FPIs cannot be explained by differences in job duties.  *Id.* at ¶ 12.  Indeed, to the extent the two positions differ, those differences justify paying FPIs more than BIs.  *Id.*

FPIs and BIs both work in civil service provisions.  *Id.* at ¶ 34.  The City's Department of Citywide Administrative Services ("DCAS") supervises the examinations administered to applicants for entry-level FPI and BI positions.  *Id.*  The specified educational and experiential

requirements for FPI and BI positions are similar but not identical. *Id.* at ¶ 35. Both may be satisfied with either the requisite education or the requisite experience or a combination of both. *Id.* The educational requirements are similar—both can be satisfied by 60 college credits— except that the BI requirements are more specialized; the experiential requirements are somewhat higher for an FPI. *Id.* at ¶¶ 35-37. The DCAS-administered exams for FPIs and BIs cover similar subject matter and are similar in duration. *Id.* at ¶ 39.

BIs and FPIs have different residency and citizenship requirements, but this is a difference that justifies higher (not lower) pay for FPIs: Unlike BIs, FPIs must reside in the City (despite its higher cost of living) at the time of hire and for two years afterward. FPIs are also required to be U.S. citizens; BIs are not. *Id.* at ¶ 38.

After hire, both FPIs and BIs undergo City-administered training. *Id.* at ¶ 40. The training provided to new FPIs and BIs are virtually identical although FPI training takes longer (80 days) because it is more comprehensive than BI training (30 days). *Id.* at ¶¶ 12, 40-41. The training for both types of employees covers topics related to the construction of buildings, electrical wiring, plumbing, and the functions of machines typically found in buildings. *Id.* at ¶ 41. FPIs receive, however, a comprehensive curriculum whereas BIs only receive the portions of the training that deal with the specific areas in which they are expected to work. *Id.*

Once training is completed, FPIs and BIs have substantially similar job duties. One of the principal duties of both types of employees is to conduct field inspections to ensure conformance with the City's codes and standards and the plans and specifications submitted by or on behalf of property owners. *Id.* at ¶ 42. Field inspections substantially overlap in scope although they are not identical. *Id.* To the extent they differ, FPIs duties tend to be broader and more technical. *Id.* at ¶¶ 44-46. The requirement that buildings and their use comply with plans

and specifications necessitates review of those plans and specifications: both BIs and FPIs review such plans. *Id.* at ¶ 43. The plans and specifications typically are stored on the intranet of the Department of Buildings but FPIs have access to that intranet and review the plans and specifications to perform their duties, just as BIs do. *Id.* In conducting actual inspections, BIs enforce only the City's building codes. FPIs enforce the City's building codes in addition to the City's fire codes. The fire codes are more technical and detailed than the building codes. *Id.* at ¶ 44.

For the most part, FPIs and BIs inspect the same types of buildings. FPI inspections, however, are not limited to buildings. *Id.* at ¶ 45. They also inspect fixtures and equipment related to fire suppression; evacuation plans and maintenance of safe ingress and egress; gas tanks, oil and gas pipelines, and terminals; and hazardous activities such as storing explosives, radioactive waste, fireworks, and other flammable materials. *Id.* BI inspections are largely limited to time periods in which buildings are under construction, repair, alteration, or demolition in response to reported violations. *Id.* at ¶ 46. BI inspections of reported violations are limited to line-of-sight violations. *Id.* FPIs engage in inspections during the same time periods and in response to reported violations but also perform annual or other periodic inspections to ensure that buildings and the activities inside them are being conducted safely in conformance with the applicable codes. FPIs are not limited to line-of-sight violations. *Id.*

FPIs and BIs have virtually identical powers upon concluding an inspection. *Id.* at ¶ 49. If an inspection does not reveal any violations, BIs can issue certificates of occupancy or assembly. Similarly, FPIs can issue permits authorizing continuing use of facilities that previously received certificates of occupancy or assembly. *Id.* These certificates issued by BIs

5

and FPIs have different names but the same effect. *Id.* at ¶ 51. FPIs additionally have the power to issue certificates of fitness for individuals who pass tests administered by FDNY. *Id.* at ¶ 50.

If an inspection reveals violations of applicable codes, standards, plans, and specifications, FPIs are peace officers and BIs are not. *Id.* at ¶ 53. As peace officers, FPIs have the power to issue criminal summonses and court appearance tickets. *Id.* Both FPIs and BIs must testify if a matter proceeds to a hearing. *Id.* And both have the power to issue violations on which fines are levied pursuant to a scheduled list pursuant to the City's rules and regulations. *Id.* In extreme situations, both types of employees can stop projects or vacate occupied buildings. *Id.*

FPIs and BIs also frequently work together on joint task forces. *Id.* at ¶ 54. Currently an average of about 75 FPIs—out of a workforce of 400—are involved in joint task forces with BIs. *Id.* FPIs and BIs generally work on an equal and collaborative footing in the planning and execution of the work of the joint task forces although they may inspect different components of the property during an inspection or other activity conducted by the task force. *Id.* at ¶ 55. For both BIs and FPIs joint task force work is typically performed as an overtime assignment. *Id.* at ¶ 56.

