# EXHIBIT 12

UNITED STATES DISTICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARRYL CHALMERS, DARREN CONNORS, GLENN MENDEZ, JAMES NOVA, and FATIMA Q. ROSEMOND, on behalf of themselves and all other similarly situated, and

AFSCME DISTRICT COUNCIL 37 LOCAL 2507, on behalf of its members,

                      Plaintiffs,

     v.

CITY OF NEW YORK,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 20-cv-03389 (AT) (GWG)

## DECLARATION OF MICHAEL D. LIEDER IN SUPPORT OF PLAINTIFFS' MOTION FOR (A) CERTIFICATION OF A CLASS AND SUBCLASS, (B) APPOINTMENT OF CLASS COUNSEL, AND (C) EXCLUSION OF THE REPORT AND TESTIMONY OF DR. CHRISTOPHER ERATH

     I, Michael D. Lieder, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

     1.     I am an attorney at law, admitted to the bar of the District of Columbia and admitted before the United States District Court for the Southern District of New York *pro hac vice* to represent plaintiffs and the proposed class in this case.

     2.     I am a partner at my firm, Mehri & Skalet PLLC ("M&S"), and along with several other members of my firm, am co-counsel for the Plaintiffs in this action.

     3.     I am familiar with the facts and circumstances set forth herein and I make this Declaration in support of Plaintiffs' Motion for (a) Certification of a Class and Subclass, (b) Appointment of Class Counsel, and (c) Exclusion of the Report and Testimony of Dr. Christopher

Erath. In particular, this declaration is submitted to provide evidentiary support concerning certain discovery in this case, the showing that Plaintiffs will be adequate representatives of the proposed Class and Subclass, and the motion to appoint lawyers from M&S and our co-counsel at Valli Kane & Vagnini LLP ("VKV") as class counsel.

**Identifying and Investigation the Potential Claims in the Case**

4. Several fire protection inspectors and associate fire protection inspectors (collectively "FPIs"), including Darryl Chalmers, approached me in late 2019 about the possibility of representing them and a class composed of all FPIs in litigation claiming that the City of New York was paying them discriminatorily low salaries and otherwise was discriminating against them because the FPI workforce was composed primarily of racial minorities. Other M&S lawyers and I interviewed several FPIs, reviewed documents that they provided to us, and accessed publicly available information showing the compensation paid to FPIs and other City employees. We quickly focused on claims arising out of the fact that FPIs were paid less than inspectors (collectively "BIs") employed by the Department of Buildings ("DOB") that the FPIs thought were performing essentially similar duties.

5. We realized that a critical question would be whether the duties and requires knowledge, skills and abilities for FPIs and BIs were in fact similar. We contacted Drs. Harold Goldstein and Charles Scherbaum, professors of industrial/organizational psychology at Baruch College in New York whom we had engaged on other cases, to help us evaluate the similarity of the jobs. Drs. Goldstein and Scherbaum performed research, including interviewing a now-deceased FPI, Ed Mungin, who formerly had been a BI involved in the training of BIs.

6. We also performed calculations in the first few months of 2020 based on the publicly available compensation information and concluded that BIs were indeed on average paid

2

more than FPIs and that pay disparities went back as far as the publicly available information from FY 2008. Many of the calculations appear in the Complaint that was filed.

7. The publicly available compensation information for each employee did not contain racial information. However, we reviewed racial information contained in NYC Workforce Profile reports issued each year by the City's Department of Citywide Administrative Services and concluded that, as our contacts believed, the FPIs contained a much higher percentage of racial minorities than did the BI workforce at the DOB.

8. Based on our research and calculations and the research performed by Drs. Goldstein and Scherbaum, we decided that the claims, while not typical discrimination claims because the comparators worked in a different department of the City in positions with different job titles, were viable under both federal and City law.

9. We also interviewed each of the five FPIs who became named plaintiffs in the case – Mr. Chalmers, Darren Connors, Glenn Mendez, James Nova, and Fatima Rosemond – to understand whether they had claims typical of those of other FPIs and whether they were willing to serve as representatives of a proposed class and subclass.

10. Finally, to strengthen the legal team and provide a local presence, we reached out to lawyers at VKV with whom we have worked on several other cases over the years to ascertain whether they would co-counsel with us on the litigation. They were willing to do so.

11. We filed the Complaint initiating this litigation on May 1, 2020.

12. No other lawyers have approached us about persons they represent with claims similar to those of the Plaintiffs or about their interest in the litigation for any reason.

