# EXHIBIT 35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARRYL CHALMERS *et al.*,

                Plaintiffs,

    v.

CITY OF NEW YORK,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 20-cv-03389 (AT) (GWG)

**DECLARATION OF CHARLES A. SCHERBAUM IN SUPPORT
OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
AND DEPOSITION TESTIMONY OF DR. CHRISTOPHER ERATH**

    I, Charles A. Scherbaum, declare upon personal knowledge and under penalty of perjury that the following is true and correct:

    1.    I am a tenured and full professor of industrial and organizational psychology at Baruch College, City University of New York who, along with Dr. Harold W. Goldstein, has been retained by plaintiffs' legal counsel to examine (1) whether fire inspector job titles in the New York City Fire Department ("FDNY") are similar to the inspector job titles in the New York City Department of Buildings ("DOB") in terms of the nature of the work that is performed by those in these job titles, (2) whether there are disparities in the racial composition between inspectors in the FDNY and inspectors in the DOB, (3) whether the compensation received by inspectors in the FDNY and inspectors in the DOB are statistically significant different, and (4) whether the nature of the work performed provides a job relevant rationale for why the jobs should be paid differently.

2.	Dr. Goldstein and I prepared a report in this case addressing these questions dated June 9, 2021. We prepared a second report, dated July 9, 2021, rebutting the report for the City of New York prepared by Dr. Christopher Erath, which was dated June 29, 2021.

3.	Plaintiffs' legal counsel has asked me to set out in a declaration several analyses described below in connection with a motion that they intend to file to exclude the report of Dr. Erath. The analyses address four points made by Dr. Erath. I first performed some of the analyses to assist counsel in preparing for the deposition of Dr. Erath after the completion of the rebuttal report. I have performed other of the analyses for the first time at counsel's request for the motion to exclude.

4.	First, Dr. Erath's argument that DOB and FDNY inspector jobs are not similar because of limited job mobility is premised on the notion that there was an opportunity for FPIs to apply to DOB inspector jobs and that they were considered by the DOB. Between 2005-2021, the City offered only five DOB construction inspector exams (2006, 2011, 2015, and 2019 and 2021) according to Dr. Erath's report and data. Over the 16 years that I examined, there were only four opportunities for FPIs to be considered for DOB construction inspector jobs according to Dr. Erath's data. Additionally, I examined DCAS' publicly available terminated civil service lists to determine if there were additional exams for DOB inspector jobs.[1] The publicly available data covers lists established between 2009 and 2019. It did not contain any historic civil service lists for DOB inspector job titles. Although there may have been tests, it does not appear that any lists were ultimately created. If there were no lists, they any analysis of mobility through competitive testing and civil service lists is of limited or no value.

---

[1] https://data.cityofnewyork.us/City-Government/Civil-Service-List-Terminated-/qu8g-sxqf

5.  The lack of exams and civil service lists is consistent with the civil service status of most DOB inspectors. In the DCAS data provided by the City, it includes whether an employee was hired or promoted on a competitive permanent basis (i.e., hired/promoted from a civil service list) or hired/promoted through a non-competitive process (i.e., hired/promoted through a provisional process outside of a civil service list). Using this data, I computed the percentage of DOB and FDNY inspectors that were hired or promoted through a competitive or non-competitive process between FY2005-FY2020.

6.  Table 1 below shows the percent of DOB inspectors that were hired/promoted through civil service lists after testing (i.e., competitive), through the provisional process, and by two other non-competitive means reflected in the data from FY 2005 through FY 2020. As can be seen, DOB primarily hires/promotes inspectors provisionally or by other non-competitive means rather than off the civil service lists.

**Table 1**

| Year | Permanent - Competitive | 5.5.1 Filling Perm Vac No List | Non-Competitive | Non-Competitive Appt 3.2.10 |
|---|---|---|---|---|
| 2005 | 21.10% | 73.42% | 5.49% | |
| 2006 | 16.14% | 78.35% | 5.51% | |
| 2007 | 12.23% | 82.73% | 5.04% | 0.00% |
| 2008 | 13.88% | 81.70% | 4.42% | 0.00% |
| 2009 | 12.54% | 82.96% | 4.50% | 0.00% |
| 2010 | 8.30% | 66.78% | 24.91% | 0.00% |
| 2011 | 9.65% | 64.48% | 25.87% | 0.00% |
| 2012 | 11.88% | 63.60% | 24.52% | 0.00% |
| 2013 | 18.22% | 58.91% | 22.87% | 0.00% |
| 2014 | 15.00% | 62.69% | 22.31% | 0.00% |
| 2015 | 15.70% | 64.16% | 19.80% | 0.34% |
| 2016 | 15.95% | 70.27% | 13.51% | 0.27% |
| 2017 | 12.47% | 77.60% | 9.70% | 0.23% |
| 2018 | 11.70% | 80.64% | 7.45% | 0.21% |
| 2019 | 11.78% | 78.04% | 9.78% | 0.40% |
| 2020 | 26.05% | 73.56% | | 0.38% |

7. By contrast, the FDNY hires/promotes FPIs primarily off the civil service lists rather than provisionally, as reflected in Table 2.

