# EXHIBIT 39



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

*BUILDING & CONSTRUCTION*
*INSPECTORS*

*4-1-05 to 12-2-07*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:     JAMES F. HANLEY, COMMISSIONER *James F. Hanley*

SUBJECT:  EXECUTED CONTRACT: BUILDINGS & CONSTRUCTION INSPECTORS

TERM:     APRIL 1, 2005 TO DECEMBER 2, 2007

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and Allied Building Inspectors, Local 211, on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED:    *MAR 27 07*



OFFICE OF LABOR RELATIONS

REGISTRATION

OFFICIAL                    CONTRACT

NO:

# 2005-2007 Building and Construction Inspectors Agreement

## TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION .......................................2

ARTICLE II - DUES CHECKOFF ................................................................................5

ARTICLE III - SALARIES .......................................................................................5

ARTICLE IV - WELFARE FUND ..............................................................................15

ARTICLE V - PRODUCTIVITY AND PERFORMANCE...............................................16

ARTICLE VI - GRIEVANCE PROCEDURE ...............................................................17

ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES..................................25

ARTICLE VIII - NO STRIKES.................................................................................25

ARTICLE IX - CITYWIDE ISSUES .........................................................................25

ARTICLE X - UNION ACTIVITY.............................................................................25

ARTICLE XI - LABOR-MANAGEMENT COMMITTEE...............................................25

ARTICLE XII - TRANSFERS & REASSIGNMENTS ..................................................26

ARTICLE XIII - PHYSICAL FACILITIES & SAFETY ...............................................27

ARTICLE XIV - WORK SCHEDULE ........................................................................27

ARTICLE XV - PERSONNEL RECORDS..................................................................27

ARTICLE XVI - PARKING FACILITIES...................................................................28

ARTICLE XVII - MISCELLANEOUS PROVISIONS ..................................................28

ARTICLE XVIII - FINANCIAL EMERGENCY ACT...................................................28

ARTICLE XIX - APPENDICES ................................................................................28

ARTICLE XX - SAVINGS CLAUSE..........................................................................28

ARTICLE XXI - CONTRACTING-OUT CLAUSE.......................................................29

ARTICLE XXII - CIVIL SERVICE AND CAREER DEVELOPMENT ...........................29

PLFPI-GEN000765

| TC# | TITLE |
|------|-------|
| 35010 | APPRENTICE INSPECTOR (STEEL CONSTRUCTION) |
| 35141 | APPRENTICE REHABILITATION SPECIALIST (BLDGS.) |
| 35001 | APPRENTICE INSPECTOR (BOILERS) |
| 35008 | APPRENTICE INSPECTOR (HOISTS & RIGGING) |
| 31640 | ASSOCIATE INSPECTOR (BOILERS) |
| 31642 | ASSOCIATE INSPECTOR (CONSTRUCTION) |
| 31647 | ASSOCIATE INSPECTOR (HOISTS & RIGGING) |
| 31675 | ASSOCIATE INSPECTOR (HOUSING) |
| 31649 | ASSOCIATE INSPECTOR (PLUMBING) |
| 31644 | ASSOCIATE INSPECTOR (ELEVATORS) |
| 31676 | ASSOCIATE INSPECTOR (LOW PRESSURE BOILERS) |
| 31648 | ASSOCIATE INSPECTOR (PLASTERING) |
| 31650 | ASSOCIATE INSPECTOR (STEEL CONSTRUCTION) |
| 31685 | ASSOCIATE REHABILITATION SPECIALIST (HPD) |
| 31620 | INSPECTOR (BOILERS) |
| 31621 | INSPECTOR (CEMENT TEST) |
| 31622 | INSPECTOR (CONSTRUCTION) |
| 31624 | INSPECTOR (ELEVATOR) |
| 31625 | INSPECTOR (HEATING & VENTILATION) |
| 31627 | INSPECTOR (HOISTS & RIGGING) |
| 31670 | INSPECTOR (HOUSING) |
| 31628 | INSPECTOR (PLASTERING) |
| 31629 | INSPECTOR (PLUMBING) |
| 31630 | INSPECTOR (STEEL CONSTRUCTION) |

PLFPI-GEN000766

| TC# | TITLE |
|------|-------|
| 31671 | INSPECTOR (LOW PRESSURE BOILER) |
| 22401 | MULTIPLE DWELLING SPECIALIST (BLDGS.) |
| 22402 | PRINCIPAL MULTIPLE DWELLING SPECIALIST (BLDGS.) |
| 32260 | PRINCIPAL CONSTRUCTION INSPECTOR* |
| 31560 | PRINCIPAL HOUSING INSPECTOR* |
| 31680 | REHABILITATION SPECIALIST (HPD) |
| 31935 | SENIOR BOILER INSPECTOR* |
| 32235 | SENIOR CONSTRUCTION INSPECTOR* |
| 33035 | SENIOR ELEVATOR INSPECTOR* |
| 33235 | SENIOR HOIST & RIGGING INSPECTOR* |
| 31535 | SENIOR HOUSING INSPECTOR* |
| 33635 | SENIOR PLUMBING INSPECTOR* |

(*) For Present Incumbents only

### Section 2.

The terms "employee" and "employees" as used in this Agreement shall mean only those persons in the unit described in Section 1 of this Article.

PLFPI-GEN000767

# ARTICLE II - DUES CHECKOFF

## Section 1.

a.    The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in accordance with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Relating to the Checkoff of Union Dues" and in accordance with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Procedures for Orderly Payroll Check-Off of Union Dues and Agency Shop Fees."

b.    Any employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form acceptable to the City, which bears the signature of the employee.

## Section 2.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

# ARTICLE III - SALARIES

## Section 1.

a.    This Article III is subject to the provisions, terms and conditions of the Alternative Career and Salary Pay Plan Regulations, dated March 15, 1967 as amended, except that the specific terms and conditions of this Article shall supersede any provisions of such Regulations inconsistent with this Agreement subject to the limitations of applicable provisions of law.

b.    Unless otherwise specified, all salary provisions of this Agreement, including minimum and maximum salaries, advancement or level increases, general increases, education differentials and any other salary adjustments, are based upon a normal work week of 40 hours.    In accordance with Article IX, Section 24 of the 1995 – 2001 Citywide Agreement, an Employee who works on a full-time, per-diem basis shall receive their base salary (including salary increment schedules) and/or additions-to-gross payment in the same manner as a full-time, per-annum employee.    An employee who works on a part-time per annum basis and who is eligible for any salary adjustments provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed on the relationship between the number of hours regularly worked each week by such employee and the number of hours in the said normal work week, unless otherwise specified.



PLFPI-GEN000768

**c.** Employees who work on a part-time per diem or hourly basis and who are eligible for any salary adjustment provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed as follows, unless otherwise specified:

Per diem rate - 1/261 of the appropriate minimum basic salary.

Hourly Rate - 35 hour week basis -   1/1827 of the appropriate minimum basic salary.

Hourly Rate - 40 hour week basis -   1/2088 of the appropriate minimum basic salary

**d.** The maximum salary for a title shall not constitute a bar to the payment of any salary adjustment or pay differentials provided for in this Agreement but the said increase above the maximum shall not be deemed a promotion.

## Section 2.

Employees in the following title(s) shall be subject to the following specified salary(ies), salary adjustment(s), and/or salary range(s):

| a. Effective April 1, 2005 | i. Minimum** (1) Hiring | | (2) Incumbent | | ii. Maximum | |
|---|---|---|---|---|---|---|
| APPRENTICE INSPECTOR (CEMENT TEST) | | | | | | |
| APPRENTICE INSP. (CONSTRUCTION) | | | | | | |
| APPRENTICE INSPECTOR (ELEVATOR) | | | | | | |
| APPRENTICE INSPECTOR (HEAT/VENT) | | | | | | |
| APPRENTICE INSPECTOR (HOUSING) | | | | | | |
| APPRENTICE INSPECTOR (STEEL CONST.) | | | | | | |
| APPRENTICE REHAB. SPEC. (BLDGS.) | | | | | | |
| MINIMUM | $ | 23,309 | $ | 26,805 | | |
| after 1 YR. | $ | 25,243 | $ | 29,030 | | |
| After 2 YRS. | | | $ | 31,491 | | |
| After 3 YRS. | | | $ | 34,058 | | |
| After 4 YRS. | | | $ | 36,630 | | |
| APPRENTICE INSPECTOR (BOILERS) | | | | | | |
| MINIMUM | $ | 23,309 | $ | 26,805 | | |
| after 1 YR. | $ | 25,243 | $ | 29,030 | | |
| After 2 YRS. | | | $ | 31,491 | | |
| APPRENTICE INSP. (HOISTS & RIGGING) | | | | | | |
| MINIMUM | $ | 27,383 | $ | 31,491 | | |
| after 1 YR. | $ | 29,616 | $ | 34,058 | | |
| after 2 YRS. | | | $ | 36,630 | | |
| ASSOCIATE INSPECTOR (BOILERS) *** | | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ | 63,128 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ | 69,420 |
| ASSOC. INSPECTOR (CONSTRUCTION) *** | | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ | 63,128 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ | 69,420 |

PLFPI-GEN000769

| | | | | | |
|---|---|---|---|---|---|
| ASSOCIATE INSPECTOR (HOISTS & RIGGING) | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ 63 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ 69, |
| ASSOCIATE INSPECTOR (HOUSING) *** | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ 63,128 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ 69,420 |
| ASSOCIATE INSPECTOR (PLUMBING) *** | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ 63,128 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ 69,420 |
| ASSOCIATE INSPECTOR (ELEVATORS) *** | | | | | |
| LEVEL I | $ | 44,266 | $ | 50,906 | $ 63,128 |
| LEVEL II | $ | 49,266 | $ | 56,656 | $ 69,420 |
| ASSOC. INSPECTOR (LOW PRES. BOILER) | $ | 41,744 | $ | 48,006 | $ 58,793 |
| ASSOCIATE INSPECTOR (PLASTERING) | $ | 44,266 | $ | 50,906 | $ 63,128 |
| ASSOCIATE INSPECTOR (STEEL CONS.) *** | $ | 44,266 | $ | 50,906 | $ 63,128 |
| ASSOCIATE REHABILITATION SPEC. (HPD) | $ | 44,266 | $ | 50,906 | $ 63,128 |
| INSPECTOR (BOILERS) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (CONSTRUCTION) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (ELEVATOR) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (HEATING & VENTILATION) | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (HOISTS & RIGGING) | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (HOUSING) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (PLASTERING) | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (PLUMBING) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (STEEL CONSTRUCTION) *** | $ | 38,862 | $ | 44,691 | $ 56,769 |
| INSPECTOR (LOW PRESSURE BOILER) | $ | 36,148 | $ | 41,570 | $ 52,411 |
| MULTIPLE DWELLING SPECIALIST (BLDGS.) | | | | | |
| LEVEL I | $ | 42,345 | $ | 48,697 | $ 56,4 |
| LEVEL II | $ | 48,317 | $ | 55,565 | $ 62, |
| LEVEL III | $ | 53,193 | $ | 61,172 | $ 70,525 |
| PRIN. MULTIPLE DWELLING SPEC. (BLDG) | $ | 55,906 | $ | 64,292 | $ 75,208 |
| PRINCIPAL CONSTRUCTION INSPECTOR * | $ | 49,046 | $ | 56,403 | $ 68,405 |
| PRINCIPAL HOUSING INSPECTOR * | $ | 49,046 | $ | 56,403 | $ 68,405 |
| REHABILITATION SPECIALIST (HPD) | $ | 38,862 | $ | 44,691 | $ 56,769 |
| SENIOR BOILER INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |
| SENIOR CONSTRUCTION INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |
| SENIOR ELEVATOR INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |
| SENIOR HOIST & RIGGING INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |
| SENIOR HOUSING INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |
| SENIOR PLUMBING INSPECTOR * | $ | 40,006 | $ | 46,007 | $ 57,033 |



PLFPI-GEN000770

| b. Effective May 1, 2006 | i. Minimum** | | | | ii. Maximum | |
| --- | --- | --- | --- | --- | --- | --- |
| | (1) Hiring | | (2) Incumbent | | | |
| APPRENTICE INSPECTOR (CEMENT TEST) | | | | | | |
| APPRENTICE INSP. (CONSTRUCTION) | | | | | | |
| APPRENTICE INSPECTOR (ELEVATOR) | | | | | | |
| APPRENTICE INSPECTOR (HEAT/VENT) | | | | | | |
| APPRENTICE INSPECTOR (HOUSING) | | | | | | |
| APPRENTICE INSP. (STEEL CONST.) | | | | | | |
| APPRENTICE REHAB. SPEC. (BLDGS.) | | | | | | |
| MINIMUM | $ | 23,775 | $ | 27,341 | | |
| after 1 YR. | $ | 25,749 | $ | 29,611 | | |
| after 2 YRS. | | | $ | 32,121 | | |
| after 3 YRS. | | | $ | 34,739 | | |
| after 4 YRS. | | | $ | 37,363 | | |
| APPRENTICE INSPECTOR (BOILERS) | | | | | | |
| MINIMUM | $ | 23,775 | $ | 27,341 | | |
| after 1 YR. | $ | 25,749 | $ | 29,611 | | |
| after 2 YRS. | | | $ | 32,121 | | |
| APPRENTICE INSP. (HOISTS & RIGGING) | | | | | | |
| MINIMUM | $ | 27,931 | $ | 32,121 | | |
| after 1 YR. | $ | 30,208 | $ | 34,739 | | |
| after 2 YRS. | | | $ | 37,363 | | |
| ASSOCIATE INSPECTOR (BOILERS) *** | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOC. INSPECTOR (CONSTRUCTION) *** | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOCIATE INSPECTOR (HOISTS & RIGGING) | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOCIATE INSPECTOR (HOUSING) *** | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOCIATE INSPECTOR (PLUMBING) *** | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOCIATE INSPECTOR (ELEVATORS) *** | | | | | | |
| LEVEL I | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| LEVEL II | $ | 50,251 | $ | 57,789 | $ | 70,808 |
| ASSOC. INSPECTOR (LOW PRES. BOILER) | $ | 42,579 | $ | 48,966 | $ | 59,969 |
| ASSOCIATE INSPECTOR (PLASTERING) | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| ASSOCIATE INSPECTOR (STEEL CONS.) *** | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| ASSOCIATE REHABILITATION SPEC. (HPD) | $ | 45,151 | $ | 51,924 | $ | 64,391 |
| INSPECTOR (BOILERS) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (CONSTRUCTION) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (ELEVATOR) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (HEATING & VENTILATION) | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (HOISTS & RIGGING) | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (HOUSING) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (PLASTERING) | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (PLUMBING) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |
| INSPECTOR (STEEL CONSTRUCTION) *** | $ | 39,639 | $ | 45,585 | $ | 57,904 |