FPI and BI jobs do differ in an important respect: FPIs face substantially greater risks in terms of employee health and safety. *Id.* at ¶¶ 57-59. FPIs frequently must inspect equipment containing hazardous, combustible, flammable materials including oil and gas pipelines, jet fuel transfer terminals, restaurant range hoods, propane tanks, junkyards, and radioactive waste. *Id.* at ¶ 57. FPIs also inspect explosive materials, supervise fireworks displays, and climb water towers on the tops of skyscrapers. *Id.* BIs do not face similar risks to their health and safety. *Id.* at ¶ 58. FPIs may also be required to enter buildings while fires are still smoldering or have only

6

recently been extinguished.  *Id.* at ¶ 59.  The buildings or parts of buildings they inspect have sometimes collapsed.  *Id.*  BIs do not face similar physical risks.  *Id.*

The City's decision to pay FPIs less than BIs cannot be explained by market demands. *Id.* at ¶¶ 103-115.  According to data reported by the Department of Labor, median FPI salary exceeds median BI salary nationally and in other large population states.  *Id.* at ¶¶ 104-105. Additionally, the State of New York pays its fire inspectors more than the City pays FPIs, even though the cost of living in the City is far greater than in the rest of the state, and the structures in the City present fire hazards not experienced in the rest of the state.  *Id.* at ¶ 108.  What's more, the City pays two other groups of city safety inspectors, with job qualifications and duties similar to FPIs, more than it pays FPIs.  *Id.* at ¶¶ 109-115.

The City's discrimination has been carried out through a facially neutral practice— paying almost all FPIs the minimums allowed under their collective bargaining agreements ("CBA") but of paying virtually all BIs more than the minimum under their CBAs.  *Id.* at ¶ 165. This practice has had a disparate impact on racial minorities that cannot be adequately justified through any legitimate business reason.  *Id.* at ¶¶ 165-174.

The City's pay discrimination violates 42 U.S.C. § 1981 enforced under 42 U.S.C. § 1983, Title VII, and the NYCHRL.  The City is liable under all three statutes under a disparate treatment theory, as well as under Title VII and the NYCHRL under a disparate impact theory. *Id.* at ¶¶ 193-226.

The individual Plaintiffs bring the disparate treatment claims on behalf of themselves and a class defined as all persons who have been employed by the City as fire protection inspectors or associate fire protection inspectors in the FDNY at any time between three years prior to the filing of their complaint and the date a class is certified.  *Id.* at ¶ 178.  All of them except plaintiff

Connors, a white FPI, bring the disparate impact claims on behalf of themselves and a subclass defined as all persons who do not self-identify as white and who have been employed by the City as fire protection inspectors or associate fire protection inspectors in the FDNY at any time between three years prior to the filing of their complaint and the date a class is certified.  *Id.*

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the complaint's "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"A plaintiff is not required to provide 'detailed factual allegations,' in the complaint, but must assert 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Branch v. State Univ. of N.Y.*, No. 18-cv-9516 (AT), 2020 U.S. Dist. LEXIS 127422, at *5 (S.D.N.Y. July 20, 2020) (Torres, J.) (quoting *Twombly*, 550 U.S. at 555).  "Ultimately, the facts pleaded in the complaint 'must be enough to raise a right to relief above the speculative level.'"  *Branch*, 2020 U.S. Dist. LEXIS 127422, at *5 (quoting *Twombly*, 550 U.S. at 555).  In assessing whether the plaintiff has done so, the Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks omitted).

Accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' claims easily satisfy the plausibility standard.

## ARGUMENT

**I.    PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT BUILDING INSPECTORS ARE SIMILARLY SITUATED TO FIRE PROTECTION INSPECTORS.**

To evaluate a claim of discrimination brought under section 1981 or Title VII, courts generally use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *Bakeer v. Nippon Cargo Airlines, Co.*, No. 09 CV 3374 (RRM), 2011 U.S. Dist. LEXIS 90102, at *90 (E.D.N.Y. July 25, 2011).  The burden-shifting analysis places the initial burden on plaintiff who must prove a prima facie case of discrimination by a preponderance of the evidence.  *Id.*  "To state a prima facie case of discrimination . . . a plaintiff must allege," among other things, that the adverse action taken by the employer "occurred under circumstances giving rise to an inference of discrimination."  *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) (internal quotation marks omitted).  "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees of other races."  *Id.*

A discrimination plaintiff, however, need not "plead a prima facie case."  *Mandala v. NTT Data, Inc.*, No. 19-2308, 2020 U.S. App. LEXIS 29985, at *11 (2d Cir. Sep. 21, 2020). Instead, in order to survive a motion to dismiss, "a plaintiff [must] 'assert [enough] nonconclusory factual matter . . . to nudge [her] claim[] across the line from conceivable to plausible to proceed.'"  *Id.* (quoting *EEOC v. Port. Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).  And "[o]rdinarily, **[w]hether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss**."  *Brown*, 756 F.3d at 230 (emphasis added) (internal quotation marks omitted).