**Certain Discovery Issues in this Case**

13. Our document production requests in this case included requests for job analyses performed for FPI or BI positions. The City produced only three complete analyses, two for construction inspectors and one for associate fire protection inspectors. The documents thus did not allow an apples-to-apples comparison, either at the entry level or the associate level. We noticed, however, that various emails or other documents that the City had produced indicated that other job analyses had been performed. We called this to the attention of the City's counsel and in subsequent email exchanges she reported that she called her client's attention to these emails and other documents and City officials searched for the job analyses. They found some appendices that appeared to be from a relevant job analysis but not the full report. Beyond those appendices, the City now maintains that the other analyses were not performed or, to the extent they were, they cannot be found. The City confirmed, for example, that FPI Exam No. 6021 (completed circa 2015) should exist but says that it was unable to locate the analysis after undertaking a reasonable search. Per the City's counsel, DCAS does not store job analyses in a central repository or drive, and the City presumes that the employees who worked on the analysis saved it locally.

14. The City has served document production requests and interrogatories on the Plaintiffs. In response, each of them has produced responsive documents and answered the interrogatories. In addition, a lawyer for the City deposed each of the individual Plaintiffs.

**M&S's Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in This Case**

15. M&S currently has 13 lawyers: seven partners, three of counsel, and three associates. The firm is headquartered in Washington, D.C.

16. M&S represents plaintiffs in the following practice areas: civil rights, primarily class action litigation; whistleblower and *qui tam* litigation; workers' rights, primarily class and

4

collective actions under federal and state wage and hour laws; consumer protection class action litigation; and healthcare and insurance law class action litigation.

17. Since I became "of counsel" to the firm in 2012 (I became a partner in 2019), the civil rights and workers' class actions in which M&S has represented plaintiffs include:

- **Richardson v. City of New York, No. 17-cv-09447 (JPO) (S.D.N.Y.).** M&S and co-counsel VKV filed this putative racial discrimination class action on behalf of African American civilian employees of FDNY and rejected African American applicants for civilian positions. They claim that FDNY has engaged in racial discrimination in the hiring, promotion, and compensation process. The Court denied the City's motions to dismiss but earlier this year denied plaintiffs' motion for class certification. The parties currently are in settlement negotiations and, if unsuccessful, will be headed for summary judgment or trial.

- **Borders v. Wal-Mart Stores, Inc., No. 17-cv-00606 (S.D. Ill.).** In April 2020, the Court granted final approval to a $14 million class-wide settlement on behalf of several thousand female Walmart employees who alleged that the company's policies in effect several years ago discriminated against pregnant workers by failing to provide them the same types of workplace accommodations available to other Walmart employees. M&S lawyers were lead counsel for the class in the case. To the best of our knowledge, this was and still is the first successful class action lawsuit under the Pregnancy Discrimination Act.

- **McNeely v. Metropolitan Life Insurance Co, No. 1:18-CV-00885-PAC (S.D.N.Y.).** The firm and co-counsel litigated claims against MetLife on behalf of approximately 125 dental consultants who allegedly were misclassified as

5

independent contractors. They claimed that they were denied overtime pay and otherwise injured as a result of the misclassification. In January 2020, Judge Crotty granted final approval of a $3,390,000 settlement on behalf of the class.

- **Howard v. Cook County Sheriff's Office, No. 17-cv-08146 (N.D. Ill.).** M&S and co-counsel represent over 500 women employed by the Cook County Jail as correctional officers, sheriff deputies, paramedics, nurses, and in other jobs. The suit claims that the defendants did not adopt reasonable measures to deter the inmates at the jail from engaging in sexual harassment that has created a hostile work environment based on sex. The case originally was brought as a putative class action, the U.S. District Court for the Northern District of Illinois certified the proposed class in August 2019, the Seventh Circuit reversed certification, and M&S and co-counsel intervened over 500 women into the litigation. The parties anticipate bellwether trials.

- **Simpson v. Cook County Sheriff's Office, No. 18-cv-00553 (N.D. Ill.).** M&S and co-counsel represent several rejected applicants for positions with the Cook County Sheriff's Office. They claim that both the tests and the discretionary components of the hiring process discriminate against African American applicants. Plaintiffs have filed a pending motion for class certification on behalf of a proposed class and five subclasses. While waiting for the class certification decision, the parties have nearly completed merits discovery except for damages, which is bifurcated.