**Table 2**

| Year | Permanent - Competitive | 5.5.1 Filling Perm Vac No List | Non-Competitive | Non-Competitive Appt 3.2.10 |
|---|---|---|---|---|
| 2005 | 82.67% | 16.89% | 0.44% | |
| 2006 | 90.25% | 9.32% | 0.42% | |
| 2007 | 83.27% | 16.33% | 0.00% | 0.41% |
| 2008 | 88.19% | 11.42% | 0.00% | 0.39% |
| 2009 | 69.52% | 30.11% | 0.00% | 0.37% |
| 2010 | 62.54% | 37.11% | 0.00% | 0.34% |
| 2011 | 76.22% | 23.45% | 0.00% | 0.33% |
| 2012 | 92.09% | 7.59% | 0.00% | 0.32% |
| 2013 | 89.87% | 9.81% | 0.00% | 0.32% |
| 2014 | 89.97% | 9.71% | 0.00% | 0.32% |
| 2015 | 96.21% | 3.47% | 0.00% | 0.32% |
| 2016 | 95.29% | 4.41% | 0.00% | 0.29% |
| 2017 | 95.69% | 4.00% | 0.00% | 0.31% |
| 2018 | 93.77% | 5.95% | 0.00% | 0.28% |
| 2019 | 89.87% | 9.87% | 0.00% | 0.27% |
| 2020 | 88.35% | 11.39% | | 0.25% |

8. Second, I reviewed a spreadsheet received in the same email from the City's counsel that contained Dr. Erath's report. I understand that it contains the data on which Dr. Erath relied concerning each test administered by the City's Department of Citywide Administrative Services (DCAS) to persons who served as an FPI at any time between FY 2005 and the present. The spreadsheet lists a total of 4,761 applications.

9. I merged the spreadsheet with information in the human resources data previously produced by the City, which shows among other things when someone first became an entry-level FPI (an FPI who is not at the associate level) and when they ceased being an entry-level FPI. Merging the data allows me to determine that the great majority of the applications fall into a small number of categories, as shown in Table 3.

**Table 3**

| Total applications | **4,761** |
|---|---|
| Applications before FY2005 | 1,709 |
| Applications prior to employment as an FPI | 1,872 |
| Applications from individuals who do not appear in the HR data | 11 |
| Applications from Associate FPIs | 41 |
| Applications from FPIs for promotion to Associate FPI | 706 |
| Applications from FPIs for non-FPI jobs between FY2005 and present | 422 |

10. Dr. Erath's spreadsheet contains 669 individuals but only 152 (18.88%) were entry-level FPIs at any time between FY2005 and FY 2020 applying to jobs outside the FPI-ladder. These 152 entry-level FPIs submitted a total of 422 applications to take exams outside the FPI ladder (only 8.86% of Dr. Erath's data). 61 of these 152 FPIs (40.13%) applied for a job outside the FPI-ladder only one time.

11. Instead of many FPIs applying to a wide array of different job titles, only 30 job titles garnered 4 or more applications from FPIs over 16 years. Many of the more popular job titles were higher paid than FPIs or DOB inspectors (e.g., firefighter, police officer) or some had high entry requirements (e.g., civil engineer).

12. Third, I independently conducted the promotions analysis that Dr. Erath described in his report. In my analysis, I did not consider promotions that were assignment level changes since the entry level inspector jobs generally did not have title levels. Given that DOB inspectors in most job titles could not have received a promotion in 2020 due to restructuring in the department, I excluded that year from my analysis. My analysis replicates the pattern reported by Dr. Earth. I found roughly 37% of the persons who were shown as an entry-level DOB inspector at some point in the data between FY 2005 and FY 2019 and who were in the data for at least three years became an associate DOB inspector, while 56% of the persons who were shown as an

entry-level FPI at some point in the data between FY 2005 and FY 2019 and who were in the data for at least three years became an associate FPI.

13. I then re-ran the analysis except that I examined whether or not entry-level inspectors received non-promotional pay increases above those mandated by their collective bargaining agreements, which were coded as Non-Managerial Salary Change in the data field entitled 'Reason Code Description'. The analysis found that, of the persons included in the analysis, 33% of the DOB inspectors compared to 0% of the FPIs received a non-promotional, non-CBA mandated pay increase. The disparity in whether these employees ever received such a non-promotional increase is statistically significant at 8 standard deviations. There were close to 600 instances of these Non-Managerial Salary Changes between 2005 and 2019, they occurred in almost every year, and they were received by both entry-level DOB inspectors at the new hire and incumbent levels and associate DOB inspectors at title level 1 and 2.

14. Whether an employee ever received a promotion or a non-promotional non-mandated increase does not directly address whether there were disparities in the length of time until persons first received a salary increase from a promotion or such a non-promotional non-mandated increase. To address the issue that Dr. Erath raised directly, I have computed the amount of time from entry into the DOB or FDNY and the first salary increase from a promotion or a non-promotional non-mandated increase. I computed an independent samples t-test to determine if there was a statistically significant difference in the average time until the first salary increase for DOB and FDNY inspectors. Inspectors in the DOB received their first pay increase from either a promotion or a non-promotional non-mandated increase, on average, over two years before FDNY inspectors receive their first increase. The disparity in how long it took

for employees to first receive such a promotional or non-promotional increase is statistically significant at over 4 standard deviations.

15. Fourth, Dr. Erath criticizes our counts of the number of minority and white FPI and DOB inspectors each year because we did not treat an inspector as having a known race in a particular year if the City's records showed the inspector's race that year as "Not Identified" but in another year the records assigned a particular race to that same employee. According to Dr. Erath, we should have used the assigned race in the years in which the employee's race was shown as "Not Identified." We do not believe that our methodology is incorrect. We do not know whether the information in the years in which a race was assigned was correct.

16. Nonetheless, we have looked at how following Dr. Erath's recommendation would affect our counts each year. The answer is not much. There were only 17 FPIs and 21 DOB inspectors whose race would change. The changes would have no material impact on the racial percentages, or the ratio of the white percentage in DOB divided by the white percentage among FPIs, in any year. If they were to have any impact, it would be to increase the percent of white inspectors at the DOB. 15 of the 21 changes for DOB inspectors changed from unknown to white.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

| 08-26-2021 | *Charles Scherbaum* |
|---|---|
| Date | Charles A. Scherbaum, Ph.D. |