PLFPI-GEN000771

| | | | | | |
|---|---|---|---|---|---|
| INSPECTOR (LOW PRESSURE BOILER) | $ | 36,870 | $ | 42,401 | $ 53,459 |
| MULTIPLE DWELLING SPECIALIST (BLDGS.) | | | | | |
| LEVEL I | $ | 43,192 | $ | 49,671 | $ 57,626 |
| LEVEL II | $ | 49,283 | $ | 56,676 | $ 63,351 |
| LEVEL III | $ | 54,257 | $ | 62,395 | $ 71,936 |
| PRIN. MULTIPLE DWELLING SPEC. (BLDG) | $ | 57,024 | $ | 65,578 | $ 76,712 |
| PRINCIPAL CONSTRUCTION INSPECTOR * | $ | 50,027 | $ | 57,531 | $ 69,773 |
| PRINCIPAL HOUSING INSPECTOR * | $ | 50,027 | $ | 57,531 | $ 69,773 |
| REHABILITATION SPECIALIST (HPD) | $ | 39,639 | $ | 45,585 | $ 57,904 |
| SENIOR BOILER INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |
| SENIOR CONSTRUCTION INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |
| SENIOR ELEVATOR INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |
| SENIOR HOIST & RIGGING INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |
| SENIOR HOUSING INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |
| SENIOR PLUMBING INSPECTOR * | $ | 40,806 | $ | 46,927 | $ 58,174 |

c. Effective November 1, 2006

| | i. Minimum** | | ii. Maximum |
|---|---|---|---|
| | (1) Hiring | (2) Incumbent | |

| | | | | | |
|---|---|---|---|---|---|
| APPRENTICE INSPECTOR (CEMENT TEST) | | | | | |
| APPRENTICE INSP. (CONSTRUCTION) | | | | | |
| APPRENTICE INSPECTOR (ELEVATOR) | | | | | |
| APPRENTICE INSPECTOR (HEAT/VENT) | | | | | |
| APPRENTICE INSPECTOR (HOUSING) | | | | | |
| APPRENTICE INSPECTOR (STEEL CONST.) | | | | | |
| APPRENTICE REHAB. SPEC. (BLDGS.) | | | | | |
| MINIMUM | $ | 24,726 | $ | 28,435 | |
| after 1 YR. | $ | 26,778 | $ | 30,795 | |
| after 2 YRS. | | | $ | 33,406 | |
| after 3 YRS. | | | $ | 36,129 | |
| after 4 YRS. | | | $ | 38,858 | |
| APPRENTICE INSPECTOR (BOILERS) | | | | | |
| MINIMUM | $ | 24,726 | $ | 28,435 | |
| after 1 YR. | $ | 26,778 | $ | 30,795 | |
| after 2 YRS. | | | $ | 33,406 | |
| APPRENTICE INSP. (HOISTS & RIGGING) | | | | | |
| MINIMUM | $ | 29,049 | $ | 33,406 | |
| after 1 YR. | $ | 31,417 | $ | 36,129 | |
| after 2 YRS. | | | $ | 38,858 | |
| ASSOCIATE INSPECTOR (BOILERS) *** | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |
| ASSOC. INSPECTOR (CONSTRUCTION) *** | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |
| ASSOCIATE INSPECTOR (HOISTS & RIGGING) | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |
| ASSOCIATE INSPECTOR (HOUSING) *** | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |
| ASSOCIATE INSPECTOR (PLUMBING) *** | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |

PLFPI-GEN000772

| | | | | | |
|---|---|---|---|---|---|
| ASSOCIATE INSPECTOR (ELEVATORS) *** | | | | | |
| LEVEL I | $ | 46,957 | $ | 54,001 | $ 66,967 |
| LEVEL II | $ | 52,262 | $ | 60,101 | $ 73,640 |
| ASSOC. INSPECTOR (LOW PRES. BOILER) | $ | 44,283 | $ | 50,925 | $ 62,368 |
| ASSOCIATE INSPECTOR (PLASTERING) | $ | 46,957 | $ | 54,001 | $ 66,967 |
| ASSOCIATE INSPECTOR (STEEL CONS.) *** | $ | 46,957 | $ | 54,001 | $ 66,967 |
| ASSOCIATE REHABILITATION SPEC. (HPD) . | $ | 46,957 | $ | 54,001 | $ 66,967 |
| INSPECTOR (BOILERS) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (CONSTRUCTION) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (ELEVATOR) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (HEATING & VENTILATION) | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (HOISTS & RIGGING) | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (HOUSING) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (PLASTERING) | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (PLUMBING) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (STEEL CONSTRUCTION) *** | $ | 41,224 | $ | 47,408 | $ 60,220 |
| INSPECTOR (LOW PRESSURE BOILER) | $ | 38,345 | $ | 44,097 | $ 55,597 |
| MULTIPLE DWELLING SPECIALIST (BLDGS.) | | | | | |
| LEVEL I | $ | 44,920 | $ | 51,658 | $ 59,931 |
| LEVEL II | $ | 51,255 | $ | 58,943 | $ 65,885 |
| LEVEL III | $ | 56,427 | $ | 64,891 | $ 74,813 |
| PRIN. MULTIPLE DWELLING SPEC. (BLDG) | $ | 59,305 | $ | 68,201 | $ 79,780 |
| PRINCIPAL CONSTRUCTION INSPECTOR * | $ | 52,028 | $ | 59,832 | $ 72,564 |
| PRINCIPAL HOUSING INSPECTOR * | $ | 52,028 | $ | 59,832 | $ 72,564 |
| REHABILITATION SPECIALIST (HPD) | $ | 41,224 | $ | 47,408 | $ 60,220 |
| SENIOR BOILER INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |
| SENIOR CONSTRUCTION INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |
| SENIOR ELEVATOR INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |
| SENIOR HOIST & RIGGING INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |
| SENIOR HOUSING INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |
| SENIOR PLUMBING INSPECTOR * | $ | 42,438 | $ | 48,804 | $ 60,501 |

*For Present Incumbents Only
**See Article II Section 4 (New Hires)
***40 Hour Work Week

## Section 3. - Wage Increases:

### A.    General Wage Increase

a.    i.    Effective April 1, 2005, employees shall receive a general increase of 3.15 percent.

ii.    Effective May 1, 2006, employees shall receive an additional general increase of 2 percent.

iii.    Effective November 1, 2006, employees shall receive an additional general increase of 4 percent.

PLFPI-GEN000773

      **iv.**    Part-time per annum, per session, hourly paid and part-time per diem employees (including seasonal appointees) and Employees whose normal work year is less than a full calendar year shall receive the increases provided in Sections 3A(a)(i), 3A(a)(ii) and 3A(a)(iii) on the basis of computations heretofore utilized by the parties for all such Employees.

**b.**        The increases provided for in Section 3A(a) above shall be calculated as follows:

      **i.**     The general increase in Section 3A(a)(i) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on March 31, 2005;

      **ii.**    The general increase in Section 3A(a)(ii) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on April 30, 2006.

      **iii.**   The general increase in Section 3A(a)(iii) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on October 31, 2006.

**c.**   **i.**     The general increases provided for in this Section 3 shall be applied to the base rates incremental salary levels and the minimum "hiring rates", minimum "incumbent rates" and maximum rates (including levels), if any, fixed for the applicable titles.

      **ii.**    The general increases provided for in Sections 3A(a)(i), 3A(a)(ii) and 3A(a)(iii) shall be applied to the following "additions to gross": uniform allowances, equipment allowances, transportation allowances, uniform maintenance allowances, assignment differentials, service increments, longevity differentials, longevity increments, advancement increases, assignment (level) increases, and experience, certification, educational, license, evening, or night shift differentials.

## Section 4. - New Hires

**a.**        The appointment rate for any employee newly hired after March 31, 2005, and appointed at a reduced hiring rate shall be the applicable minimum "hiring rate" set forth in subsections 2(a)(i)(1), 2(b)(i)(1) and 2(c)(i)(1) of this Article III. On the two year anniversary of the employee's original date of appointment, such employee shall be paid the indicated minimum "incumbent rate" for the applicable title that is in effect on such two year anniversary as set forth in subsections 2(a)(i)(2), 2(b)(i)(2) and 2(c)(i)(2) of this Article III.

**b.**   **i.**     For a title subject to an incremental pay plan, the employee shall be paid the appropriate increment based upon the employee's length of service. Section 2 of this Article III reflects the correct amounts and has been adjusted in accordance with the provisions of Section 3. c. (i) of this Article III.

PLFPI-GEN000774

     **ii.**    Employees who change titles or levels before attaining one year of service will be treated in the new title or level as if they had been originally appointed to said title or level on their original hiring date.

**c.**    For the purposes of Sections 4(a) and 4(b), employees 1) who were in active pay status before April 1, 2005, and 2) who are affected by the following personnel actions after said date shall not be treated as "newly hired" employees and shall be entitled to receive the indicated minimum "incumbent rate" set forth in subsections 2(a)(i)(2), 2(b)(i)(2), and 2(c)(i)(2) of this Article III:

     **i.**    Employees who return to active status from an approved leave of absence.

     **ii.**    Employees in active status (whether full or part-time) appointed to permanent status from a civil service list, or to a new title (regardless of jurisdictional class or civil service status) without a break in service of more than 31 days.

     **iii.**    Employees who were laid off or terminated for economic reasons who are appointed from a recall/preferred list or who were subject to involuntary redeployment.

     **iv.**    Provisional employees who were terminated due to a civil service list who are appointed from a civil service list within one year of such termination.

     **v.**    Permanent employees who resign and are reinstated or who are appointed from a civil service list within one year of such resignation.

     **vi.**    Employees (regardless of jurisdictional class or civil service status) who resign and return within 31 days of such resignation.

     **vii.**    A provisional employee who is appointed directly from one provisional appointment to another.

     **viii.**    For employees whose circumstances were not anticipated by the parties, the First Deputy Commissioner of Labor Relations is empowered to issue, on a case-by-case basis, interpretations concerning application of this Section 4. Such case-by-case interpretations shall not be subject to the dispute resolution procedures set forth in Article VIII of this Agreement.

**d.**    The First Deputy Commissioner of Labor Relations may, after notification to the affected union(s), exempt certain hard to recruit titles from the provisions of subsection 4.

## Section 5.

Each general increase provided herein, effective as of each indicated date, shall be applied to the rate in effect on the date as specified in Section 3 of this Article. In the case of a promotion or other advancement to the indicated title on the effective date of the general increase specified in Section 3 of this Article, such general increase shall not be applied, but the general increase, if any, provided to be effective as of such date for the title formerly occupied shall be applied.



PLFPI-GEN000775

## Section 6.

In the case of an employee on leave of absence without pay the salary rate of such employee shall be changed to reflect the salary adjustments specified in Article III.

## Section 7.

A person permanently employed by the Employer who is appointed or promoted on a permanent, provisional, or temporary basis in accordance with the Rules and Regulations of the New York City Personnel Director or, where the Rules and Regulations of the New York City Personnel Director are not applicable to a public employer, such other Rules or Regulations as are applicable to the public employer, without a break in service to any of the following title(s) from another title in the direct line of promotion or from another title in the Career and Salary Plan, the minimum rate of which is exceeded by at least 8 percent by the minimum rate of the title to which appointed or promoted, shall receive upon the date of such appointment or promotion either the minimum basic salary for the title to which such appointment or promotion is made, or the salary received or receivable in the lower title plus the specified advancement increase, whichever is greater:

| Title | Effective April 1, 2005 | Effective May 1, 2006 | Effective November 1, 2006 |
|---|---|---|---|
| Inspector (Boiler) | $896 | $914 | $951 |
| Associate Inspector (Low Pressure Boiler) | $896 | $914 | $951 |
| Associate Inspector (Boilers) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Construction) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Elevator) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Hoist & Rigging) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Plumbing) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Housing) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Plastering) | $1,017 | $1,037 | $1,078 |
| Associate Inspector (Steel Construction) | $1,017 | $1,037 | $1,078 |
| Associate Rehabilitation Specialist (HPD) | $1,017 | $1,037 | $1,078 |
| Principal Multiple Dwelling Specialist (Buildings) | $1,264 | $1,289 | $1,341 |

## Section 8. - Assignment Differential

A. An assignment differential in the following pro-rated annual amount shall continue to be paid to the Associate Inspector (Elevator) assigned to supervise all Elevator Inspectors in the Borough of Manhattan. The maximum salary may be extended to include an assignment differential to be paid in accordance with the provisions of this contract during the period for which any such differential is provided. The payment of such differential shall continue only during the period of such assignment. The payment of such differential and any specified assignment on which it may be based shall not be construed as an advancement to any higher title, and any such assignment is revocable at any time.



PLFPI-GEN000776

In the event that an affected employee is removed from such assignment, the assignment differential shall be discontinued.

| Effective Date | Annual Amount |
|---|---|
| April 1, 2005: | $1,632 |
| May 1, 2006: | $1,665 |
| November 1, 2006: | $1,732 |

B.    An assignment differential in the pro-rata annual amount set forth below shall be paid to employees in the titles of Inspector (Housing) and Associate Inspector (Housing) who perform inspection work in the lead unit related to the use of the XRF machine or similar testing device. The maximum salary may be extended to include an assignment differential to be paid in accordance with the provisions of this contract during the period for which any such differential is provided.

Unless otherwise specified in this Agreement, the assignment differential set forth in this Section 8 shall be continued only for the duration of the applicable assignment. In the event that an affected employee is removed from an eligible assignment, such assignment differential shall be discontinued. Payment of an assignment differential shall not be considered as a promotion or change in title.

| Effective Date | Annual Amount |
|---|---|
| April 1, 2005: | $1,547 |
| May 1, 2006: | $1,578 |
| November 1, 2006: | $1,641 |

### Section 9. - Assignment Level Increase

An employee assigned to Associate Inspector assignment Level II shall receive as of the effective date of such assignment, either the appointment rate for the assigned level or the rate received in the former level plus the amount indicated below, whichever is greater.

| Effective Date | Annual Amount |
|---|---|
| April 1, 2005: | $1,141 |
| May 1, 2006: | $1,164 |
| November 1, 2006: | $1,211 |

### Section 10. - Service Increments:

The service increments set forth below shall be paid to eligible employees upon completion of the specified years of service in any title covered by this Agreement or any similar title. Eligible employees shall begin to receive such pro-rata payments on their anniversary date. The pro-rata payments provided for in this section shall be deemed included in the base rate for all purposes.



PLFPI-GEN000777

| Years of Service | Effective April 1, 2005 | Effective May 1, 2006 | Effective November 1, 2006 |
|---|---|---|---|
| After one year of service | $224 | $228 | $237 |
| After two years | $834 | $850 | $885 |
| After five years | $1,443 | $1,472 | $1,531 |
| After six years | $1,888 | $1,926 | $2,003 |
| After nine years | $2,331 | $2,378 | $2,473 |
| After eleven years | $3,367 | $3,434 | $3,571 |
| After twelve years | $3,931 | $4,010 | $4,170 |
| After fourteen years | $5,086 | $5,188 | $5,396 |

## Section 11. - Cleaning Allowance:

Effective as indicated a uniform cleaning allowance in the pro rata annual sum indicated below shall be paid to each covered employee required to wear a uniform supplied by the Employer:

| Effective Date | Annual Amount |
|---|---|
| FY 2005 | $100 |
| FY 2006 | $100 |
| FY 2007 | $100 |

# ARTICLE IV - WELFARE FUND

### Section 1.

(a)     In accordance with the election by the Union pursuant to the provisions of Article XIII of the *1995-2001 Citywide Agreement* as amended between the City of New York and related public employers, or its successor Agreement(s), the Welfare Fund provisions of that *Citywide Agreement* as amended or any successor(s) thereto shall apply to employees covered by this Agreement.

(b)     When an election is made by the Union pursuant to the provisions of Article XIII, Section lb, of the *1995-2001 Citywide Agreement* as amended between the City of New York and related public employers or any successor(s) thereto, the provisions of Article XIII, Section lb of the *Citywide Agreement* as amended or any successor(s) thereto, shall apply to employees covered by this Agreement, and when such election is made, the Union hereby waives its right to training, education and/or legal services contributions provided in this Agreement. In no case shall the single contribution provided in Article XIII, Section lb of the *Citywide Agreement* as amended or any successor(s) thereto, exceed the total amount that the Union would have been entitled to receive if the separate contributions had continued.



PLFPI-GEN000778

## Section 2.

The union agrees to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.

## Section 3.

In accordance with the Health Benefits Agreement dated January 11, 2001, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active employee to widow(er)s, domestic partners and/or children of any employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code. The cost of providing this benefit shall be funded by the Stabilization Fund.