9

That said, while "evidence of similarly situated comparators is not necessary, a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 436 (S.D.N.Y. 2019) (internal quotation marks omitted). As a general matter, the similarly situated "criterion need not be assessed too literally." *O'Toole v. Cty. of Orange*, No. 16 Civ. 2059 (NSR), 2019 U.S. Dist. LEXIS 38001, *19-20 (S.D.N.Y. Mar. 8, 2019) (citing *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004)). Indeed, "the Court's job is to assess whether a plaintiff has shown enough evidence that similar employees are being treated dissimilarly in comparable situations, such that it would be reasonable to infer that an employer's ultimate motive for the dissimilar treatment is discriminatory animus." *O'Toole*, 2019 U.S. Dist. LEXIS 38001, at *20. Put differently, a plaintiff must establish that "she was similarly situated **in all material respects** to the individuals with whom she seeks to compare herself." *Brown*, 756 F.3d at 230 (emphasis added) (internal quotation marks omitted). What constitutes "all material respects" varies on a case-by-case basis. *Id.* "The plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance,' but need not be 'identical.'" *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). Here, Plaintiffs have pled facts more than sufficient to show, for purposes of a motion to dismiss, that FPIs and BIs are similar in all material respects yet are being treated dissimilarly, and it is plausible that a jury could determine that the City's actual motive for the dissimilar treatment is discriminatory animus or that the City's practices have a disparate impact against the majority-minority FPIs.

1. **The Court Should Not Consider the Extrinsic Evidence Offered by The City in Deciding the Motion to Dismiss.**

At the outset, the Court should reject the City's invitation to consider extrinsic evidence—namely, an amended Notice of Examination for an FPI position dated April 8, 2020 and an amended Notice of Examination for an "Inspector (Construction)" position dated August 14, 2019, *see* Dkt. Nos. 27-2 and 27-3—in connection with its motion to dismiss. *See* Def. Mem. at 9-10 & n.6. "Although the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, [the Second Circuit] ha[s] acknowledged that the court may also consider matters of which judicial notice may be taken." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008). Judicial notice, however, may only be taken of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Ordinarily, where a court takes judicial notice of public documents, it does so in order "to determine what statements [they] contained—but . . . *not for the truth of the matters asserted." Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in original); *accord Staehr*, 547 F.3d at 425-426.

But here, the City asks the Court to consider the Notices of Examination precisely for the supposed truth of the matters asserted. Each Notice contains a section entitled "What the Job Involves." The City asks the Court to infer that the section in each Notice contains a "litany of apparent differences in responsibilities" that makes BIs not "an appropriate comparator position" for FPIs. Def. Mem. at 10. Drawing such an inference would be wrong for at least four reasons. (1) The last sentence of each section states, "This is a brief description of what you might do in this position and does not include all the duties of this position." (2) The City presents no information about who prepared these "brief description[s]" and how knowledgeable they were. (3) A comparison of the two "brief descriptions" reveals many similarities in the duties of FPIs and BIs that the City ignores: both jobs involve "inspections" of properties to determine

compliance with codes or regulations; persons in both jobs "issue violations" and "summons";

the jobs involve "testify[ing] in court" or "assist[ing] in prosecution of cases"; and the jobs

require very similar physical activities. (4) Most important, to consider the Notices of

Examination for the purposes that the City urges would violate the rule that the Court must

"accept as true the factual allegations of the complaint, and construe all reasonable inferences

that can be drawn from the complaint in the light most favorable to the plaintiff." *Anderson*, 680

F.3d at 185.  The appropriate time to consider the Notices of Examination will be after discovery

at the summary judgment or trial stage of the litigation.   For these reasons, Plaintiffs ask that the

Court deny the City's request that it "take judicial notice of the requirements and descriptions of

the FPI and BI positions contained in the Notices."  Def. Mem. at 9.

**2. Regardless of Whether the Court Takes Judicial Notice of the Notices of Examination, the Court Should Deny the City's Motion to Dismiss Because a Jury Plausibly Could Find That BIs and FPIs Are Similarly Situated.**

The City does not argue, and case law does not require, that comparators be identical in

every respect.  *Brown*, 756 F.3d at 230; *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir.