- **Brown v. Medicis Pharm. Corp., No. 13-cv-01345 (D.D.C.).** M&S and co-counsel VKV represented a class of over 200 women who alleged that Medicis's

top executives created a sexually hostile environment for the women in its sales force and discriminated against them in pay and promotions. Under the settlement, Medicis agreed to pay a total of about $7.1 million, an average of over $30,000 per class member, and to provide comprehensive programmatic relief.

- **White v. Lynch, EEOC Case No. 510-2012-00077X.** M&S represented a certified class of over 400 women who claimed that the federal Bureau of Prisons did not adopt reasonable measures to deter the inmates at its largest correctional complex from creating a hostile work environment based on sex over many years. This case settled in 2017 for $20 million for the class of workers and meaningful injunctive relief aimed at reforming policies and practices to eliminate sexual harassment.

- **Martin v. United States, No. 13-834C (Fed. Cl.).** M&S and co-counsel represent a class of about 24,000 federal employees who were required to work during the partial government shutdown in October 2013 but were not paid on their regularly scheduled paydays by the government. They allege that they were not timely paid minimum wage and, to the extent that they were required to work overtime, were not timely paid overtime wages either. The Court of Federal Claims has ruled that the government violated the FLSA and is subject to liquidated damages. The Government has filed an appeal.

18. Cyrus Mehri has consulted with the team working on this case when requested. He is one of the two founding partners of the firm and has over 30 years of experience in civil rights and class action litigation. He has served as lead counsel or co-lead counsel in most of the cases listed in paragraph 17. I know because I have been engaged in the representation of plaintiffs in

7

civil rights and workers' class action litigation since 1991 that he is one of the leading employment discrimination class action lawyers in the country. He has been lead counsel in numerous civil rights and employment class actions. The two most well-known are: *Ingram v. Coca-Cola Co.*, No. 98-cv-03679 (N.D. Ga.), in which the Court approved a final settlement agreement valued at $192.5 million on behalf of a class of 2,200 salaried African American employees that also provided for sweeping reform of Coca-Cola's employment practices; and *Roberts v. Texaco*, No. 94-cv-02015 (S.D.N.Y.), which was settled in 1996 for what was then the largest settlement of a race discrimination case, including damages of $176.1 million, pay raises for about 1,400 black employees and systemic programmatic relief. Cyrus, together with the late Johnnie L. Cochran, Jr., co-founded the Fritz Pollard Alliance, an affinity group for NFL minority coaches and executives, and helped design the NFL's Rooney Rule.

19. First as "of counsel" and more recently as a partner at M&S, I have served in a leading role in all the cases listed in paragraph 17. Before coming to M&S, I worked for over 20 years with the firm of Sprenger & Lang, PLLC ("S&L") in Washington, D.C. representing plaintiffs in civil rights and other workers' litigation. While at S&L I was lead counsel or had a major role in race, gender, and age discrimination class action lawsuits. *See, e.g., Thornton v. Nat'l R.R. Passenger Corp.*, No. 1:98-cv-890 (D.D.C.) ($16 million plus broad injunctive relief in race discrimination class action); *McLaurin v. Nat'l R.R. Passenger Corp.*, 1:98-cv-2019 (D.D.C.) ($8 million plus broad injunctive relief in race discrimination class action); *Hyman v. First Union Corp.*, No. 94-1043 (D.D.C.) ($58.5 million in age discrimination collective action).

20. My partner and co-chair of the firm's civil rights practice Ellen Eardley was lead counsel in the highly successful *Borders v. Wal-Mart Stores, Inc.* litigation. She also has had leading roles in the *Howard*, *Brown*, and *White* cases listed in paragraph 17. Ellen advises

8

organizations, boards, non-profits, and educators on inclusion and diversity matters and regularly collaborates with the diversity and inclusion consulting firm, Working IDEAL, to identify structural barriers to equity in workplaces and schools, and to develop comprehensive strategies for change. Ellen formerly served as the Assistant Vice Chancellor for Civil Rights & Title IX at the University of Missouri, where she pioneered the first institutional equity office for students, faculty, and staff; implemented new inclusion, diversity, and equity policies; raised awareness of race, sex, religious, disability, and LGBTQ discrimination on campus; and led efforts to fairly investigate and adjudicate hundreds of reports of sexual violence and discrimination.

21. Aisha Rich joined M&S in 2019. She has worked on various class matters representing plaintiffs in the civil rights and employment contexts, including the *Richardson* and *Borders* cases listed in paragraph 17. Prior to joining M&S, Ms. Rich clerked for the Honorable Amalya L. Kearse of the United States Court of Appeals for the Second Circuit, the Honorable Edmond E. Chang of the United States District Court for the Northern District of Illinois, and the Honorable Leondra R. Kruger of the Supreme Court of California.