# ARTICLE V - PRODUCTIVITY AND PERFORMANCE

### Introduction

Delivery of municipal services in the most efficient, effective and courteous manner is of paramount importance to the Employer and the Union. Such achievement is recognized to be a mutual obligation of both parties within their respective roles and responsibilities. To achieve and maintain a high level of effectiveness, the parties hereby agree to the following terms:

## Section 1. - Performance Levels

(a)  The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise performance standards or norms notwithstanding the existence of prior performance levels, norms or standards. Such standards, developed by usual work measurement procedures, may be used to determine acceptable performance levels, to prepare work schedules and to measure the performance of each employee or group of employees. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of performance standards or norms hereunder.

(b)  Employees who work at less than acceptable levels of performance may be subject to disciplinary measures in accordance with applicable law.

## Section 2. - Supervisory Responsibility

(a)  The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise standards for supervisory responsibility in achieving and maintaining performance levels of supervised employees for employees in

PLFPI-GEN000779

supervisory positions listed in Article I, Section 1, of this Agreement. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of standards for supervisory responsibility hereunder.

**(b)**    Employees who fail to meet such standards may be subject to disciplinary measures in accordance with applicable law.

## Section 3. - Performance Compensation

The Union acknowledges the Employer's right to pay additional compensation for outstanding performance.

The Employer agrees to notify the Union of its intent to pay such additional compensation.

# ARTICLE VI - GRIEVANCE PROCEDURE

## Section 1. - Definition:

The term *"Grievance "* shall mean:

**a.**    A dispute concerning the application or interpretation of the terms of this Agreement;

**b.**    A claimed violation, misinterpretation or misapplication of the rules or regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment; provided, disputes involving the Personnel Rules and Regulations of the City of New York or the Rules and Regulations of the Health and Hospitals Corporation with respect to those matters set forth in the first paragraph of Section 7390.1 of the Unconsolidated Laws shall not be subject to the grievance procedure or arbitration;

**c.**    A claimed assignment of employees to duties substantially different from those stated in their job specifications;

**d.**    A claimed improper holding of an open-competitive rather than a promotional examination;

**e.**    A claimed wrongful disciplinary action taken against a permanent employee covered by Section 75(1) of the Civil Service Law or a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation upon whom the agency head has served written charges of incompetence or misconduct while the employee is serving in the employee's permanent title or which affects the employee's permanent status.

PLFPI-GEN000780

**f.**    Failure to serve written charges as required by Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation upon a permanent employee covered by Section 75(1) of the Civil Service Law or a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation where any of the penalties (including a fine) set forth in Section 75(3) of the Civil Service Law have been imposed.

## Section 2.

The Grievance Procedure, except for grievances as defined in Sections 1(d) and 1(e) of this Article, shall be as follows:

Employees may at any time informally discuss with their supervisors a matter which may become a grievance. If the results of such a discussion are unsatisfactory, the employees may present the grievance at Step I.

All grievances must be presented in writing at all steps in the grievance procedure. For all grievances as defined in Section 1(c), no monetary award shall in any event cover any period prior to the date of the filing of the **Step I** grievance.

**STEP I**    The employee and/or the Union shall present the grievance in the form of a memorandum to the person designated for such purpose by the agency head no later than 120 days after the date on which the grievance arose. The employee may also request an appointment to discuss the grievance. The person designated by the Employer to hear the grievance shall take any steps necessary to a proper disposition of the grievance and shall issue a determination in writing by the end of the third work day following the date of submission.

    NOTE:    *The following **STEP I(a)** shall be applicable only in the Health and Hospitals Corporation in the case of grievances arising under Section 1a through 1c of this Article and shall be applied prior to **Step II** of this Section:*

**STEP I(a)**    An appeal from an unsatisfactory determination at STEP I shall be presented in writing to the person designated by the agency head for such purpose. The appeal must be made within five (5) work days of the receipt of the STEP I determination. The person designated to receive the appeal at this Step shall meet with the employee and/or the Union for the review of the grievance and shall issue a determination to the employee and/or the Union by the end of the fifth work day following the day on which the appeal was filed.

**STEP II**    An appeal from an unsatisfactory determination at **STEP I** or **STEP I(a),** where applicable, shall be presented in writing to the agency head or the agency head's designated representative who shall not be the same person designated in **STEP I**. The appeal must be made within five (5) work days of the receipt of the **STEP I** or **STEP I(a)** determination. The agency head or designated representative, if any, shall meet with the employee and/or the Union for review of the grievance and

PLFPI-GEN000781

shall issue a determination in writing by the end of the tenth work day following the date on which the appeal was filed.

**STEP III**    An appeal from an unsatisfactory determination at **STEP II** shall be presented by the employee and/or the Union to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the **STEP II** determination. The grievant or the Union should submit copies of the **STEP I** and **STEP II** grievance filings and any agency responses thereto. Copies of such appeal shall be sent to the agency head. The Commissioner of Labor Relations or the Commissioner's designee shall review all appeals from **STEP II** determinations and shall issue a determination on such appeals within fifteen (15) work days following the date on which the appeal was filed.

**STEP IV**    An appeal from an unsatisfactory determination at **STEP III** may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) work days of receipt of the **STEP III** determination. In addition, the Employer shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance". The Employer shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accordance with Title 61 of the Rules of the City Of New York. The costs and fees of such arbitration shall be borne equally by the Union and the Employer.

The assigned arbitrator shall hold a hearing at a time and place convenient to the parties and shall issue an award within 30 days after the completion of the hearing. The arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement or any rule, regulation, written policy or order mentioned in Section 1 of this Article. The arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules. The arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law.

**Section 3.**

As a condition to the right of the Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the employee or employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the employee and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

PLFPI-GEN000782

**Section 4.**

**a.**    Any grievance under Section l(d) relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the employee or the Union representative to the Commissioner of Labor Relations not later than thirty (30) days after the notice of the intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The determination shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.

**b.**    A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within 15 days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator shall decide such grievance within 75 days of its presentation to the arbitrator. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Employer and the Union.

A grievance concerning a large number of Employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning Employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply.  All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

**Section 5.**

In any case involving a grievance under Section l(e) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**    Following the service of written charges, a conference with such employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement. The employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference.

If the employee is satisfied with the determination in **STEP A** above, the employee may choose to accept such determination as an alternative to and in lieu

PLFPI-GEN000783

of a determination made pursuant to the procedures provided for in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As a condition of accepting such determination, the employee shall sign a waiver of the employee's right to the procedures available to him or her under Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.

**STEP B(i)**    If the employee is not satisfied with the determination at **STEP A** above then the Employer shall proceed in accordance with the disciplinary procedures set forth in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As an alternative, the Union with the consent of the employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement, including the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure. As a condition for submitting the matter to the Grievance Procedure the employee and the Union shall file a written waiver of the right to utilize the procedures available to the employee pursuant to Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any. Notwithstanding such waiver, the period of an employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

**STEP B(ii)**    If the election is made to proceed pursuant to the Grievance Procedure, an appeal from the determination of **STEP A** above, shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) work days of the receipt of the determination. The agency head or designated representative shall meet with the employee and the Union for review of the grievance and shall issue a determination to the employee and the Union by the end of the tenth work day following the day on which the appeal was filed. The agency head or designated representative shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D**.

**STEP C**    If the grievant is not satisfied with the determination of the agency head or designated representative the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) work days.

PLFPI-GEN000784

**STEP D**    If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement.

## Section 6.

A grievance concerning a large number of employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

## Section 7.

If a determination satisfactory to the Union at any level of the Grievance Procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at **STEP III** of the Grievance Procedure; or if a satisfactory **STEP III** determination has not been so implemented, the Union may institute a grievance concerning such failure to implement at **STEP IV** of the Grievance Procedure.

## Section 8.

If the Employer exceeds any time limit prescribed at any step in the Grievance Procedure, the grievant and/or the Union may invoke the next step of the procedure, except that only the Union may invoke impartial arbitration under **STEP IV**.

## Section 9.

The Employer shall notify the Union in writing of all grievances filed by employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

## Section 10.

Each of the steps in the Grievance Procedure, as well as time limits prescribed at each step of this Grievance Procedure, may be waived by mutual agreement of the parties.



PLFPI-GEN000785

**Section 11.**

A non-Mayoral agency not covered by this Agreement but which employs employees in titles identical to those covered by this Agreement may elect to permit the Union to appeal an unsatisfactory determination received at the last step of its Grievance Procedure prior to arbitration on fiscal matters only to the Commissioner of Labor Relations. If such election is made, the Union shall present its appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the last step determination. The Union should submit copies of the grievance filings at the prior steps of its Grievance Procedure and any agency responses thereto. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or the Commissioner's designee, shall review all such appeals and answer all such appeals within fifteen (15) work days. An appeal from a determination of the Commissioner of Labor Relations may be taken to arbitration under procedures, if any, applicable to the non-Mayoral agency involved.

**Section 12.**

The grievance and the arbitration procedure contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievances" herein. This shall not be interpreted to preclude either party from enforcing the arbitrator's award in court. This Section shall not be construed in any manner to limit the statutory rights and obligations of the Employer under Article XIV of the Civil Service Law.

**Section 13. - Expedited Arbitration Procedure**

a.      The parties agree that there is a need for an expedited arbitration process which would allow for the prompt adjudication of grievances as set forth below.

b.      The parties voluntarily agree to submit matters to final and binding arbitration pursuant to the New York City Collective Bargaining Law and under the jurisdiction of the Office of Collective Bargaining. An arbitrator or panel of arbitrators, as agreed to by the parties will act as the arbitrator of any issue submitted under the expedited procedure herein.

c.      The selection of those matters which will be submitted shall include, but not limited to, out-of-title cases concerning all titles, disciplinary cases wherein the proposed penalty is a monetary fine of one week or less or written reprimand, and other cases pursuant to mutual agreement by the parties. The following procedures shall apply:

   i.      **SELECTION AND SCHEDULING OF CASES:**

      (1)    The Deputy Chairperson for Disputes of the Office of Collective Bargaining shall propose which cases shall be subject to the procedures set forth in this Section 12 and notify the parties of proposed hearing dates for such cases.



PLFPI-GEN000786

(2)     The parties shall have ten business days from the receipt of the Deputy Chairperson's proposed list of cases and hearing schedule(s) raise any objections thereto.

(3)     If a case is not proposed by the Deputy Chairperson for expedited handling, either party may, at any time prior to the scheduling of an arbitration hearing date for such case, request in writing to the other party and to the Deputy Chairperson of Disputes of the Office of Collective Bargaining that said case be submitted to the expedited procedure. The party receiving such request shall have ten business days from the receipt of the request to raise any objections thereto.

(4)     No case shall be submitted to the expedited arbitration process without the mutual agreement of the parties.

## ii.    CONDUCT OF HEARINGS:

(1)     The presentation of the case, to the extend possible, shall be made in the narrative form. To the degree that witnesses are necessary, examination will be limited to questions of material fact and cross examination will be similarly limited. Submission of relevant documents, etc., will not be unreasonably limited and may be submitted as a "packet" exhibit.

(2)     In the event either party is unable to proceed with hearing a particular case, the case shall be rescheduled. However, only one adjournment shall be permitted. In the event that either party is unable to proceed on a second occasion, a default judgment may be entered against the adjourning party and the Arbitrators discretion absent good cause shown.

(3)     The Arbitrator shall not be precluded from attempting to assist the parties in settling a particular case.

(4)     A decision will be issued by the Arbitrator within two weeks. It will not be necessary in the Award to recount any of the facts presented. However, a brief explanation of the Arbitrator's rationale may be included. Bench decisions may also be issued by the Arbitrator.

(5)     Decisions in this expedited procedure shall not be considered as precedent for any other case nor entered into evidence in any other forum or dispute except to enforce the Arbitrator's award.

(6)     The parties shall, whenever possible, exchange any documents intended to be offered in evidence at least one week in advance of the first hearing date and shall endeavor to stipulate to the issue in advance of the hearing date.

PLFPI-GEN000787

## ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for the employees to read. All notices shall be on Union stationery, and shall be used only to notify employees of matters pertaining to Union affairs. Upon request to the responsible official in charge of a work location, the Union may use Employer premises for meetings during employees' lunch hours, subject to availability of appropriate space and provided such meetings do not interfere with the Employer's business.

## ARTICLE VIII - NO STRIKES

In accordance with the New York City Collective Bargaining Law, as amended, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE IX - CITYWIDE ISSUES

This Agreement is subject to the provisions, terms and conditions of the Agreement which has been or may be negotiated between the City and the Union recognized as the exclusive collective bargaining representative on Citywide matters which must be uniform for specified employees, including the employees covered by this Agreement.

Employees in Rule X titles shall receive the benefits of the *Citywide Agreement* unless otherwise specifically excluded herein.

## ARTICLE X - UNION ACTIVITY

Time spent by employee representatives in the conduct of labor relations with the City and on Union activities shall be governed by the terms of Executive Order No. 75, as amended, dated March 22, 1973, entitled "Time Spent on the Conduct of Labor Relations between the City and its Employees and on Union Activity" or any other applicable Executive Order.

## ARTICLE XI - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The Employer and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty employees covered by this Agreement.



PLFPI-GEN000788

## Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the Grievance Procedure shall not be appropriate items for consideration by the labor-management committee.

## Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. Each committee shall select a chairperson from among its members at each meeting. The chairperson ship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

## Section 4.

The labor-management committee shall meet at the call of either the Union members or the Employer members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide, to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## ARTICLE XII - TRANSFERS & REASSIGNMENTS

For purposes of this Article, a transfer shall mean the shifting of an employee from one location to another without any significant change in duties and responsibilities. Reassignment shall mean a change in assignment involving a substantial change in duties and responsibilities. The Employer shall not transfer or reassign any employee covered by this Agreement as a penalty without the presentation of charges in accordance with established disciplinary procedures.

In all transfers and reassignments of employees covered by this Agreement, the Employer shall give consideration to the employee's past record of performance, his ability to perform the duties required in the new assignment, seniority, travel distance and availability of a vacancy which can be filled. In the Department of Buildings and the Department of Housing Preservation and Development, a detailed schedule of all assignments and tours in all boroughs shall be given to the Union. These schedules shall show the Inspectors and Senior Inspectors assigned to each district and all such employees on special assignments. The Union shall have the opportunity to examine any new schedule at least eight (8) days before the effective date of such schedule.

The Employer agrees not to transfer or reassign duly elected officers, delegates and alternates of the Union without prior consultation with the Union. The number of elected officers, delegates



PLFPI-GEN000789

and alternates shall not number more than thirty-five (35) for this purpose. The Union shall keep the Employer informed in writing of the names of its officials, delegates and alternate delegates and shall notify the Employer within eight (8) calendar days of any changes.

## ARTICLE XIII - PHYSICAL FACILITIES & SAFETY

### Section 1.

The Employer shall make reasonable effort to provide adequate, clean, safe and sanitary office and working space, in compliance with the applicable laws for all employees covered by this Agreement. The Employer shall, where feasible, provide each employee covered by this Agreement with the basic equipment, forms, books and other supplies required in the performance of the employee's work together with space for the overnight storage of same.

### Section 2.

Whenever possible, all new code enforcement centers shall be air-conditioned and, if practicable, old centers not yet air-conditioned shall be converted to such as soon as possible.

### Section 3.

The Department of Housing Preservation and the Department of Buildings' employees covered by this Agreement who are assigned to field inspection work in areas where there is a high incidence of crime, as may be determined by the City, shall be assigned to work in two-men teams. The two men assigned to such a team need not necessarily both be inspectors. The additional person, if not an inspector, shall be an able bodied civil service employee. The determination of the City in this matter shall not be subject to the grievance procedure. The operation of this provision shall be reviewed on a regular basis by the Labor-Management Committee.