2001) (it is a "misreading" of Second Circuit precedent to hold that "another employee cannot be

similarly situated to a plaintiff unless the other employee had the same supervisor, worked under

the same standards, and engaged in the same conduct."); *Foss v. Coca Cola Enters.*, No. 07-CV-

1322 (JS) (WDW), 2011 U.S. Dist. LEXIS 34945, at *22-23 (E.D.N.Y. Mar. 31, 2011)

("[S]imilarly situated employees do not necessarily need to share the same job or position.  Nor

do they necessarily need to report to the same supervisor.").  The question here is whether a jury

could find that BIs and FPIs are similarly situated.  *Rodriguez*, 412 F. Supp. 3d at 436.  It could.

Paragraphs 33-59 of the Complaint detail, at length, the similarities between the

qualifications and duties of FPIs and BIs. Similarities include:

- Specified educational and experiential requirements for FPIs and BIs may be satisfied with either the requisite education or the requisite experience or a combination of both. Compl. at ¶ 35.  The educational requirements are similar—both can be satisfied by 60 college credits—except that the BI requirements are more specialized; the experiential requirements are somewhat higher for an FPI.  *Id.* at ¶¶ 35-37.

- DCAS-administered exams for FPIs and BIs cover similar subject matter and are similar in duration.  *Id.* at ¶ 39.

- After hire, both FPIs and BIs undergo City-administered training.  *Id.* at ¶ 40.  The training provided to new FPIs and BIs are virtually identical although FPI training takes longer (80 days) because it is more comprehensive than BI training (30 days).  *Id.* at ¶¶ 12, 40-41.

- Once training is completed, FPIs and BIs have substantially similar job duties.  *Id.* at ¶¶ 42-46.

- FPIs and BIs generally inspect the same types of buildings for compliance with the buildings' approved plans and specifications and compliance with building codes and, in the FPIs' case, also the fire code.  *Id.* at ¶¶ 43-45.

- FPIs and BIs have virtually identical powers upon concluding an inspection.  *Id.* at ¶¶ 49-53.

- FPIs and BIs frequently work together on joint task forces.  *Id.* at ¶¶ 54-56.

These allegations are more than sufficient to make it plausible that a jury could ultimately decide the two positions are sufficiently similar such that the majority-minority FPIs should be paid at least as much as BIs.

13

Again, Plaintiffs have not alleged that the FPI and BI positions are identical.  They are not identical.  But absolute identity is not required.  Indeed, most of the differences actually indicate that, if the City should pay one group more than the other on average, it should pay FPIs more than BIs.  As alleged in the Complaint, FPIs receive lower compensation despite receiving more in-depth training on the same subjects, Compl. at ¶¶ 12, 40-41; having peace officer status, *id.* at ¶ 53; being required to live within the bounds of the City (where the cost of living is higher), *id.* at ¶ 38; conducting similar but more technical inspections, *id.* at ¶ 44; and facing greater physical risks, *id.* at ¶¶ 57-59.  These are precisely the sort of allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Four of the five decisions upon which the City relies upon to argue that BIs are not proper comparators to FPIs are readily distinguishable. *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997), *Shaw v. McHugh*, No. 12-CV-6834 (CS), 2015 U.S. Dist. LEXIS 39410 (S.D.N.Y. Mar. 26, 2015), *Liburd v. Bronx Lebanon Hospital Center*, 07-CV-11316 (HB), 2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009), and *Foss v. Coca Cola Enterprises*, 07-CV-1322 (JS) (WDW), 2011 U.S. Dist. LEXIS 34945, at *22-23 (E.D.N.Y. Mar. 31, 2011), were all decided on motions for summary judgment, after discovery.  They raise individual claims of discriminatory termination or suspension, not group claims of discrimination in pay.  Granted, the plaintiff in *Liburd* argued for the first time in her opposition to summary judgment that two white women were paid more than she to try to establish the employer's discriminatory animus, but the court refused to consider that argument because it was newly raised and because the "comparators" were in a different department with "different responsibilities than Plaintiff." 2009 U.S. Dist. LEXIS 61131, at *18 n.8.

14

The fifth decision, *Hill v. City of New York*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015), is far more analogous and, not surprisingly, does not support the City's motion.  In *Hill*, several 911 operators brought individual and class claims of racial discrimination against the City and their union (along with other claims not relevant here).  They alleged that the City treated 911 operators, who were overwhelmingly racial minorities, worse than its other, primarily non-minority, dispatcher units with respect to mandatory overtime and leave usage.  *Id.* at 322-24.  According to the plaintiffs, the dispatchers all "serve the same function" – "answer[ing] emergency calls, provid[ing] intake of caller information, and dispatch[ing] emergency response units."  *Id.* at 324.  The dispatchers "often work in tandem … in response to emergencies, sometimes jointly handling calls."  *Id.*  FPIs and BIs similarly have the same function, including physically inspecting properties for compliance with City codes to further safety in the City, issuing violations and summons to non-complying properties, and testifying or otherwise helping prosecutions.  FPIs and BIs also often work together on joint task forces.  In *Hill*, most 911 Operators and some of the other dispatchers work on the same floor, *id.* at 324-25; in this case, FPIs and BIs have access to the same building plans and specifications.  The court in *Hill* denied the motion to dismiss the discrimination claims, and this Court should do likewise here.[2]