22. Together the four M&S lawyers have over 80 years of experience in class action and other complex employment and civil rights litigation.

**M&S's Knowledge of the Applicable Law**

21. All of the M&S lawyers working on this case are very familiar with the applicable federal law. Most of the cases listed in paragraph 17 were brought under Title VII of the 1964 Civil Rights Act and the race discrimination cases also were brought under 42 U.S.C. § 1981 (and, when against governmental defendants, under section 1983). Because of the *Richardson* litigation, the M&S lawyers have become familiar as well with the New York City Human Rights Law. We

9

also can draw on the knowledge of our co-counsel from VKV concerning the provisions and caselaw applicable to the NYCHRL.

22.     Of course, the applicable law is not only substantive but procedural and evidentiary. Plaintiffs' Motion for (a) Certification of a Class and Subclass, (b) Appointment of Class Counsel, and (c) Exclusion of the Report and Testimony of Dr. Christopher Erath, which this declaration supports, reflects some of our knowledge of Federal Rule of Civil Procedure 23 and Federal Rule of Evidence 702.

23.     I believe that our experience and knowledge of the applicable law also has contributed to the parties' ability to resolve all discovery issues without the need to engage in contested motion practice, which tends to prolong the discovery period. Class certification discovery has been completed and Plaintiffs are filing their motion for class certification this day, about 16 months after the litigation began.  In our experience, few employment or civil rights class action lawsuits reach this stage of the case in as little as 16 months.

**The Resources that M&S and VKV Have Committed and Will Commit to the Litigation**

23.     M&S and VKV are willing to commit the personnel and monetary resources necessary to litigate this case properly.  To date, three lawyers – Matthew Berman from VKV and Aisha and I from M&S – have done most of the lawyer work on the case but when necessary other lawyers have stepped in.  For example, when I was largely unavailable in late 2020 and early 2021, Ellen filled in for me.  Cyrus from M&S and Rob Valli and Sara Kane from VKV are available for consultations and advice. The lawyers have been assisted by paralegals, primarily Dominic Charles of M&S, and law clerk Victoria Hyppolite from VKV.

24.     The firms are litigating the case on a contingent basis.  M&S and VKV have paid the fees and expenses associated with Drs. Goldstein and Scherbaum reviewing documents,

analyzing data, and preparing an initial expert report and a report rebutting the report of the City's expert Dr. Christopher Erath. The firms also have paid the fees and expenses of Dr. Scherbaum in preparing and sitting for his deposition and helping me prepare for the deposition of Dr. Erath. In addition, M&S and VKV have paid the expenses associated with taking the depositions of seven Rule 30(b)(6) witnesses for the City and defending the depositions of the five individual Plaintiffs.

25. As the case proceeds, M&S is committed, and I am confident that VKV is committed as well, to devoting all personnel and monetary resources reasonably necessary or appropriate to bringing the case to a successful resolution.

**M&S's Commitment to Fairly and Adequately Representing the Class**

26. In any employment or civil rights class action in which M&S engages, the firm is committed to representing the interests of the class at least until a court denies a class certification motion. That commitment encompasses both monetary relief and injunctive relief to try to address the issues in the future. Having worked closely with the VKV lawyers for several years on multiple cases, I am confident that they share the commitment.

27. Indeed, as shown by the *Howard* litigation described in paragraph 17, M&S's commitment to class members can survive an adverse decision on class certification. In that litigation, M&S and co-counsel brought a class action lawsuit on behalf of about 2,000 women employed by the Cook County Jail in Chicago as correctional officers, sheriff deputies, paramedics, nurses, and in other jobs. The suit claims that the defendants did not adopt reasonable measures to deter the inmates at the jail from engaging in sexual harassment that has created a hostile work environment based on sex. The U.S. District Court for the Northern District of Illinois certified the proposed class in August 2019. The Seventh Circuit reversed certification on the ground that conditions in some divisions or areas of the complex were not as bad as others, and as

a result, the case could not properly be decided on a class basis. Instead of abandoning the class members, M&S and co-counsel have interviewed and offered representation to over 500 members of the former class. The firms filed an amended complaint intervening all of these women into the litigation. To the best of my knowledge, and from what I understand to the best of the knowledge of other M&S lawyers, no other hostile environment case in American jurisprudence has had so many individual plaintiffs.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_____August 30, 2021_____      _____/s/ Michael D. Lieder\_\_\_\_\_
              Date                                                  Michael D. Lieder