## ARTICLE XIV - WORK SCHEDULE

A change in work schedules affecting 50% of a unit or 30 or more in a unit of employees shall be made by the Employer only after prior discussion with the Union.

A unit of employees shall consist of a group of employees in the Department of Housing Preservation and Development and the Department of Buildings performing like or comparable functions, i.e., night emergency, Citywide squad, Borough operations, RESCU, Manhattan Plumbing Inspectors and Citywide Borough Inspectors.

## ARTICLE XV - PERSONNEL RECORDS

Within one week following a written request by the Union, the Employer shall make available for perusal by the Union such records in the possession of the Employer which indicate the name,



PLFPI-GEN000790

address, employee number, status and effective dates of the appointment, reinstatement, promotion, retirement or other separation of any employee.

## ARTICLE XVI - PARKING FACILITIES

The Employer shall, where feasible, make parking spaces available for the personal cars of employees receiving car allowances, on-street or off-street, near the various reporting locations, without any cost to the employee.

## ARTICLE XVII - MISCELLANEOUS PROVISIONS

### Section 1.

Where feasible, the Employer agrees to determine and set aside during part of the regular work days the appropriate amount of time necessary for employees covered by this Agreement to perform the required writing, filing of forms and filing of papers regarding each inspection, observance or examination they perform.

### Section 2.

Supervisory personnel or their subordinates selected by the Employer to present the Employer's position at any step of the grievance or disciplinary procedure set forth in Article VI of this Agreement shall not serve as either Hearing Examiner or Hearing Officer in the same matter at any other step of said procedure.

## ARTICLE XVIII - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York as amended.

## ARTICLE XIX - APPENDICES

The Appendix or Appendices, if any, attached hereto and initialed by the undersigned shall be deemed a part of this Agreement as if fully set forth herein.

## ARTICLE XX - SAVINGS CLAUSE

In the event that any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.



PLFPI-GEN000791

## ARTICLE XXI - CONTRACTING-OUT CLAUSE

The problem of "Contracting Out" or "Farming Out" of work normally performed by personnel covered by this Agreement shall be referred to the Labor-Management Committee as provided for in Article XI of this Agreement.

## ARTICLE XXII - CIVIL SERVICE AND CAREER DEVELOPMENT

A joint committee composed of representatives of the Offices of Management and Budget, Labor Relations, the Department of Citywide Administrative Services, the Department of Housing Preservation and Development, the Department of Buildings and the Union shall meet to study problems related to career development and retention of personnel, and where necessary make recommendations to the appropriate Employer officials.



PLFPI-GEN000792

*WHEREFORE*, we have hereunto set our hands and seals this 27th day of March, 2007.

**FOR THE CITY OF NEW YORK AND RELATED
PUBLIC EMPLOYERS AS DEFINED HEREIN:**

BY: _James F. Hanley_
JAMES F. HANLEY
Commissioner of Labor Relations

**FOR ALLIED BUILDING INSPECTORS
LOCAL 211, I.U.O.E, AFL-CIO**

BY: _Joseph M. Corso_
JOSEPH M. CORSO
President and Business Manager

**APPROVED AS TO FORM:**

BY: _Paul T. Rephen_
PAUL T. REPHEN
Acting Corporation Counsel

**SUBMITTED TO THE FINANCIAL CONTROL BOARD:**

DATE:_____

**UNIT:  BUILDING AND CONSTRUCTION INSPECTORS**

**TERM: April 1, 2005 to December 2, 2007**



OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL                              CONTRACT

2005-2007 Building and Construction Inspectors

# OFFICE OF LABOR RELATIONS

## 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
299 Broadway
New York, New York 10007

Re: 2005-2007 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This is to clarify our mutual understanding that the addition of the word *written* in the grievance
procedure in Article VI, Section 1 of the Agreement between the City of New York and the Allied
Building Inspectors for the above period will not change the Union's ability to grieve a verbal
order of a superior which is alleged to violate a written policy or order of an agency.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

2005-2007 Building and Construction Inspectors

PLFPI-GEN000794



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

### 40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
299 Broadway
New York, New York 10007

Re: 2005-2007 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This will confirm our understanding that within a reasonable time of receipt of a written request by the Union to this Office, the Office of Labor Relations shall make available for perusal by the Union a list containing the names and titles and effective dates of appointment of all employees from whom union dues or agency shop fees are being deducted.

Very truly yours,

*James F. Hanley*
JAMES F. HANLEY

2005-2007 Building and Construction Inspectors

PLFPI-GEN000795



# THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

**40 Rector Street, New York, NY 10006-1705**

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
299 Broadway
New York, New York 10007

Re: 2005-2007 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This will confirm our understanding and agreement that the terms of the so-called *Toia memoranda* dated December 11 and January 3, 1978, relating to the contracting out of architectural and engineering services shall apply in principle to the titles covered by the above Agreement for its term.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

2005-2007 Building and Construction Inspectors

PLFPI-GEN000796



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
299 Broadway
New York, New York 10007

Re: 2005-2007 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

## Transit Check
The parties agree that the City will expand the current Transit Check program to offer to eligible employees the ability to purchase a Transit Debit Card through payroll deductions in accordance with IRC Section 132. In addition to the current MTA Surface and Subway lines, the Transit Debit Card may be used to purchase tickets for mass transit commutation only (i.e. LIRR, LI MTA Buses, MetroNorth). The administrative fee for this benefit will be borne by the participants and will be deducted on a prorated basis from the participating employee's paycheck. After one year of experience with this benefit, the City will examine the level of participation and the associated costs of providing this benefit to determine whether or not the administrative fee requires adjustment.

The parties further agree to examine the possible expansion of this benefit to include other regional mass transit carriers.

## Residency
The parties agree to support an amendment to Section 12-119 et seq. of the Administrative Code for the purpose of expanding permissible limits on residency to include the City of New York and Nassau, Westchester, Suffolk, Orange, Rockland or Putnam counties – with certain exceptions and limitations and except as may be prohibited by any other law requiring residency for appointment to certain positions including, but not limited to, the Public Officers Law – for employees covered by the terms of this Agreement.

2005-2007 Building and Construction Inspectors

Consistent with the above, Mayoral Directive 78-13, as amended July 26, 1978, and any other covered Employer's rules, regulations and/or operating procedures, shall be similarly modified to conform to the understanding of the parties.

Upon enactment of legislation to implement the provisions herein, employees shall be subject to Section 1127 of the New York City Charter.

## Labor Management Committee on Pension Issues

There shall be a joint Labor Management Committee on Pensions with the appropriate parties. The committee shall analyze the actual costs and additional contribution rate(s) for members of the New York City Employees' Retirement System (NYCERS) and the Board of Education Retirement System (BERS) associated with Chapter 96 of the Laws of 1995. Such analysis shall be based on, among other factors, the actual number of people who elected to participate under the provisions of said Chapter 96 of the Laws of 1995 as of September 26, 1995. The committee shall make recommendations regarding the establishment of revised additional contribution rate(s) and other remedies it deems appropriate so as to reflect the actual cost to members of NYCERS and BERS. Regardless of the comparison of actual costs to additional contributions for members of NYCERS and BERS, there shall be no adjustment to contributions under Chapter 96 without first considering the contributions by the employer to NYCERS and BERS on behalf of all employees, and the comparison of those contributions to actual costs.

The appropriate parties further agree to discuss the following issues:

| | |
|---|---|
| Chapter 96 Reopener | Chapter 96 Escape |
| Age and Vesting Requirements | Member Contribution Amounts and Duration |
| Benefit Formula Changes | Service Credits |
| Any other areas the parties mutually agree to | |

## Continuation of Certain Health Benefits

The parties acknowledge that collective bargaining regarding health benefits is within the purview of negotiations between the Municipal Labor Committee and the City. Cost-containment initiatives in the City Health Benefits Program shall be discussed with the Municipal Labor Committee.

## Salary Review Panel

A Salary Review Panel shall be established to review selected titles and occupational groups to determine whether or not salary adjustments or other compensation modifications appear to be indicated and, based on their findings, to make such recommendations as are appropriate. The Panel Procedures shall be set forth in a letter agreement. The parties further agree that no recommendation for salary modifications and/or other adjustments shall be implemented unless and until the parties have agreed on the source(s) of funding.

## Additional Compensation Funds

Effective December 2, 2007, the bargaining unit shall have available funds not to exceed 0.34% to purchase recurring benefits, mutually agreed to by the parties, other than to enhance the general wage increases set forth in Section 4 or the hiring rate for new employees set forth in Section 5. The funds available shall be based on the December 31, 2005 1% book.

2005-2007 Building and Construction Inspectors

PLFPI-GEN000798

**Performance Compensation Procedures**

The Letter Agreement between the City of New York and District Council 37 regarding such criteria and procedures insofar as they relate to the City of New York's "Performance Compensation Procedures" shall apply in lieu of the provisions in Article V, Section 3.

**Welfare Funds**

Effective April 1, 2006, the contribution paid on behalf of each full-time per annum Employee to each applicable welfare fund shall be increased by one hundred dollars ($100) per annum.

Effective August 1, 2006, there shall be a one-time payment to each applicable welfare fund in the amount of $166.67 on behalf of each full-time active member and retiree who is receiving benefits on August 1, 2006.

The per annum contribution rates and the one-time lump sum payment paid on behalf of eligible part-time per annum, hourly paid, per session and per diem (including seasonal appointees) whose normal work year is less than a full calendar year shall be adjusted in the same proportion heretofore utilized by the parties for all such Employees as the per annum contribution rates are adjusted for full-time Employees.

The per annum contribution rates paid on behalf of employees separated from service to a welfare fund which covers such employees shall be adjusted in the same manner as the per annum contribution rates for other employees are adjusted.

The Unions agree to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.

Pursuant to the Health Benefits Agreement, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active employee to widow(ers), domestic partners and/or children of any employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code. The cost of providing this benefit shall be funded by the Stabilization Fund.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF
Local 211, IUOE

By: _____
    Joseph Corso
    President

2005-2007 Building and Construction Inspectors



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

## 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Mr. Joseph Corso
President
Allied Building Inspectors
Local 211, I.U.O.E.
299 Broadway
New York, New York 10007

Re: 2005-2007 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This is to confirm the parties' mutual agreement and understanding regarding the disposition of Article III, Section 3., C. of the 2002-2005 Building and Construction Inspectors Agreement.

If, when, and as the Department of Buildings adopts a uniform dress code policy, Local 211 agrees to the following.

The parties understand, agree and intend that employees shall change into and out of uniform outside of compensable hours, and that compensable time shall be calculated from arrival at the first assignment until departure from the last work assignment exclusive of any unpaid meal period.

In lieu of providing time within the tour to change into and out of uniform, and predicated on the additional anticipated productivity gains, Employees in Mayoral agencies, only, shall receive an uncompounded general increase of one percent (1.0%) prospectively based on the salaries in effect as of the date of implementation of the dress code. The 1% increase provided herein is inclusive of a component for "mutual efforts in reducing paid sick leave usage" in the same amount and in the same manner as applied to other civilian Unions. Notwithstanding any other provision(s) of the collective bargaining agreement, the above-referenced uncompounded general wage increase shall be applied to the additions-to-gross in Article III, Sections 7, 8, 9 and 10, only.

If, for any reason, the dress code is not implemented by December 2, 2007, then the parties shall not be required to identify alternative productivity savings, the above-referenced uncompounded general wage increase shall not be applicable at all, and the provisions of Article III, Section 3., C. shall have no further force and effect.

2005-2007 Building and Construction Inspectors

PLFPI-GEN000800

If implementation of the dress code does occur prior to December 2, 2007, in the further event that any provision of this agreement shall at any time for any reason be adjudged to be invalid by a Court of competent jurisdiction, then the parties shall be required to negotiate a new agreement to identify alternative productivity savings to fund the increases provided herein. Upon the execution of such agreement, this agreement shall terminate. Pending the negotiation of such new agreement, this agreement shall be continued in its entirety, and if in the interim any adverse judicial decision is reversed, vacated or otherwise nullified, then the new agreement shall not be deemed necessary and this agreement shall continue.

Nothing contained herein shall limit or diminish the Employer's or the Union's rights pursuant to §12-307(b) of the New York City Collective Bargaining Law, except as specifically provided herein. Notwithstanding this, the Union waives its right to raise any claims of any nature relating to this agreement including, but not limited to, a claim of practical impact relating to the additional productivity gains achieved through this agreement, and the Union agrees that all matters subject to bargaining have been disposed of in this Agreement.

If the above accords with your understanding, please indicate your acceptance by executing the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF
Local 211, IUOE

By: _____
Joseph Corso
President

2005-2007 Building and Construction Inspectors

PLFPI-GEN000802



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      JAMES F. HANLEY, COMMISSIONER

SUBJECT:   EXECUTED CONTRACT: BUILDINGS & CONSTRUCTION INSPECTORS

TERM:      DECEMBER 3, 2007 TO DECEMBER 15, 2009


    Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and Allied Building Inspectors, Local 211, on behalf of the incumbents of positions listed in Article I of said contract.

    The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED:   **JAN 2 3 2009**

---

OFFICE OF LABOR RELATIONS

**REGISTRATION**

OFFICIAL                    **CONTRACT**



NO:                                **DATE:**
**09.008**              JAN 2 3 2009

---

CHALMERS_FPI_LIT-00001532

# 2007-2009 Building and Construction Inspectors Agreement

## TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ...........................................2

ARTICLE II - DUES CHECKOFF ......................................................................................5

ARTICLE III - SALARIES .................................................................................................5

ARTICLE IV - WELFARE FUND ....................................................................................14

ARTICLE V - PRODUCTIVITY AND PERFORMANCE.......................................................15

ARTICLE VI - GRIEVANCE PROCEDURE ......................................................................16

ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES...........................................23

ARTICLE VIII - NO STRIKES.........................................................................................23

ARTICLE IX - CITYWIDE ISSUES .................................................................................24

ARTICLE X - UNION ACTIVITY.....................................................................................24

ARTICLE XI - LABOR-MANAGEMENT COMMITTEE......................................................24

ARTICLE XII - TRANSFERS & REASSIGNMENTS ...........................................................25

ARTICLE XIII - PHYSICAL FACILITIES & SAFETY .........................................................25

ARTICLE XIV - WORK SCHEDULE ...............................................................................26

ARTICLE XV - PERSONNEL RECORDS..........................................................................26

ARTICLE XVI - PARKING FACILITIES............................................................................26

ARTICLE XVII - MISCELLANEOUS PROVISIONS ...........................................................27

ARTICLE XVIII - FINANCIAL EMERGENCY ACT............................................................27

ARTICLE XIX - APPENDICES .......................................................................................27

ARTICLE XX - SAVINGS CLAUSE.................................................................................27

ARTICLE XXI - CONTRACTING-OUT CLAUSE...............................................................27

ARTICLE XXII - CIVIL SERVICE AND CAREER DEVELOPMENT ......................................28

09008

CHALMERS_FPI_LIT-00001533

AGREEMENT entered into this $23\text{rd}$ day of Jan , 2009 by and between the **City of New York** and related public employers pursuant to and limited to their respective elections or statutory requirement to be covered by the New York City Collective Bargaining Law and their respective authorizations to the City to bargain on their behalf and the **New York City Health and Hospitals Corporation** (hereinafter referred to jointly as the "Employer"), and **Allied Building Inspectors, Local 211, I U.O.E., AFL-CIO** (hereinafter referred to as the "Union"), for the period from December 3, 2007 through December 15, 2009.