---

[2]     While *Hill*, like this case, may involve an "atypical discrimination claim" in using a comparator group from another agency of the same employer, 136 F. Supp. 3d at 335, it is not unique.  In *Andrews v. City of New York*, 118 F. Supp. 3d 630 (S.D.N.Y. 2015), female City school safety officers claimed that they were paid less than predominantly male special officers in violation of several statutes, including Title VII.  The plaintiffs survived a motion to dismiss and ultimately entered a settlement with the City that included monetary awards to over 5,000 school safety officers and equalization of the pay rates of school safety officers and special officers.  *Id.* at 633-34, 644.  And in *Parra v. Bashas, Inc.*, 536 F.3d 975 (9th Cir. 2008), the Ninth Circuit reversed the denial of class certification to Hispanic employees of a chain of supermarkets catering to Hispanic customers when the employer had higher pay scales for two chains of stores catering primarily to non-Hispanic customers at which most employees were white.  *Id.* at 979.

The cases that the City cites for the proposition that BIs do not make good comparators to FPIs because many BIs and FPIs are of the same race are no more apt.  The City cites only cases involving individual discrimination; it does not offer up any case law involving a similar comparison of entire job groups with sizable differences in racial composition.  Contrary to the City's suggestion, plaintiffs bringing class employment discrimination cases have to show – generally through expert testimony after discovery – only that an employer's decisions or practices produce an "adverse impact" against a protected group, either by showing a statistically significant disparity or that the selection rate for one group is less than 80% of the selection rate for the other.  *See, e.g., United States v. City of New York*, 637 F. Supp. 2d 77, 97-99 (E.D.N.Y. 2009).[3]  Plaintiffs do not have to make such a showing in their complaint.  *Gordon v. City of New York*, No. 14 Civ. 6115 (JPO) (JCF), 2016 U.S. Dist. LEXIS 118962, at *23 (S.D.N.Y. Sept. 2, 2016) ("A disparate impact claim need not allege 'that an employer's policy has had a statistically significant, disproportionate, and negative effect on one protected group as compared to others' in order to survive a motion to dismiss; rather, statistical support for such a claim is unnecessary.").

---

[3]    The Third Circuit explained that the fact that some White employees also were hurt by an employer's actions does not negate a racial discrimination claim:

> Suppose that an employer, who has two black employees, needs to terminate five employees for economic reasons.  Suppose further, that the employer decides to take advantage of this situation to get rid of its two African-American employees; it would still be required to terminate three non-protected employees on account of its financial situation.  Under the district court's analysis, the black employees could not prevail in a discrimination action, even though protected status was the cause for their layoff.

*Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 508-09 n.4 (3d Cir. 1996).

16

Although not necessary for the Complaint to state a claim, a violation of the 80% rule can be calculated from the allegations in the Complaint.  Plaintiffs allege that there were about 625 BIs as of June 30, 2019, of whom about 50% were white, and about 400 FPIs as of the same date, of whom about 30% were white.  Compl. at ¶¶ 9, 12.  Thus, about 312 whites were in the favored job group (BIs) compared to about 120 in the disfavored (FPIs).  By contrast, about 312 racial minorities were in the favored group and about 280 in the disfavored.  White employees were in the favored group about 72% of the time (312/432), while black employees were in the favored group only about 53% of the time (312/592).  Fifty-three divided by 72 is about 74%, less than the 80% threshold.  This level of disparity "establish[es] a prima facie case of disparate impact" and provides "circumstantial evidence of intentional discrimination."  *See Smith v. Xerox Corp.,* 196 F.3d 358, 365-66, 370 (2d Cir. 1999).

For all these reasons, the City's Motion to Dismiss Plaintiffs' Title VII and Section 1981 claims should be denied.

The City's motion has even less merit against Plaintiffs' NYCHRL claim than against Plaintiffs' federal law claims.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims" because the city law must "be construed liberally for the accomplishment of [its] uniquely broad and remedial purposes … even if the challenged conduct is not actionable under federal and state law").  Per the Second Circuit, to survive summary judgment on an NYCHRL claim, a plaintiff only must present "some evidence from which discrimination can be inferred," *Ben-Levy v. Bloomberg*, 518 Fed. Appx. 17, 20 (2d Cir. 2013), which requires only a showing that the plaintiff "has been treated less well at least in part 'because of her [protected characteristic].'"  *Mihalik,* 715 F.3d at 110 (quoting *Williams v.*

17

*N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 39, 40 n.27 (1st Dep't 2009)).  "Some

evidence" should require even less of a showing of similarity of job duties than required under

federal law.  For all of the reasons already discussed at length above in connection with the less

liberal federal civil rights laws, Plaintiffs have supplied a factual basis from which it is

reasonable to infer that FPIs have been paid less at least in part because a majority of FPIs are

persons of color.  The City's motion to dismiss Plaintiffs' NYCHRL claim should also be

denied.