## W I T N E S S E T H :

**WHEREAS**, the parties hereto have entered into collective bargaining and desire to reduce the results thereof to writing,

**NOW, THEREFORE**, it is mutually agreed as follows:

# ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

## Section 1.

The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the bargaining unit set forth below, consisting of employees of the Employer, wherever employed, whether full-time, part-time per annum, hourly or per diem, in the below listed title(s), and in any successor title(s) that may be certified by the Board of Certification of the Office of Collective Bargaining to be part of the unit herein for which the Union is the exclusive collective bargaining representative and in any positions in Restored Rule X titles of the Classified Service the duties of which are or shall be equated by the City Personnel Director and the Director of the Budget for salary purposes to any of the below listed title(s):

| TC# | TITLE |
|-----|-------|
| 35002 | APPRENTICE INSPECTOR (CEMENT TEST) |
| 35003 | APPRENTICE INSPECTOR (CONSTRUCTION) |
| 35005 | APPRENTICE INSPECTOR (ELEVATOR) |
| 35006 | APPRENTICE INSPECTOR (HEATING & VENTILATION |
| 35009 | APPRENTICE INSPECTOR (HOUSING) |

09008

CHALMERS_FPI_LIT-00001534

| TC# | TITLE |
|-----|-------|
| 35010 | APPRENTICE INSPECTOR (STEEL CONSTRUCTION) |
| 35141 | APPRENTICE REHABILITATION SPECIALIST (BLDGS.) |
| 35001 | APPRENTICE INSPECTOR (BOILERS) |
| 35008 | APPRENTICE INSPECTOR (HOISTS & RIGGING) |
| 31640 | ASSOCIATE INSPECTOR (BOILERS) |
| 31642 | ASSOCIATE INSPECTOR (CONSTRUCTION) |
| 31647 | ASSOCIATE INSPECTOR (HOISTS & RIGGING) |
| 31675 | ASSOCIATE INSPECTOR (HOUSING) |
| 31649 | ASSOCIATE INSPECTOR (PLUMBING) |
| 31644 | ASSOCIATE INSPECTOR (ELEVATORS) |
| 31676 | ASSOCIATE INSPECTOR (LOW PRESSURE BOILERS) |
| 31648 | ASSOCIATE INSPECTOR (PLASTERING) |
| 31650 | ASSOCIATE INSPECTOR (STEEL CONSTRUCTION) |
| 31685 | ASSOCIATE REHABILITATION SPECIALIST (HPD) |
| 31620 | INSPECTOR (BOILERS) |
| 31621 | INSPECTOR (CEMENT TEST) |
| 31622 | INSPECTOR (CONSTRUCTION) |
| 31624 | INSPECTOR (ELEVATOR) |
| 31625 | INSPECTOR (HEATING & VENTILATION) |
| 31627 | INSPECTOR (HOISTS & RIGGING) |
| 31670 | INSPECTOR (HOUSING) |
| 31628 | INSPECTOR (PLASTERING) |
| 31629 | INSPECTOR (PLUMBING) |
| 31630 | INSPECTOR (STEEL CONSTRUCTION) |

09008

CHALMERS_FPI_LIT-00001535

| TC# | TITLE |
|-----|-------|
| 31671 | INSPECTOR (LOW PRESSURE BOILER) |
| 22401 | MULTIPLE DWELLING SPECIALIST (BLDGS.) |
| 22402 | PRINCIPAL MULTIPLE DWELLING SPECIALIST (BLDGS.) |
| 32260 | PRINCIPAL CONSTRUCTION INSPECTOR* |
| 31560 | PRINCIPAL HOUSING INSPECTOR* |
| 31680 | REHABILITATION SPECIALIST (HPD) |
| 31935 | SENIOR BOILER INSPECTOR* |
| 32235 | SENIOR CONSTRUCTION INSPECTOR* |
| 33035 | SENIOR ELEVATOR INSPECTOR* |
| 33235 | SENIOR HOIST & RIGGING INSPECTOR* |
| 31535 | SENIOR HOUSING INSPECTOR* |
| 33635 | SENIOR PLUMBING INSPECTOR* |

(*) For Present Incumbents only

## Section 2.

The terms "employee" and "employees" as used in this Agreement shall mean only those persons in the unit described in Section 1 of this Article.

09008

CHALMERS_FPI_LIT-00001536

# ARTICLE II - DUES CHECKOFF

### Section 1.

**a.**    The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in accordance with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Relating to the Checkoff of Union Dues" and in accordance with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Procedures for Orderly Payroll Check-Off of Union Dues and Agency Shop Fees."

**b.**    Any employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient of dues thereof. Such consent, if given, shall be in a proper form acceptable to the City, which bears the signature of the employee.

### Section 2.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

# ARTICLE III - SALARIES

### Section 1.

**a.**    This Article III is subject to the provisions, terms and conditions of the Alternative Career and Salary Pay Plan Regulations, dated March 15, 1967 as amended, except that the specific terms and conditions of this Article shall supersede any provisions of such Regulations inconsistent with this Agreement subject to the limitations of applicable provisions of law.

**b.**    Unless otherwise specified, all salary provisions of this Agreement, including minimum and maximum salaries, advancement or level increases, general increases, education differentials and any other salary adjustments, are based upon a normal work week of 40 hours.   In accordance with Article IX, Section 24 of the 1995 – 2001 Citywide Agreement, an Employee who works on a full-time, per-diem basis shall receive their base salary (including salary increment schedules) and/or additions-to-gross payment in the same manner as a full-time, per-annum employee.  An employee who works on a part-time per annum basis and who is eligible for any salary adjustments provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed on the relationship between the number of hours regularly worked each week by such employee and the number of hours in the said normal work week, unless otherwise specified.

09008

CHALMERS_FPI_LIT-00001537

c.     Employees who work on a part-time per diem or hourly basis and who are eligible for any salary adjustment provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed as follows, unless otherwise specified:

> Per diem rate - 1/261 of the appropriate minimum basic salary.
>
> Hourly Rate - 35 hour week basis -  1/1827 of the appropriate minimum basic salary.
> Hourly Rate - 40 hour week basis -  1/2088 of the appropriate minimum basic salary

d.     The maximum salary for a title shall not constitute a bar to the payment of any salary adjustment or pay differentials provided for in this Agreement but the said increase above the maximum shall not be deemed a promotion.

## Section 2.

Employees in the following title(s) shall be subject to the following specified salary(ies), salary adjustment(s), and/or salary range(s):

a. Effective December 3, 2007

|  | i. Minimum** | | ii. Maximum |
|---|---|---|---|
|  | (1) Hiring | (2) Incumbent |  |
| APPRENTICE INSPECTOR (CEMENT TEST) | | | |
| APPRENTICE INSP. (CONSTRUCTION) | | | |
| APPRENTICE INSPECTOR (ELEVATOR) | | | |
| APPRENTICE INSPECTOR (HEAT/VENT) | | | |
| APPRENTICE INSPECTOR (HOUSING) | | | |
| APPRENTICE INSPECTOR (STEEL CONST.) | | | |
| APPRENTICE REHAB. SPEC. (BLDGS.) | | | |
| MINIMUM | $26,045 | $29,952 | |
| after 1 YR. | $28,207 | $32,438 | |
| After 2 YRS. | | $35,188 | |
| After 3 YRS. | | $38,057 | |
| After 4 YRS. | | $40,932 | |
| APPRENTICE INSPECTOR (BOILERS) | | | |
| MINIMUM | $26,045 | $29,952 | |
| after 1 YR. | $28,207 | $32,438 | |
| After 2 YRS. | | $35,188 | |
| APPRENTICE INSP. (HOISTS & RIGGING) | | | |
| MINIMUM | $30,598 | $35,188 | |
| after 1 YR. | $33,093 | $38,057 | |
| after 2 YRS. | | $40,932 | |
| ASSOCIATE INSPECTOR (BOILERS) *** | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |
| ASSOC. INSPECTOR (CONSTRUCTION) *** | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |

CHALMERS_FPI_LIT-00001538

| | | | |
|---|---|---|---|
| ASSOCIATE INSPECTOR (HOISTS & RIGGING) | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |
| ASSOCIATE INSPECTOR (HOUSING) *** | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |
| ASSOCIATE INSPECTOR (PLUMBING) *** | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |
| ASSOCIATE INSPECTOR (ELEVATORS) *** | | | |
| LEVEL I | $49,463 | $56,882 | $70,540 |
| LEVEL II | $55,050 | $63,308 | $77,569 |
| ASSOC. INSPECTOR (LOW PRES. BOILER) | $46,646 | $53,643 | $65,696 |
| ASSOCIATE INSPECTOR (PLASTERING) | $49,463 | $56,882 | $70,540 |
| ASSOCIATE INSPECTOR (STEEL CONS.) *** | $49,463 | $56,882 | $70,540 |
| ASSOCIATE REHABILITATION SPEC. (HPD) | $49,463 | $56,882 | $70,540 |
| INSPECTOR (BOILERS) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (CONSTRUCTION) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (ELEVATOR) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (HEATING & VENTILATION) | $43,424 | $49,938 | $63,434 |
| INSPECTOR (HOISTS & RIGGING) | $43,424 | $49,938 | $63,434 |
| INSPECTOR (HOUSING) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (PLASTERING) | $43,424 | $49,938 | $63,434 |
| INSPECTOR (PLUMBING) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (STEEL CONSTRUCTION) *** | $43,424 | $49,938 | $63,434 |
| INSPECTOR (LOW PRESSURE BOILER) | $40,391 | $46,450 | $58,564 |
| MULTIPLE DWELLING SPECIALIST (BLDGS.) | | | |
| LEVEL I | $47,317 | $54,415 | $63,129 |
| LEVEL II | $53,990 | $62,088 | $69,401 |
| LEVEL III | $59,438 | $68,354 | $78,805 |
| PRIN. MULTIPLE DWELLING SPEC. (BLDG) | $62,470 | $71,840 | $84,037 |
| PRINCIPAL CONSTRUCTION INSPECTOR * | $54,803 | $63,024 | $76,436 |
| PRINCIPAL HOUSING INSPECTOR * | $54,803 | $63,024 | $76,436 |
| REHABILITATION SPECIALIST (HPD) | $43,424 | $49,938 | $63,434 |
| SENIOR BOILER INSPECTOR * | $44,703 | $51,408 | $63,729 |
| SENIOR CONSTRUCTION INSPECTOR * | $44,703 | $51,408 | $63,729 |
| SENIOR ELEVATOR INSPECTOR * | $44,703 | $51,408 | $63,729 |
| SENIOR HOIST & RIGGING INSPECTOR * | $44,703 | $51,408 | $63,729 |
| SENIOR HOUSING INSPECTOR * | $44,703 | $51,408 | $63,729 |
| SENIOR PLUMBING INSPECTOR * | $44,703 | $51,408 | $63,729 |



CHALMERS_FPI_LIT-00001539

b. Effective December 3, 2008

| | i. Minimum** (1) Hiring | (2) Incumbent | ii. Maximum |
|---|---|---|---|
| APPRENTICE INSPECTOR (CEMENT TEST) | | | |
| APPRENTICE INSP. (CONSTRUCTION) | | | |
| APPRENTICE INSPECTOR (ELEVATOR) | | | |
| APPRENTICE INSPECTOR (HEAT/VENT) | | | |
| APPRENTICE INSPECTOR (HOUSING) | | | |
| APPRENTICE INSPECTOR (STEEL CONST.) | | | |
| APPRENTICE REHAB. SPEC. (BLDGS.) | | | |
| MINIMUM | $27,087 | $31,150 | |
| after 1 YR. | $29,336 | $33,736 | |
| after 2 YRS. | | $36,596 | |
| after 3 YRS. | | $39,579 | |
| after 4 YRS. | | $42,569 | |
| APPRENTICE INSPECTOR (BOILERS) | | | |
| MINIMUM | $27,087 | $31,150 | |
| after 1 YR. | $29,336 | $33,736 | |
| after 2 YRS. | | $36,596 | |
| APPRENTICE INSP. (HOISTS & RIGGING) | | | |
| MINIMUM | $31,823 | $36,596 | |
| after 1 YR. | $34,417 | $39,579 | |
| after 2 YRS. | | $42,569 | |
| ASSOCIATE INSPECTOR (BOILERS) *** | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOC. INSPECTOR (CONSTRUCTION) *** | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOCIATE INSPECTOR (HOISTS & RIGGING) | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOCIATE INSPECTOR (HOUSING) *** | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOCIATE INSPECTOR (PLUMBING) *** | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOCIATE INSPECTOR (ELEVATORS) *** | | | |
| LEVEL I | $51,441 | $59,157 | $73,362 |
| LEVEL II | $57,252 | $65,840 | $80,672 |
| ASSOC. INSPECTOR (LOW PRES. BOILER) | $48,512 | $55,789 | $68,324 |
| ASSOCIATE INSPECTOR (PLASTERING) | $51,441 | $59,157 | $73,362 |
| ASSOCIATE INSPECTOR (STEEL CONS.) *** | $51,441 | $59,157 | $73,362 |
| ASSOCIATE REHABILITATION SPEC. (HPD) | $51,441 | $59,157 | $73,362 |
| INSPECTOR (BOILERS) *** | $45,162 | $51,936 | $65,971 |
| INSPECTOR (CONSTRUCTION) *** | $45,162 | $51,936 | $65,971 |
| INSPECTOR (ELEVATOR) *** | $45,162 | $51,936 | $65,971 |
| INSPECTOR (HEATING & VENTILATION) | $45,162 | $51,936 | $65,971 |
| INSPECTOR (HOISTS & RIGGING) | $45,162 | $51,936 | $65,971 |
| INSPECTOR (HOUSING) *** | $45,162 | $51,936 | $65,971 |
| INSPECTOR (PLASTERING) | $45,162 | $51,936 | $65,971 |
| INSPECTOR (PLUMBING) *** | $45,162 | $51,936 | $65,971 |

09008

CHALMERS_FPI_LIT-00001540

| | | | |
|---|---|---|---|
| INSPECTOR (STEEL CONSTRUCTION) *** | $45,162 | $51,936 | $65,971 |
| INSPECTOR (LOW PRESSURE BOILER) | $42,007 | $48,308 | $60,907 |
| MULTIPLE DWELLING SPECIALIST (BLDGS.) | | | |
| LEVEL I | $49,210 | $56,592 | $65,654 |
| LEVEL II | $56,150 | $64,572 | $72,177 |
| LEVEL III | $61,816 | $71,088 | $81,957 |
| PRIN. MULTIPLE DWELLING SPEC. (BLDG) | $64,969 | $74,714 | $87,398 |
| PRINCIPAL CONSTRUCTION INSPECTOR * | $56,996 | $65,545 | $79,493 |
| PRINCIPAL HOUSING INSPECTOR * | $56,996 | $65,545 | $79,493 |
| REHABILITATION SPECIALIST (HPD) | $45,162 | $51,936 | $65,971 |
| SENIOR BOILER INSPECTOR * | $46,490 | $53,464 | $66,278 |
| SENIOR CONSTRUCTION INSPECTOR * | $46,490 | $53,464 | $66,278 |
| SENIOR ELEVATOR INSPECTOR * | $46,490 | $53,464 | $66,278 |
| SENIOR HOIST & RIGGING INSPECTOR * | $46,490 | $53,464 | $66,278 |
| SENIOR HOUSING INSPECTOR * | $46,490 | $53,464 | $66,278 |
| SENIOR PLUMBING INSPECTOR * | $46,490 | $53,464 | $66,278 |

*For Present Incumbents Only
**See Article II Section 4 (New Hires)
***40 Hour Work Week

## Section 3. - Wage Increases:

### A.    General Wage Increase

a.    i.    Effective December 3, 2007, employees shall receive a general increase of four percent.

ii.    Effective December 3, 2008, employees shall receive an additional general increase of four percent.

iii.    Part-time per annum, per session, hourly paid and part-time per diem employees (including seasonal appointees) and Employees whose normal work year is less than a full calendar year shall receive the increases provided in Sections 3A(a)(i), and 3A(a)(ii) on the basis of computations heretofore utilized by the parties for all such Employees.

b.    The increases provided for in Section 3A(a) above shall be calculated as follows:

i.    The general increase in Section 3A(a)(i) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on December 2, 2007;

ii.    The general increase in Section 3A(a)(ii) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on December 2, 2008.