## II.    WHITE FIRE PROTECTION INSPECTORS HAVE VIABLE DISPARATE TREATMENT CLAIMS UNDER TITLE VII AND THE NYCHRL.

Under certain circumstances, persons may sue under civil rights statutes "for indirect or

derivative injury suffered by [them] as a result of discrimination aimed at" another protected

class.  *Puglisi v. Underhill Park Taxpayer Assoc.*, 947 F. Supp. 673, 685 (S.D.N.Y. 1996); *see,*

*e.g.*, *Thompson v. No. Am. Stainless, LP*, 562 U.S. 170 (2011) (recognizing Title VII claim where

plaintiff was fired after his fiancé filed an EEOC charge against their joint employer); *Trafficante*

*v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972) (recognizing fair housing claim by two white tenants

of apartment complex premised on allegation that their landlord discriminated against nonwhite

rental applicants); *Sullivan v. Little Hunting Park Inc.*, 396 U.S. 229, 237 (1969) (applying 42

U.S.C. § 1982 to a white man who was expelled from membership to a community park when he

objected to the community park board refusing to approve the membership of a black man, to

whom he had attempted to assign his membership).  Whether a plaintiff may sue for

associational discrimination depends, as the City says, on whether the plaintiff has "a cause of

action under the applicable statute[s]."  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821

F.3d 352, 359 (2d Cir. 2016).  Here, the City maintains that White FPIs lack a cause of action

under both Title VII and the NYCHRL.[4]  The City is wrong.

With respect to Title VII, the City selectively raises 42 U.S.C. § 2000e-2, which says "[i]t

shall be an unlawful employment practice for an employer . . . to discriminate against any

individual . . . because of such individual's race . . ."  42 U.S.C. § 2000e-2(a).  The City does not,

however, acknowledge 42 U.S.C. § 2000e-5(f)(1), which provides that "a civil action may be

brought . . . by the person claiming to be aggrieved."  Nor does it convincingly contend with

*Thompson*.  In *Thompson*, an employee claimed that his employer took adverse action against

him in retaliation for his fiancé's filing of a charge of discrimination against it.  Title VII's

provision forbidding retaliation largely tracks the provision prohibiting discrimination: "[i]t shall

be an unlawful employment practice for an employer to discriminate against any of his

employees . . . *because he has . . . made a charge . . . .*"  42 U.S.C. § 2000e-3(a) (emphasis

added).  Yet the Supreme Court held that Thompson could sue under section 5(f)(1) as a "person

claiming to be aggrieved."  *Thompson*, 562 U.S. at 178.  According to the Court, Thompson

qualified as "aggrieved" because he had "an interest arguably [sought] to be protected by" Title

VII, e.g., prohibiting retaliation by employers against employees who file charges of

discrimination with the EEOC.  *Id.* at 178 (internal quotation marks omitted).  Applying this

definition, White FPIs are also persons claiming to be aggrieved: as Plaintiffs have alleged,

White FPIs are subject to the same pay discrimination as Non-White FPIs because they work

with Non-White FPIs on a majority non-white workforce.  Prohibiting an employer from taking

---

[4]     The City does not appear to argue that White FPIs lack the right to sue for discrimination under section
1981.

adverse action against employees (including by means of pay discrimination) on the basis of race

is a core interest protected by Title VII.  Thus, White FPIs have a cognizable Title VII claim.

The City does not dispute that section 5(f) supplies a cause of action; rather, it implies—

without citation to statute or precedent—that the associational discrimination claim recognized

by *Thompson* is limited to romantic interpersonal relationships, and does not apply to white

individuals who merely work with or share the same job title as a non-white individual.  In fact,

the Second Circuit has declined to read Title VII this restrictively.  *See Holcomb v. Iona Coll.*,

521 F.3d 130, 138-39 (2d Cir. 2008) (holding that a white employee has a claim if his employer

"takes action against [him] because of the employee's association with a person of another race"

because "where an employee is subjected to adverse action because an employer disapproves of

interracial association, the employer suffers discrimination because of the employee's *own*

race"); *see also Kauffman v. Maxim Healthcare Servs.*, No. 04-CV-2869 (TCP), 2006 U.S. Dist.

LEXIS 47514, at *12 (E.D.N.Y. July 13, 2006) (recognizing cause of action under Title VII

where plaintiff, a white male, was fired for associating with non-white employees and for

opposing discriminatory policies); *cf. Thompson*, 562 U.S. at 175 (declining "to identify a fixed

class of relationships for which third-party reprisals" violate Title VII "[g]iven the broad

statutory text and the variety of workplace contexts in which retaliation can occur"); *Zarda v.