CHALMERS_FPI_LIT-00001541

c.   i.   The general increases provided for in this Section 3 shall be applied to the base rates incremental salary levels and the minimum "hiring rates", minimum "incumbent rates" and maximum rates (including levels), if any, fixed for the applicable titles.

     ii.  The general increases provided for in Sections 3A(a)(i) and 3A(a)(ii) shall not be applied to the following "additions to gross": uniform allowances, equipment allowances, transportation allowances, uniform maintenance allowances, assignment differentials, service increments, longevity differentials, longevity increments, advancement increases, assignment (level) increases, and experience, certification, educational, license, evening, or night shift differentials.

## Section 4. - New Hires

a.   The appointment rate for any employee newly hired after December 3, 2007, and appointed at a reduced hiring rate shall be the applicable minimum "hiring rate" set forth in subsections 2(a)(i)(1) and 2(b)(i)(1) of this Article III. On the two year anniversary of the employee's original date of appointment, such employee shall be paid the indicated minimum "incumbent rate" for the applicable title that is in effect on such two year anniversary as set forth in subsections 2(a)(i)(2) and 2(b)(i)(2) of this Article III.

b.   i.   For a title subject to an incremental pay plan, the employee shall be paid the appropriate increment based upon the employee's length of service. Section 2 of this Article III reflects the correct amounts and has been adjusted in accordance with the provisions of Section 3. c. (i) of this Article III.

     ii.  Employees who change titles or levels before attaining one year of service will be treated in the new title or level as if they had been originally appointed to said title or level on their original hiring date.

c.   For the purposes of Sections 4(a) and 4(b), employees 1) who were in active pay status before December 3, 2007, and 2) who are affected by the following personnel actions after said date shall not be treated as "newly hired" employees and shall be entitled to receive the indicated minimum "incumbent rate" set forth in subsections 2(a)(i)(2) and 2(b)(i)(2) of this Article III:

     i.   Employees who return to active status from an approved leave of absence.

     ii.  Employees in active status (whether full or part-time) appointed to permanent status from a civil service list, or to a new title (regardless of jurisdictional class or civil service status) without a break in service of more than 31 days.

     iii. Employees who were laid off or terminated for economic reasons who are appointed from a recall/preferred list or who were subject to involuntary redeployment.



CHALMERS_FPI_LIT-00001542

    **iv.**  Provisional employees who were terminated due to a civil service list who are appointed from a civil service list within one year of such termination.

    **v.**  Permanent employees who resign and are reinstated or who are appointed from a civil service list within one year of such resignation.

    **vi.**  Employees (regardless of jurisdictional class or civil service status) who resign and return within 31 days of such resignation.

    **vii.**  A provisional employee who is appointed directly from one provisional appointment to another.

    **viii.**  For employees whose circumstances were not anticipated by the parties, the First Deputy Commissioner of Labor Relations is empowered to issue, on a case-by-case basis, interpretations concerning application of this Section 4. Such case-by-case interpretations shall not be subject to the dispute resolution procedures set forth in Article VIII of this Agreement.

  **d.**  The First Deputy Commissioner of Labor Relations may, after notification to the affected union(s), exempt certain hard to recruit titles from the provisions of subsection 4.

## Section 5.

Each general increase provided herein, effective as of each indicated date, shall be applied to the rate in effect on the date as specified in Section 3 of this Article. In the case of a promotion or other advancement to the indicated title on the effective date of the general increase specified in Section 3 of this Article, such general increase shall not be applied, but the general increase, if any, provided to be effective as of such date for the title formerly occupied shall be applied.

## Section 6.

In the case of an employee on leave of absence without pay the salary rate of such employee shall be changed to reflect the salary adjustments specified in Article III.

## Section 7.

A person permanently employed by the Employer who is appointed or promoted on a permanent, provisional, or temporary basis in accordance with the Rules and Regulations of the New York City Personnel Director or, where the Rules and Regulations of the New York City Personnel Director are not applicable to a public employer, such other Rules or Regulations as are applicable to the public employer, without a break in service to any of the following title(s) from another title in the direct line of promotion or from another title in the Career and Salary Plan, the minimum rate of which is exceeded by at least 8 percent by the minimum rate of the title to which appointed or promoted, shall receive upon the date of such appointment or promotion either the minimum basic salary for the title to which such appointment or promotion is made, or the salary received or receivable in the lower title plus the specified advancement increase, whichever is greater:

09.008.

CHALMERS_FPI_LIT-00001543

| Title | Effective December 3, 2007 |
| --- | --- |
| Inspector (Boiler) | $960 |
| Associate Inspector (Low Pressure Boiler) | $960 |
| Associate Inspector (Boilers) | $1,088 |
| Associate Inspector (Construction) | $1,088 |
| Associate Inspector (Elevator) | $1,088 |
| Associate Inspector (Hoist & Rigging) | $1,088 |
| Associate Inspector (Plumbing) | $1,088 |
| Associate Inspector (Housing) | $1,088 |
| Associate Inspector (Plastering) | $1,088 |
| Associate Inspector (Steel Construction) | $1,088 |
| Associate Rehabilitation Specialist (HPD) | $1,088 |
| Principal Multiple Dwelling Specialist (Buildings) | $1,354 |

## Section 8. - Assignment Differential

A.  An assignment differential in the following pro-rated annual amount shall continue to be paid to the Associate Inspector (Elevator) assigned to supervise all Elevator Inspectors in the Borough of Manhattan. The maximum salary may be extended to include an assignment differential to be paid in accordance with the provisions of this contract during the period for which any such differential is provided. The payment of such differential shall continue only during the period of such assignment. The payment of such differential and any specified assignment on which it may be based shall not be construed as an advancement to any higher title, and any such assignment is revocable at any time. In the event that an affected employee is removed from such assignment, the assignment differential shall be discontinued.

| Effective Date | Annual Amount |
| --- | --- |
| December 3, 2007: | $1,749 |

B.  An assignment differential in the pro-rata annual amount set forth below shall be paid to employees in the titles of Inspector (Housing) and Associate Inspector (Housing) who perform inspection work in the lead unit related to the use of the XRF machine or similar testing device. The maximum salary may be extended to include an assignment differential to be paid in accordance with the provisions of this contract during the period for which any such differential is provided.

Unless otherwise specified in this Agreement, the assignment differential set forth in this Section 8 shall be continued only for the duration of the applicable assignment. In the event that an affected employee is removed from an eligible assignment, such assignment

09.008

CHALMERS_FPI_LIT-00001544

differential shall be discontinued. Payment of an assignment differential shall not be considered as a promotion or change in title.

| Effective Date | Annual Amount |
|---|---|
| December 3, 2007: | $1,657 |

## Section 9. - Assignment Level Increase

An employee assigned to Associate Inspector assignment Level II shall receive, as of the effective date of such assignment, either the appointment rate for the assigned level or the rate received in the former level plus the amount indicated below, whichever is greater.

| Effective Date | Annual Amount |
|---|---|
| December 3, 2007: | $1,223 |

## Section 10. - Service Increments:

The service increments set forth below shall be paid to eligible employees upon completion of the specified years of service in any title covered by this Agreement or any similar title. Eligible employees shall begin to receive such pro-rata payments on their anniversary date. The pro-rata payments provided for in this section shall be deemed included in the base rate for all purposes.

| Years of Service | Effective December 3, 2007 |
|---|---|
| After one year of service | $239 |
| After two years | $894 |
| After five years | $1,546 |
| After six years | $2,022 |
| After nine years | $2,497 |
| After eleven years | $3,605 |
| After twelve years | $4,210 |
| After fourteen years | $5,448 |

## Section 11. - Cleaning Allowance:

Effective as indicated a uniform cleaning allowance in the pro rata annual sum indicated below shall be paid to each covered employee required to wear a uniform supplied by the Employer:

| Effective Date | Annual Amount |
|---|---|
| FY 2008 | $100 |
| FY 2009 | $100 |

09008

CHALMERS_FPI_LIT-00001545

# ARTICLE IV - WELFARE FUND

### Section 1.

(a)     In accordance with the election by the Union pursuant to the provisions of Article XIII of the *1995-2001 Citywide Agreement* as amended between the City of New York and related public employers, or its successor Agreement(s), the Welfare Fund provisions of that *Citywide Agreement* as amended or any successor(s) thereto shall apply to employees covered by this Agreement.

(b)     When an election is made by the Union pursuant to the provisions of Article XIII, Section lb, of the *1995-2001 Citywide Agreement* as amended between the City of New York and related public employers or any successor(s) thereto, the provisions of Article XIII, Section lb of the *Citywide Agreement* as amended or any successor(s) thereto, shall apply to employees covered by this Agreement, and when such election is made, the Union hereby waives its right to training, education and/or legal services contributions provided in this Agreement. In no case shall the single contribution provided in Article XIII, Section lb of the *Citywide Agreement* as amended or any successor(s) thereto, exceed the total amount that the Union would have been entitled to receive if the separate contributions had continued.

### Section 2.

The union agrees to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.

### Section 3.

In accordance with the Health Benefits Agreement dated January 11, 2001, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active employee to widow(er)s, domestic partners and/or children of any employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code. The cost of providing this benefit shall be funded by the Stabilization Fund.



CHALMERS_FPI_LIT-00001546

## ARTICLE V - PRODUCTIVITY AND PERFORMANCE
### Introduction

Delivery of municipal services in the most efficient, effective and courteous manner is of paramount importance to the Employer and the Union. Such achievement is recognized to be a mutual obligation of both parties within their respective roles and responsibilities. To achieve and maintain a high level of effectiveness, the parties hereby agree to the following terms:

### Section 1. - Performance Levels

(a)     The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise performance standards or norms notwithstanding the existence of prior performance levels, norms or standards. Such standards, developed by usual work measurement procedures, may be used to determine acceptable performance levels, to prepare work schedules and to measure the performance of each employee or group of employees. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of performance standards or norms hereunder.

(b)     Employees who work at less than acceptable levels of performance may be subject to disciplinary measures in accordance with applicable law.

### Section 2. - Supervisory Responsibility

(a)     The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise standards for supervisory responsibility in achieving and maintaining performance levels of supervised employees for employees in supervisory positions listed in Article I, Section I, of this Agreement. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of standards for supervisory responsibility hereunder.

(b)     Employees who fail to meet such standards may be subject to disciplinary measures in accordance with applicable law.

### Section 3. - Performance Compensation

The Union acknowledges the Employer's right to pay additional compensation for outstanding performance.

The Employer agrees to notify the Union of its intent to pay such additional compensation.



CHALMERS_FPI_LIT-00001547

# ARTICLE VI - GRIEVANCE PROCEDURE

## Section 1. - Definition:

The term "*Grievance*" shall mean:

**a.**   A dispute concerning the application or interpretation of the terms of this Agreement;

**b.**   A claimed violation, misinterpretation or misapplication of the rules or regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment; provided, disputes involving the Personnel Rules and Regulations of the City of New York or the Rules and Regulations of the Health and Hospitals Corporation with respect to those matters set forth in the first paragraph of Section 7390.1 of the Unconsolidated Laws shall not be subject to the grievance procedure or arbitration;

**c.**   A claimed assignment of employees to duties substantially different from those stated in their job specifications;

**d.**   A claimed improper holding of an open-competitive rather than a promotional examination;

**e.**   A claimed wrongful disciplinary action taken against a permanent employee covered by Section 75(1) of the Civil Service Law or a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation upon whom the agency head has served written charges of incompetence or misconduct while the employee is serving in the employee's permanent title or which affects the employee's permanent status.

**f.**   Failure to serve written charges as required by Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation upon a permanent employee covered by Section 75(1) of the Civil Service Law or a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation where any of the penalties (including a fine) set forth in Section 75(3) of the Civil Service Law have been imposed.

## Section 2.

The Grievance Procedure, except for grievances as defined in Sections 1(d) and 1(e) of this Article, shall be as follows:

Employees may at any time informally discuss with their supervisors a matter which may become a grievance. If the results of such a discussion are unsatisfactory, the employees may present the grievance at Step I.



CHALMERS_FPI_LIT-00001548

All grievances must be presented in writing at all steps in the grievance procedure. For all grievances as defined in Section 1(c), no monetary award shall in any event cover any period prior to the date of the filing of the **Step I** grievance.

**STEP I**      The employee and/or the Union shall present the grievance in the form of a memorandum to the person designated for such purpose by the agency head no later than 120 days after the date on which the grievance arose. The employee may also request an appointment to discuss the grievance. The person designated by the Employer to hear the grievance shall take any steps necessary to a proper disposition of the grievance and shall issue a determination in writing by the end of the third work day following the date of submission.

> NOTE:    The following **STEP I(a)** shall be applicable only in the Health and Hospitals Corporation in the case of grievances arising under Section 1a through 1c of this Article and shall be applied prior to **Step II** of this Section:

**STEP I(a)**   An appeal from an unsatisfactory determination at STEP I shall be presented in writing to the person designated by the agency head for such purpose. The appeal must be made within five (5) work days of the receipt of the STEP I determination. The person designated to receive the appeal at this Step shall meet with the employee and/or the Union for the review of the grievance and shall issue a determination to the employee and/or the Union by the end of the fifth work day following the day on which the appeal was filed.

**STEP II**     An appeal from an unsatisfactory determination at **STEP I** or **STEP I(a)**, where applicable, shall be presented in writing to the agency head or the agency head's designated representative who shall not be the same person designated in **STEP I**. The appeal must be made within five (5) work days of the receipt of the **STEP I** or **STEP I(a)** determination. The agency head or designated representative, if any, shall meet with the employee and/or the Union for review of the grievance and shall issue a determination in writing by the end of the tenth work day following the date on which the appeal was filed.

**STEP III**    An appeal from an unsatisfactory determination at **STEP II** shall be presented by the employee and/or the Union to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the **STEP II** determination. The grievant or the Union should submit copies of the **STEP I** and **STEP II** grievance filings and any agency responses thereto. Copies of such appeal shall be sent to the agency head. The Commissioner of Labor Relations or the Commissioner's designee shall review all appeals from **STEP II** determinations and shall issue a determination on such appeals within fifteen (15) work days following the date on which the appeal was filed.

**STEP IV**     An appeal from an unsatisfactory determination at **STEP III** may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) work days of receipt of the **STEP III** determination. In addition, the Employer shall have the right to bring directly to arbitration any

09.008

CHALMERS_FPI_LIT-00001549

dispute between the parties concerning any matter defined herein as a "grievance". The Employer shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accordance with Title 61 of the Rules of the City Of New York. The costs and fees of such arbitration shall be borne equally by the Union and the Employer.

The assigned arbitrator shall hold a hearing at a time and place convenient to the parties and shall issue an award within 30 days after the completion of the hearing. The arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement or any rule, regulation, written policy or order mentioned in Section 1 of this Article. The arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules. The arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law.

### Section 3.

As a condition to the right of the Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the employee or employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the employee and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

### Section 4.

a.    Any grievance under Section 1(d) relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the employee or the Union representative to the Commissioner of Labor Relations not later than thirty (30) days after the notice of the intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The determination shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.

b.    A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within 15 days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator

09.008

CHALMERS_FPI_LIT-00001550

shall decide such grievance within 75 days of its presentation to the arbitrator. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Employer and the Union.