Altitude Express, Inc.*, 883 F.3d 100, 126 (2d Cir. 2018) (noting generally that "policies that

distinguish according to protected characteristics cannot be saved by equal application").

The Supreme Court's recent decision in *Bostock v. Clayton County*, 140 S. Ct. 1731,

1748 (2020), reinforces the Second Circuit's reasoning in *Holcomb* and *Zarda*.  Inherent in the

claim that the City discriminates in its pay practices against FPIs for being majority non-white is

the notion that it discriminates against the white FPIs for being in the minority; they, like the people of color, are discriminated against because of their race.

The two cases that the City relies upon to argue that "an individual who is not in the allegedly discriminated-against category cannot claim to be the victim of discrimination" are inapposite. *See* Def. Mem. at 5.  In neither *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 515-16 (S.D.N.Y. 2010) nor *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 185-86 (2d Cir. 2001) did the plaintiffs claim they had been injured by discrimination directed against them because of their association with members of a protected class; rather, they claimed harm only by discriminatory conduct injurious toward others.  *See, e.g., Krasner*, 680 F. Supp. 2d at 515-16 (male employee lacked standing to assert a claim under Title VII based on being "surrounded" by conduct believed to impinge on the rights of female co-workers); *accord Leibovitz*, 252 F.3d at 185-86 (plaintiff, a woman, asserted hostile environment claims based on harassment of other female employees that she never experienced and knew of only by what she heard from others).

With respect to the NYCHRL, the City again resorts to selective quotation.  The City references section 8-107(1)(a)(3), which states "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer[,] . . . because of the actual or perceived . . . race . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment," NYCHRL § 8-107(1)(a)(3), but fails to mention section 8-107(20), which prohibits "discrimination against a person because of the actual or perceived race . . . of a person with whom such person has *a known relationship or association*."  (Emphasis added.)  This prohibition against associational discrimination permits persons to sue under the NYCHRL for injuries suffered because of their association with members of a protected group.  *See Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913 (LBS), 2012 U.S. Dist. LEXIS 112479, at *15

21

(S.D.N.Y. 2012) ("[B]oth [the New York State Human Rights Law and the NYCHRL] allow individuals who were not themselves the direct target of discrimination to bring claims for harms they nevertheless suffered as a result of discrimination.").

Courts have applied the NYCHRL's prohibition against associational discrimination in multiple circumstances that make clear that white FPIs' co-worker relationships with non-white FPIs are encompassed within the protections of subsection 20.  *See Zhang v. Jenzabar, Inc.*, No. 12-CV-2988 (RRM) (RER), 2015 U.S. Dist. LEXIS 41254, at *47 (E.D.N.Y. Mar. 30, 2015) (deeming claim of associational discrimination cognizable where organization alleged it lost financial support as a result of the defendants' unlawful discriminatory practices against organization's founder); *Mazzocchi*, 2012 U.S. Dist. LEXIS 112479, at *6-8, 15 (holding that proprietary lessee of apartment has standing under NYCHRL when board threatens to evict his sublessee and terminate his lease because of sublessee's behavior that lessee attributes to bipolar disorder); *Lapko v Grand Mkt. Intl. Corp.*, 2020 N.Y. Misc. LEXIS 4641, at *9 (N.Y. Sup. Ct. Aug. 12, 2020) (holding former employee who was demoted then terminated allegedly because of his association with Russian persons stated claim under NYCHRL); *Bartman v. Shenker*, 5 Misc. 3d 856, 860-861 (N.Y. Sup. Ct. 2004) (recognizing claim of associational discrimination under section 8-107(20) where employer of disabled person alleged it was discriminated against by landlord because of employee's disabled status).  The City's motion to dismiss the White FPIs disparate treatment claims under Title VII and the NYCHRL should be denied.

## III.   PLAINTIFFS' TITLE VII CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY DILIGENTLY SOUGHT THEIR RIGHT-TO-SUE LETTERS, WHICH WERE ISSUED ON SEPTEMBER 16, 2020

Generally, a complainant must file a charge of discrimination with the Equal Employment Opportunity Commission and receive a right-to-sue letter before initiating a claim

of discrimination under Title VII.  *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019).  The

requirement is not jurisdictional, however, *id.*, and courts in the Second Circuit recognize certain

equitable exceptions to Title VII's procedural requirements.  One is directly relevant to this case:

where "a right to sue letter has been received subsequent to commencement of a Title VII action

and while the action is still pending."  *See Hourahan v. Ecuadorian Line*, No. 95 Civ. 10698

(AGS), 1996 U.S. Dist. LEXIS 19435, at *13 (S.D.N.Y. Dec. 31, 1996).  A key consideration,

when considering equitable modification, is whether a plaintiff has acted diligently to preserve

his or her rights.  *Id.*

The EEOC's portal states that the Plaintiffs' charges of discrimination are closed and

contain the notation, "9/16/2020 Notice of Right to Sue issued was upon request and charge was

closed."  Lieder Decl., ¶ 5. [5]  There actually were multiple requests.  Pursuant to Title VII, the

EEOC, or the Attorney General in a case such as this against a governmental entity, must issue a

right-to-sue letter 180 days after the filing of a charge of discrimination.  *See* 42 U.S.C. § 2000e-

5(f)(1).  However, the EEOC or the Attorney General may upon request from a complainant

issue "early" right-to-sue letters before the 180 days have elapsed.  *See* 29 C.F.R. §

1601.28(a)(2), (d)(2).