A grievance concerning a large number of Employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning Employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

## Section 5.

In any case involving a grievance under Section l(e) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**     Following the service of written charges, a conference with such employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement. The employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference.

If the employee is satisfied with the determination in **STEP A** above, the employee may choose to accept such determination as an alternative to and in lieu of a determination made pursuant to the procedures provided for in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As a condition of accepting such determination, the employee shall sign a waiver of the employee's right to the procedures available to him or her under Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.

**STEP B(i)**     If the employee is not satisfied with the determination at **STEP A** above then the Employer shall proceed in accordance with the disciplinary procedures set forth in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As an alternative, the Union with the consent of the employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement, including the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure. As a condition for submitting the matter to the Grievance Procedure the employee and the Union shall file a written waiver of the right to utilize the procedures available to the employee pursuant to Sections 75 and 76 of the Civil Service Law or the Rules and



CHALMERS_FPI_LIT-00001551

Regulations of the Health and Hospitals Corporation or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any. Notwithstanding such waiver, the period of an employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

**STEP B(ii)**   If the election is made to proceed pursuant to the Grievance Procedure, an appeal from the determination of **STEP A** above, shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) work days of the receipt of the determination. The agency head or designated representative shall meet with the employee and the Union for review of the grievance and shall issue a determination to the employee and the Union by the end of the tenth work day following the day on which the appeal was filed. The agency head or designated representative shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D**.

**STEP C**   If the grievant is not satisfied with the determination of the agency head or designated representative the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) work days.

**STEP D**   If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement.

## Section 6.

A grievance concerning a large number of employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

09.008

CHALMERS_FPI_LIT-00001552

### Section 7.

If a determination satisfactory to the Union at any level of the Grievance Procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at **STEP III** of the Grievance Procedure; or if a satisfactory **STEP III** determination has not been so implemented, the Union may institute a grievance concerning such failure to implement at **STEP IV** of the Grievance Procedure.

### Section 8.

If the Employer exceeds any time limit prescribed at any step in the Grievance Procedure, the grievant and/or the Union may invoke the next step of the procedure, except that only the Union may invoke impartial arbitration under **STEP IV**.

### Section 9.

The Employer shall notify the Union in writing of all grievances filed by employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

### Section 10.

Each of the steps in the Grievance Procedure, as well as time limits prescribed at each step of this Grievance Procedure, may be waived by mutual agreement of the parties.

### Section 11.

A non-Mayoral agency not covered by this Agreement but which employs employees in titles identical to those covered by this Agreement may elect to permit the Union to appeal an unsatisfactory determination received at the last step of its Grievance Procedure prior to arbitration on fiscal matters only to the Commissioner of Labor Relations. If such election is made, the Union shall present its appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the last step determination. The Union should submit copies of the grievance filings at the prior steps of its Grievance Procedure and any agency responses thereto. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or the Commissioner's designee, shall review all such appeals and answer all such appeals within fifteen (15) work days. An appeal from a determination of the Commissioner of Labor Relations may be taken to arbitration under procedures, if any, applicable to the non-Mayoral agency involved.

### Section 12.

The grievance and the arbitration procedure contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievances" herein. This shall not be interpreted to preclude either party from enforcing the arbitrator's award in court. This Section shall not be



CHALMERS_FPI_LIT-00001553

construed in any manner to limit the statutory rights and obligations of the Employer under Article XIV of the Civil Service Law.

## Section 13. - Expedited Arbitration Procedure

a.     The parties agree that there is a need for an expedited arbitration process which would allow for the prompt adjudication of grievances as set forth below.

b.     The parties voluntarily agree to submit matters to final and binding arbitration pursuant to the New York City Collective Bargaining Law and under the jurisdiction of the Office of Collective Bargaining. An arbitrator or panel of arbitrators, as agreed to by the parties will act as the arbitrator of any issue submitted under the expedited procedure herein.

c.     The selection of those matters which will be submitted shall include, but not limited to, out-of-title cases concerning all titles, disciplinary cases wherein the proposed penalty is a monetary fine of one week or less or written reprimand, and other cases pursuant to mutual agreement by the parties. The following procedures shall apply:

### i.     SELECTION AND SCHEDULING OF CASES:

(1)     The Deputy Chairperson for Disputes of the Office of Collective Bargaining shall propose which cases shall be subject to the procedures set forth in this Section 12 and notify the parties of proposed hearing dates for such cases.

(2)     The parties shall have ten business days from the receipt of the Deputy Chairperson's proposed list of cases and hearing schedule(s) raise any objections thereto.

(3)     If a case is not proposed by the Deputy Chairperson for expedited handling, either party may, at any time prior to the scheduling of an arbitration hearing date for such case, request in writing to the other party and to the Deputy Chairperson of Disputes of the Office of Collective Bargaining that said case be submitted to the expedited procedure. The party receiving such request shall have ten business days from the receipt of the request to raise any objections thereto.

(4)     No case shall be submitted to the expedited arbitration process without the mutual agreement of the parties.

### ii.     CONDUCT OF HEARINGS:

(1)     The presentation of the case, to the extend possible, shall be made in the narrative form. To the degree that witnesses are necessary, examination will be limited to questions of material fact and cross examination will be



CHALMERS_FPI_LIT-00001554

similarly limited. Submission of relevant documents, etc., will not be unreasonably limited and may be submitted as a "packet" exhibit.

(2) In the event either party is unable to proceed with hearing a particular case, the case shall be rescheduled. However, only one adjournment shall be permitted. In the event that either party is unable to proceed on a second occasion, a default judgment may be entered against the adjourning party and the Arbitrators discretion absent good cause shown.

(3) The Arbitrator shall not be precluded from attempting to assist the parties in settling a particular case.

(4) A decision will be issued by the Arbitrator within two weeks. It will not be necessary in the Award to recount any of the facts presented. However, a brief explanation of the Arbitrator's rationale may be included. Bench decisions may also be issued by the Arbitrator.

(5) Decisions in this expedited procedure shall not be considered as precedent for any other case nor entered into evidence in any other forum or dispute except to enforce the Arbitrator's award.

(6) The parties shall, whenever possible, exchange any documents intended to be offered in evidence at least one week in advance of the first hearing date and shall endeavor to stipulate to the issue in advance of the hearing date.

# ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for the employees to read. All notices shall be on Union stationery, and shall be used only to notify employees of matters pertaining to Union affairs. Upon request to the responsible official in charge of a work location, the Union may use Employer premises for meetings during employees' lunch hours, subject to availability of appropriate space and provided such meetings do not interfere with the Employer's business.

# ARTICLE VIII - NO STRIKES

In accordance with the New York City Collective Bargaining Law, as amended, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, mass absenteeism, or induce any mass resignations during the term of this Agreement.



09.008

CHALMERS_FPI_LIT-00001555

# ARTICLE IX - CITYWIDE ISSUES

This Agreement is subject to the provisions, terms and conditions of the Agreement which has been or may be negotiated between the City and the Union recognized as the exclusive collective bargaining representative on Citywide matters which must be uniform for specified employees, including the employees covered by this Agreement.

Employees in Rule X titles shall receive the benefits of the *Citywide Agreement* unless otherwise specifically excluded herein.

# ARTICLE X - UNION ACTIVITY

Time spent by employee representatives in the conduct of labor relations with the City and on Union activities shall be governed by the terms of Executive Order No. 75, as amended, dated March 22, 1973, entitled "Time Spent on the Conduct of Labor Relations between the City and its Employees and on Union Activity" or any other applicable Executive Order.

# ARTICLE XI - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The Employer and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty employees covered by this Agreement.

### Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the Grievance Procedure shall not be appropriate items for consideration by the labor-management committee.

### Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. Each committee shall select a chairperson from among its members at each meeting. The chairperson ship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.



CHALMERS_FPI_LIT-00001556

### Section 4.

The labor-management committee shall meet at the call of either the Union members or the Employer members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide, to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

# ARTICLE XII - TRANSFERS & REASSIGNMENTS

For purposes of this Article, a transfer shall mean the shifting of an employee from one location to another without any significant change in duties and responsibilities. Reassignment shall mean a change in assignment involving a substantial change in duties and responsibilities. The Employer shall not transfer or reassign any employee covered by this Agreement as a penalty without the presentation of charges in accordance with established disciplinary procedures.

In all transfers and reassignments of employees covered by this Agreement, the Employer shall give consideration to the employee's past record of performance, his ability to perform the duties required in the new assignment, seniority, travel distance and availability of a vacancy which can be filled. In the Department of Buildings and the Department of Housing Preservation and Development, a detailed schedule of all assignments and tours in all boroughs shall be given to the Union. These schedules shall show the Inspectors and Senior Inspectors assigned to each district and all such employees on special assignments. The Union shall have the opportunity to examine any new schedule at least eight (8) days before the effective date of such schedule.

The Employer agrees not to transfer or reassign duly elected officers, delegates and alternates of the Union without prior consultation with the Union. The number of elected officers, delegates and alternates shall not number more than thirty-five (35) for this purpose. The Union shall keep the Employer informed in writing of the names of its officials, delegates and alternate delegates and shall notify the Employer within eight (8) calendar days of any changes.

# ARTICLE XIII - PHYSICAL FACILITIES & SAFETY

### Section 1.

The Employer shall make reasonable effort to provide adequate, clean, safe and sanitary office and working space, in compliance with the applicable laws for all employees covered by this Agreement. The Employer shall, where feasible, provide each employee covered by this Agreement with the basic equipment, forms, books and other supplies required in the performance of the employee's work together with space for the overnight storage of same.



CHALMERS_FPI_LIT-00001557

**Section 2.**

Whenever possible, all new code enforcement centers shall be air-conditioned and, if practicable, old centers not yet air-conditioned shall be converted to such as soon as possible.

**Section 3.**

The Department of Housing Preservation and the Department of Buildings' employees covered by this Agreement who are assigned to field inspection work in areas where there is a high incidence of crime, as may be determined by the City, shall be assigned to work in two-men teams. The two men assigned to such a team need not necessarily both be inspectors. The additional person, if not an inspector, shall be an able bodied civil service employee. The determination of the City in this matter shall not be subject to the grievance procedure. The operation of this provision shall be reviewed on a regular basis by the Labor-Management Committee.

# ARTICLE XIV - WORK SCHEDULE

A change in work schedules affecting 50% of a unit or 30 or more in a unit of employees shall be made by the Employer only after prior discussion with the Union.

A unit of employees shall consist of a group of employees in the Department of Housing Preservation and Development and the Department of Buildings performing like or comparable functions, i.e., night emergency, Citywide squad, Borough operations, RESCU, Manhattan Plumbing Inspectors and Citywide Borough Inspectors.

# ARTICLE XV - PERSONNEL RECORDS

Within one week following a written request by the Union, the Employer shall make available for perusal by the Union such records in the possession of the Employer which indicate the name, address, employee number, status and effective dates of the appointment, reinstatement, promotion, retirement or other separation of any employee.

# ARTICLE XVI - PARKING FACILITIES

The Employer shall, where feasible, make parking spaces available for the personal cars of employees receiving car allowances, on-street or off-street, near the various reporting locations, without any cost to the employee.



CHALMERS_FPI_LIT-00001558

# ARTICLE XVII - MISCELLANEOUS PROVISIONS

**Section 1.**

Where feasible, the Employer agrees to determine and set aside during part of the regular work days the appropriate amount of time necessary for employees covered by this Agreement to perform the required writing, filing of forms and filing of papers regarding each inspection, observance or examination they perform.

**Section 2.**

Supervisory personnel or their subordinates selected by the Employer to present the Employer's position at any step of the grievance or disciplinary procedure set forth in Article VI of this Agreement shall not serve as either Hearing Examiner or Hearing Officer in the same matter at any other step of said procedure.

# ARTICLE XVIII - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York as amended.

# ARTICLE XIX - APPENDICES

The Appendix or Appendices, if any, attached hereto and initialed by the undersigned shall be deemed a part of this Agreement as if fully set forth herein.

# ARTICLE XX - SAVINGS CLAUSE

In the event that any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

# ARTICLE XXI - CONTRACTING-OUT CLAUSE

The problem of "Contracting Out" or "Farming Out" of work normally performed by personnel covered by this Agreement shall be referred to the Labor-Management Committee as provided for in Article XI of this Agreement.



09008

CHALMERS_FPI_LIT-00001559

# ARTICLE XXII - CIVIL SERVICE AND CAREER DEVELOPMENT

A joint committee composed of representatives of the Offices of Management and Budget, Labor Relations, the Department of Citywide Administrative Services, the Department of Housing Preservation and Development, the Department of Buildings and the Union shall meet to study problems related to career development and retention of personnel, and where necessary make recommendations to the appropriate Employer officials.



CHALMERS_FPI_LIT-00001560

*WHEREFORE*, we have hereunto set our hands and seals this 23 day of Jan , 2009.

FOR THE CITY OF NEW YORK AND RELATED
PUBLIC EMPLOYERS AS DEFINED HEREIN:

FOR ALLIED BUILDING INSPECTORS
LOCAL 211, I.U.O.E, AFL-CIO

BY: _____
JAMES F. HANLEY
Commissioner of Labor Relations

BY: _____
JOSEPH M. CORSO
President and Business Manager

APPROVED AS TO FORM:

BY: _____
PAUL T. REPHEN
Acting Corporation Counsel

SUBMITTED TO THE FINANCIAL CONTROL BOARD:

DATE:_____

| OFFICE OF LABOR RELATIONS | |
| --- | --- |
| REGISTRATION | |
| OFFICIAL | CONTRACT |
| NO:<br>09.0 0.8 | DATE:<br>JAN 2 3 2009 |

UNIT: BUILDING AND CONSTRUCTION INSPECTORS

TERM: December 3, 2007 to December 15, 2009

CHALMERS_FPI_LIT-00001561



# THE CITY OF NEW YORK
# **OFFICE OF LABOR RELATIONS**

40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
225 Broadway - Suite 4300
New York, New York 10007

Re: 2007-2009 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This is to clarify our mutual understanding that the addition of the word *written* in the grievance procedure in Article VI, Section 1 of the Agreement between the City of New York and the Allied Building Inspectors for the above period will not change the Union's ability to grieve a verbal order of a superior which is alleged to violate a written policy or order of an agency.

Very truly yours,

JAMES F. HANLEY

09008

2007-2009 Building and Construction Inspectors



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
225 Broadway – Suite 4300
New York, New York 10007

Re: 2007-2009 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This will confirm our understanding that within a reasonable time of receipt of a written request
by the Union to this Office, the Office of Labor Relations shall make available for perusal by the
Union a list containing the names and titles and effective dates of appointment of all employees
from whom union dues or agency shop fees are being deducted.

Very truly yours,

JAMES F. HANLEY

09008

2007-2009 Building and Construction Inspectors



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS

**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Mr. Joseph M. Corso, President
Allied Building Inspectors
Local 211, I.U.O.E.
225 Broadway – Suite 4300
New York, New York 10007

Re: 2007-2009 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This will confirm our understanding and agreement that the terms of the so-called *Toia memoranda* dated December 11 and January 3, 1978, relating to the contracting out of architectural and engineering services shall apply in principle to the titles covered by the above Agreement for its term.

Very truly yours,

JAMES F. HANLEY

09008

2007-2009 Building and Construction Inspectors



# THE CITY OF NEW YORK
# **OFFICE OF LABOR RELATIONS**

**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*
*MARGARET M. CONNOR*
*First Deputy Commissioner*

Mr. Joseph Corso
President
Allied Building Inspectors
Local 211, I.U.O.E.
225 Broadway – Suite 4300
New York, New York 10007

Re: 2007-2009 Building and Construction Inspectors Agreement

Dear Mr. Corso:

This is to confirm the parties' mutual agreement and understanding regarding the disposition of Article III, Section 3., C. of the 2002-2005 Building and Construction Inspectors Agreement.