Plaintiffs mailed their administrative charges to the EEOC on April 25, 2020 and April

30, 2020 under cover of letters stating, among other things, that "this case will not be resolved

---

[5]     Because Plaintiffs have submitted evidence from outside the complaint, the Court may
choose to convert this aspect of the City's motion to one for summary judgment.  *See Kennedy v.
Empire Blue Cross & Blue Shield,* 989 F.2d 588, 592 (2d Cir. 1993) (affirming district court's
conversion of motion to dismiss for failure to exhaust administrative remedies to motion for
summary judgment when plaintiffs submitted three letters not filed with complaint in opposing
motion to dismiss).

through conciliation.  On behalf of our clients, we request the EEOC to promptly issue right-to-sue letters."  Lieder Decl., ¶ 2.  At the time of submission, the EEOC had suspended the issuance of right-to-sue letters due to the coronavirus pandemic.  *See* U.S. Equal Employment Opportunity Commission, "EEOC Continues to Serve the Public During COVID-19 Crisis," available at https://www.eeoc.gov/newsroom/eeoc-continues-serve-public-during-covid-19-crisis.  On August 3, the EEOC announced it was going to start issuing right-to-sue letters again. *Id.*  Acting on that announcement, Plaintiffs' Counsel wrote to the EEOC again on August 4 asking the agency to issue right-to-sue letters.  Lieder Decl., ¶ 3.  Still not having heard anything, and anticipating the City's Motion to Dismiss, Plaintiffs' Counsel followed up yet again with the EEOC in early September, and were informed that the EEOC had a backlog of right-to-sue letters due to the pandemic, but was working on Plaintiffs' request.  *Id.*, ¶ 4.  On October 15, 2020, after several attempts to contact the EEOC, Plaintiffs' Counsel checked the online EEOC portal and noticed that it indicated that Plaintiffs' right-to-sue letters had been issued on September 16, 2020.  *Id.*, ¶ 5.  Neither Plaintiffs nor, to the best of our knowledge, Plaintiffs' Counsel have yet received the right-to-sue letters via mail – counsel's office remains closed because of the pandemic, *id.*, ¶¶ 6, 7 – the EEOC's posting is admissible under Federal Rule of Evidence 803(8) and the Court can conclude that the letters were indeed issued.

Plaintiffs' repeated efforts to obtain right-to-sue letters establish that they acted diligently to preserve their rights, making it appropriate to apply an equitable exception to the normal rule requiring receipt of a right-to-sue letter prior to filing a complaint.  And because the EEOC has issued their right to sue letters while the action was still pending, the exception for issued right-to-sue letters applies.  The Court should deny the motion on the basis that administrative remedies have been exhausted.  *See Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 347 (D. Conn.

2014) (holding that plaintiff may "cure an initial failure to demonstrate exhaustion of administrative remedies by submitting a post-district court complaint right-to-sue letter from the EEOC" and rejecting notion that failure to previously obtain right-to-sue letter is "a state of original sin incapable of redemption"); *see also Klaes v. Jamestown Bd. of Pub. Utils.*, No. 11-CV-606, 2013 U.S. Dist. LEXIS 45872, at *18-19 (W.D.N.Y. Mar. 29, 2013) (denying motion to dismiss without prejudice because "180 days have now passed since the filing of his administrative charge [and] Plaintiff may have received or requested a right-to-sue letter from the EEOC in the interim" to give plaintiff chance to "establish that he either received a right-to-sue letter since filing the amended complaint, or that some extraordinary circumstance warrants tolling or waiver of the requirement").

## **CONCLUSION**

The City's motion to dismiss should be denied in its entirety.

Respectfully submitted,

*/s/ Michael D. Lieder*

**VALLI KANE & VAGNINI, PLLC**

Robert J. Valli, Jr.
Sara Wyn Kane
Valli Kane & Vagnini LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516)706-0248
rvalli@vkvlawyers.com
skane@vkvlawyers.com

**MEHRI & SKALET PLLC**

Cyrus Mehri (*pro hac vice* motion to be filed)
Michael D. Lieder (*pro hac vice*)
Aisha Rich (*pro hac vice*)
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
arich@findjustice.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on October 19, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Michael D. Lieder*
Michael D. Lieder