If, when, and as the Department of Buildings adopts a uniform dress code policy, Local 211 agrees to the following.

The parties understand, agree and intend that employees shall change into and out of uniform outside of compensable hours, and that compensable time shall be calculated from arrival at the first assignment until departure from the last work assignment exclusive of any unpaid meal period.

In lieu of providing time within the tour to change into and out of uniform, and predicated on the additional anticipated productivity gains, Employees in Mayoral agencies, only, shall receive an uncompounded general increase of one percent (1.0%) prospectively based on the salaries in effect as of the date of implementation of the dress code. The 1% increase provided herein is inclusive of a component for "mutual efforts in reducing paid sick leave usage" in the same amount and in the same manner as applied to other civilian Unions. Notwithstanding any other provision(s) of the collective bargaining agreement, the above-referenced uncompounded general wage increase shall be applied to the additions-to-gross in Article III, Sections 7, 8, 9 and 10, only.

If, for any reason, the dress code is not implemented by December 2, 2007, then the parties shall not be required to identify alternative productivity savings, the above-referenced uncompounded general wage increase shall not be applicable at all, and the provisions of Article III, Section 3., C. shall have no further force and effect.

**09.008**

2007-2009 Building and Construction Inspectors

CHALMERS_FPI_LIT-00001565

If implementation of the dress code does occur prior to December 2, 2007, in the further event that any provision of this agreement shall at any time for any reason be adjudged to be invalid by a Court of competent jurisdiction, then the parties shall be required to negotiate a new agreement to identify alternative productivity savings to fund the increases provided herein. Upon the execution of such agreement, this agreement shall terminate. Pending the negotiation of such new agreement, this agreement shall be continued in its entirety, and if in the interim any adverse judicial decision is reversed, vacated or otherwise nullified, then the new agreement shall not be deemed necessary and this agreement shall continue.

Nothing contained herein shall limit or diminish the Employer's or the Union's rights pursuant to §12-307(b) of the New York City Collective Bargaining Law, except as specifically provided herein. Notwithstanding this, the Union waives its right to raise any claims of any nature relating to this agreement including, but not limited to, a claim of practical impact relating to the additional productivity gains achieved through this agreement, and the Union agrees that all matters subject to bargaining have been disposed of in this Agreement.

If the above accords with your understanding, please indicate your acceptance by executing the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF
Local 211, IUOE

By: _____
Joseph Corso
President

09008

CHALMERS_FPI_LIT-00001566



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Mr. Joseph Corso
President
Allied Building Inspectors
Local 211, I.U.O.E.
225 Broadway – Suite 4300
New York, New York  10007

Re: 2007-2009 Building and Construction Inspectors Agreement

Dear Mr. Corso:

Effective on December 3, 2009, the bargaining unit shall have available funds not to exceed 0.25% to purchase recurring benefits, mutually agreed to by the parties, other than to enhance the general wage increases set forth in Section 3 or the hiring rate for new employees set forth in Section 4.  The funds available shall be based on the December 31, 2007 payroll, including spinoffs and pensions.

If the above accords with your understanding, please indicate your acceptance by executing the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF
Local 211, IUOE

By: _____
Joseph Corso
President

*09008*

CHALMERS_FPI_LIT-00001567

## 2009-2017 MEMORANDUM OF AGREEMENT
## ALLIED BUILDING INSPECTORS, LOCAL 211, IUOE AND THE CITY
## OF NEW YORK

**MEMORANDUM OF AGREEMENT** entered into this 24 day of May 2015, by and between the undersigned Allied Building Inspectors, Local 211, International Union of Operating Engineers (the "Union") and the City of New York (the "City").

**WHEREAS**, the undersigned parties desire to enter into a collective bargaining agreement, including this *2009-2017 MOA* and the agreement successor to the one terminating on December 15, 2009 to cover the employees represented by the Union;

**WHEREAS**, the undersigned parties intend by this *2009-2017 MOA* to cover all economic and non-economic matters and to incorporate the terms of this *2009-2017 MOA* into the *Successor Separate Unit Agreement*, covering the period from December 16, 2009 through May 9, 2017;

**WHEREAS**, the undersigned parties intend by this *2009-2017 MOA* to continue all of the same terms and conditions specified in the *Separate Unit Agreement*, including applicable side letters, terminating on December 15, 2009, except as modified or amended below,

**NOW, THEREFORE**, it is jointly agreed as follows:

1. Term: 12/16/2009 – 5/9/2017

2. Ratification Bonus

A lump sum cash payment in the amount of $1,000, pro-rated for other than full-time employees, shall be payable as soon as practicable upon ratification of the Agreement to those employees who are on payroll as of the date of ratification. The lump sum cash payment shall be pensionable, consistent with applicable law.

    a. Part-time per annum and full-time per diem Employees shall receive a pro-rata lump sum cash payment the computation of which shall be based on service during the period from May 1, 2014 through April 30, 2015.

    b. Part-time per annum, part-time per diem (including seasonal appointees), per session, hourly paid Employees and Employees whose normal work year is less than a full calendar year shall receive a pro-rata portion of the lump sum cash payment based on their regularly scheduled hours and the hours in a full calendar year.

    c. The lump sum cash payments shall not become part of the Employee's basic salary rate nor be added to the Employee's basic salary for the

1

calculation of any salary based benefits including the calculation of future collective bargaining increases.

d.     For circumstances that were not anticipated by the parties, the First Deputy Commissioner of Labor Relations may elect to issue, on a case-by-case basis, interpretations concerning the application of Section 2 of the *2009-2017 ABI, Local 211, IUOE MOA.*    Such case-by-case interpretations shall not be subject to any dispute resolution procedures as per past practice of the parties.

3.  General Wage Increases

a.

i.     Effective June 16, 2011, Employees shall receive a general increase of 1.00%.

ii.    Effective June 16, 2012, Employees shall receive a general increase of 1.00%.

iii.   Effective June 16, 2013, Employees shall receive a general increase of 1.00%.

iv.    Effective June 16, 2014, Employees shall receive a general increase of 1.50%.

v.     Effective June 16, 2015, Employees shall receive a general increase of 2.50%.

vi.    Effective June 16, 2016, Employees shall receive a general increase of 3.00%.

b.     Part-time per annum, per session, hourly paid and part-time per diem Employees (including seasonal appointees) and Employees whose normal work year is less than a full calendar year shall receive the increases provided in Section 3a on the basis of computations heretofore utilized by the parties for all such Employees.

c.     The general increases provided for in Section 3a above shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on the day prior to the general increase, e.g. the general increase provided for in Section 3 a.i shall be based on the base rates (including salary or incremental salary schedules) of the applicable titles in effect on June 15, 2011.

2

d.    The general increases shall be applied to the base rates, incremental salary levels and the minimum "hiring rates", minimum "incumbent rates" and maximum rates (including levels) if any, fixed for the applicable titles.

4    Additions to Gross

Effective June 16, 2016, the general increase provided for in section 3a.vi shall be applied to "additions to gross." "Additions to gross" shall be defined to include uniform allowances, equipment allowances, transportation allowances, uniform cleaning allowance, assignment differentials, service increments, longevity differentials, advancement increases, assignment (level) increases, and experience, certification, educational, license, evening, or night shift differentials.

5.    Conditions of Payment

i.    The lump sum cash payment pursuant to Section 2. of this *2009-2017 ABI, Local 211, IUOE MOA* shall be payable as soon as practicable upon ratification of this *2009-2017 ABI, Local 211, IUOE MOA.*

ii.    The general increases pursuant to Section 3a. i., ii. iii. and iv. of this *2009-2017 ABI, Local 211, IUOE MOA* shall be payable as soon as practicable upon execution of this *2009-2017 ABI, Local 211, IUOE MOA.*

iii.    The general increases pursuant to Section 3a. v. of this *2009-2017 ABI, Local 211, IUOE MOA* shall be payable as soon as practicable after the effective date of such increases.

iv.    The general increases provided in Section 3a. vi. of this *2009-2017 ABI, Local 211, IUOE MOA* shall be payable as soon as practicable after the effective date of such increases and the execution of the successor unit agreement.

6.    Inspector (Multi-Discipline)

i.    Inspector (Multi-Discipline) (Title Code 31656), certified to the Union effective September 10, 2013 pursuant to Board of Certification Decision 6 OCB2d 21 (BOC 2013), shall be incorporated into the applicable sections of the 2009-2017 ABI, Local 211 Agreement, consistent with the understanding of the parties.

ii.    Effective September 10, 2013, employees in the title of Inspector (Multi-Discipline) shall be subject to the following salary ranges:

|  | New Hire Minimum | Incumbent Minimum | Maximum |
|---|---|---|---|
| Assignment Level I | $46,530 | $53,510 | $67,970 |

3

CHALMERS_FPI_LIT-00001465

| Assignment Level II | $53,000 | $60,950 | $75,585 |
| Assignment Level III | $58,987 | $67,835 | $83,116 |

iii.    Employees in the title of Inspector (Multi-Discipline) shall receive the general wage increases provided in Section 3a iv, v, and vi.

iv.    Effective December 16, 2016, Employees in the title of Inspector (Multi-Discipline) will be entitled to the same service increments and uniform cleaning allowance as other employees in the Building and Construction Inspector bargaining unit.

7.  Service Increment

The service increment identified in Article III, Section 10 of the Collective Bargaining Agreement shall be amended to include the following:

Effective December 16, 2016, Employees who have completed 20 or more years of service in any title covered by this agreement or any similar title shall receive a service increment in the pro-rata annual amount of $7,200.

8.  Additional Release Time

Effective September 1, 2015, 50 additional days per year of paid release time will be available for use by designated Union officials. The release time days shall be used in a manner consistent with Mayoral Executive Order 75, and approval for the use of these days shall be subject to the operational needs of the employing agency.

9.  Prohibition of Further Economic Demands

Except as provided for in Section 12 of the Agreement, no Party to this agreement shall make additional economic demands during the term of this *2009-2017 ABI, Local 211, IUOE MOA* or during the negotiations for the applicable *Successor Separate Unit Agreement*.

10. Health Savings and Welfare Fund Contributions

The May 5, 2014 Letter Agreement regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, will be attached as an Appendix, and is deemed to be part of this *2009-2017 ABI, Local 211, IUOE MOA*.

11. The final general wage increase in this Agreement as specified in Section 3a.vi shall not be paid unless and until there is a signed separate unit agreement.

12. Nothing contained in this current Agreement shall preclude the parties from their continuing discussions to identify, review, recommend and develop initiatives that will

4

CHALMERS_FPI_LIT-00001466

generate workplace savings, maximize the potential of the City workforce and ensure the provision of essential services, while at the same time providing increased compensation for the workforce. The parties must conclude all discussions regarding this Section no later than 24 months after the date of ratification of the Agreement unless the parties have mutually agreed to extend the deadline. Any claim that either party has of **enforcement** of a mutually agreed upon savings proposal shall be submitted to an expedited arbitration panel with the assistance of the Office of Collective Bargaining. The expedited arbitration panel shall not be used to decide the substance, merit or value of either of the parties' specific savings proposals. The final general wage increase in this Agreement as stated in Section 3a.vi shall not be paid unless and until these discussions are completed by the parties or unless the parties mutually agree to extend the deadline.

13. The parties agree to continue their ongoing discussions regarding certain non-economic issues, but the final general wage increase in this Agreement as specified in Section 3a.vi shall not be paid unless and until there is a signed separate unit agreement.

14. This Agreement is subject to union ratification.

**FOR THE CITY OF NEW YORK**

BY

ROBERT W. LINN
Commissioner of Labor Relations

**FOR ALLIED BUILDING INSPECTORS, LOCAL 211, IUOE**

BY:

DAVID MCCREDO
President, ABI Local 211, IUOE

5

CHALMERS_FPI_LIT-00001467



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1.     Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2.     Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018). Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties. Thereafter, $ 60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3.     If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4.     There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

1

CHALMERS_FPI_LIT-00001468

5.     The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period. In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members. Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6.     The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7.     <u>Dispute Resolution</u>

     a. In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute. If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.
     b. Such dispute shall be resolved within 90 days.
     c. The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.
     d. The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.
     e. If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.
     f. The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

CHALMERS_FPI_LIT-00001469

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

Robert W. Linn
Commissioner

Agreed and Accepted on behalf of the Municipal Labor Committee

BY: _____

Harry Nespoli, Chair

3

CHALMERS_FPI_LIT-00001470

<u>2017-2021 Memorandum of Agreement</u>
<u>Allied Building Inspectors, Local 211, IUOE and</u>
<u>the City of New York</u>

1. <u>Term</u>:  3 years, 10 months, and 24 days (46 months, 24 days)

   5/10/17 – 4/2/21

2. <u>General Wage Increases</u>

   | <u>Effective Date</u> | | <u>General Wage Increases</u> |
   |---|---|---|
   | a. | May 10, 2017 | 2.00% |
   | b. | May 10, 2018 | 2.25% compounded |
   | c. | June 10, 2019 | 3.00% compounded |

3. <u>Conditions of Payment</u>

   The general wage increase pursuant to Sections 2.a, 2.b, and 2.c of this *2017-2021 Allied Building Inspectors, Local 211, IUOE Memorandum of Agreement (*"MOA") shall be payable as soon as practicable upon the ratification of this MOA.

4. <u>Prohibition of Further Economic Demands</u>

   No party to this agreement shall make additional economic demands during the term of this MOA.

5. <u>Health Savings and Welfare Fund Contributions</u>

   The May 5, 2014 and June 28, 2018 letter agreements regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee will be attached as an Appendix, and are deemed to be part of this MOA.

6. <u>Service Increment</u>

   Effective March 10, 2019, Employees who have completed 22 or more years of service in any title covered by this agreement shall receive a service increment in the pro-rata annual amount of $8,500.

7. <u>HPD Enforcement Division Assignment Differential</u>

   Effective June 10, 2019, employees assigned to the Enforcement Division in the Department of Housing Preservation and Development ("HPD") shall receive an assignment differential in the pro-rata annual amount of $1,026, in addition to their salary, during their assignment to the Division.

CHALMERS_FPI_LIT-00001577

8. Uniform Allowance

Effective June 10, 2019, the Uniform Allowance shall be increased to $200 per annum.

9. Paid Family Leave

The parties agree to "opt in" to the New York State Paid Family Leave Program, as implemented by the City of New York, as soon as practicable following the execution of this MOA and agree to take the necessary steps to implement.

10. Direct Deposit

Effective the day after this agreement is ratified, the employer may require that all newly hired employees be paid exclusively through direct deposit or electronic funds transfer. For employees on direct deposit, the employer may provide pay stubs electronically except where the employee has requested in writing to receive a printed pay stub.

Further, the parties shall work together regarding incumbent employees' enrollment in direct deposit, with the objective of 100% of employees being paid electronically.

11. Non-Economic Issues

a.    The parties shall establish a labor-management committee to discuss training at HPD, which shall include representatives from HPD and the Office of Labor Relations.

b.    The parties shall establish a labor-management committee to discuss schedule changes for the Emergency Response Team at the Department of Buildings.

c.    The parties shall continue discussion regarding the use of annual leave and compensatory time at HPD and seek to resolve concerns about use of leave.

12. Continuation of Terms

The terms of the predecessor collective bargaining agreement, MOA, and related agreements shall be continued except as modified pursuant to this MOA.

FOR THE CITY OF NEW YORK                    FOR ABI, LOCAL 211, IUOE

BY: _____          BY: _____
    RENEE CAMPION                                DAVID MCCREDO
    Commissioner of Labor Relations              President

Dated: May 10, 2019

2

CHALMERS_FPI_LIT-00001578