UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRYL CHALMERS, DARREN CONNORS, GLENN MENDEZ, JAMES NOVA, and FATIMA Q. ROSEMOND, on behalf of themselves and all others similarly situated, and ASFCME DISTRICT COUNCIL 37 LOCAL 2507, on behalf of its members,

                          Plaintiffs,

     v.

CITY OF NEW YORK,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/9/2022_

20 Civ. 3389 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, "minority" and white fire protection inspectors and associate fire protection inspectors (collectively, "FPIs") employed by the New York City Fire Department (the "FDNY") and their representative union, bring this putative class action against Defendant, City of New York (the "City") alleging employment discrimination on the basis of race, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). *See generally* Am. Compl., ECF No. 69. On September 16, 2021, the Court granted the City's motion to dismiss the complaint as to the claims of the white named Plaintiff and putative class members (collectively, the "white FPIs") arising under Title VII and the NYCHRL. Order, ECF No. 63. On October 12, 2021, Plaintiffs filed an amended complaint, and, in Count 3, renewed their NYCHRL disparate treatment claim as to the entire putative class, including the white FPIs. Am. Compl. The City now moves to dismiss that claim as to the white FPIs. Def. Mot., ECF No. 73. For the reasons stated below, the motion is DENIED.

**BACKGROUND**[1]

FPIs are employed by the FDNY to conduct inspections of buildings, facilities, vehicles, and public activities in New York City to ensure compliance with safety codes and regulations.  Am. Compl. ¶ 1.  Roughly thirty percent of FPIs identify as white.  *Id.* ¶ 2.

White and minority FPIs at similar levels generally "perform the same duties," "work closely together every day," and are "paid [pursuant to] the same policies and practices."  *Id.* ¶¶ 15, 56.  For example, Darren Connors, a white named Plaintiff, works on a night team with a minority supervisor and five colleagues, only one of whom is white.  *Id.* ¶ 58.  Because Connors and his co-workers perform inspections in teams of two, he "works closely" with every member of his team.  *Id.*  Another employee, Matthew Casey, who is a deputy chief inspector, supervises a team of roughly six direct reports on the "high-rise" building team, all but one of whom is a racial minority.  *Id.* ¶ 57.  In this capacity, he works "directly with [the minority members of his team] every day, giving assignments, addressing problems[,] . . . and reviewing their reports."  *Id.*  His desk is clustered with the rest of the high-rise team to "facilitate communications and working relations," which means that he regularly sees and interacts with his minority co-workers.  *Id.*

A third employee, Daniel Callahan, who works in the construction, demolition, and abatement (the "CDA") unit, is the only white employee in his unit of thirty employees.  *Id.* ¶ 59.  His supervisor, whom he considers a mentor and "confer[s] with almost every day," is a woman of color.  *Id.*  And, Gary Caldwell, an FPI in the rangehood unit, states that seventy-five percent of the employees in his unit are racial minorities.  *Id.* ¶ 60.  His current supervisor,

---

[1] The facts in this section are taken from the amended complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

named Plaintiff Glenn Mendez, is a racial minority, and "throughout [Caldwell's] career[,] his supervisors have been racial minorities." *Id.* Caldwell, like others in his role, works closely with his supervisor—supervisors give assignments, address issues, and review and correct inspectors' work. *Id.* Caldwell is relatively senior in his role, and often answers questions and assists minority co-workers at his level. *Id.*

Since at least fiscal year ("FY") 2008, the City has paid FPIs salaries, overtime, and other benefits that are substantially lower than those paid to the City's building inspectors ("BIs") employed by the Department of Buildings, where white employees comprise fifty percent of the workforce. *Id.* ¶¶ 6–8, 14. Plaintiffs allege that such compensation disparities persist even though FPIs and BIs take similar qualifying exams, *id.* ¶ 43, undergo training covering a "virtually identical" range of subjects, *id.* ¶ 46, and share the same principal duty of conducting field inspections to ensure conformance with the City's codes and standards, *id.* ¶ 48.

FPI and BI job titles are arranged hierarchically, with four tiers of FPI designations, and three tiers of BI designations. *Id.* ¶ 72. Based on publicly available salary data for City employees from FYs 2008–2019, Plaintiffs allege that the City pays FPIs lower salaries than BIs at comparable levels, who work comparable hours. *Id.* ¶¶ 72–114.

Plaintiffs attribute these disparities to three City's policies and practices. First, Plaintiffs allege that the City maintains a practice of paying FPIs at, or slightly above, the minimum salary level prescribed by their union's collective bargaining agreement ("CBA"), while paying BIs well above the minimum salary level required by their union's CBA— including, in some cases, exceeding the designated maximum level. *Id.* ¶¶ 16, 182. Second, Plaintiffs allege that, although the City recognizes FPIs as "uniformed" for purposes of

3

collective bargaining, the City only provides FPIs with civilian-level increases of pay during each cycle of collective bargaining, which "prevents the FPIs from catching up to the minimum salaries of BIs."[2]  *Id.* ¶ 17.  Third, Plaintiffs claim that the City has "failed to charge any agency with monitoring pay" across the various City departments and agencies, which has allowed such disparities to arise.  *Id.* ¶ 18.

Plaintiffs argue that these three policies and practices affect white and minority FPIs equally.  *Id.* ¶ 15.  Plaintiffs also provide compensation data which demonstrates that, in general, white and minority FPIs receive the same average base pay per hour.  *Id.* ¶¶ 128–31.  Because base pay is determinative of an employee's overtime pay rate and eventual pension benefits, *id.* ¶¶ 7–8, Plaintiffs allege that white FPIs, like minority FPIs, receive lower pay, overtime, and pension benefits than BIs at comparable levels, *id.* ¶ 128.

## DISCUSSION

### I. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff

---

[2] It is not clear from the amended complaint whether BIs are recognized as "uniformed" for purposes of collective bargaining.  *See* Am. Compl. ¶ 17.

knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

II.     White FPIs' Claim

Plaintiffs allege that the City provides predominantly-minority FPIs with lower base salaries, overtime pay, and pension benefits as compared to predominantly-white BIs, despite the similarity in the two roles' responsibilities and qualifications. *See generally* Am. Compl. Plaintiffs argue, on behalf of the putative class, that these compensation discrepancies constitute disparate treatment on the basis of race. *Id.* ¶¶ 230–36. And, Plaintiffs extend their NYCHRL disparate treatment claim to the white FPIs, under a theory of associational discrimination. *Id.* ¶ 234 (stating that the "disparate treatment equally affects [white FPIs] . . . who have a relationship or association with the racial minority FPIs"). The City moves to dismiss Plaintiffs' NYCHRL disparate treatment claim as to the white FPIs only on the ground that Plaintiffs have failed to demonstrate a sufficient "relationship" or "association" between white and minority FPIs to state an associational discrimination claim under the NYCHRL. Def. Mem. at 2–5, ECF No. 74. The Court disagrees.

Federal courts must "analyze NYCHRL claims separately and independent from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quotation marks and citation omitted). To establish a claim for discrimination under the NYCHRL, plaintiffs must show "differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). That is, a plaintiff need only allege that he was "treated less well . . . because of a

5

discriminatory intent." *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) (quotation marks and citation omitted).  In addition to prohibiting direct discrimination, the NYCHRL bars "discrimination against a person because of the actual or perceived race . . . of a person with whom such person has a known relationship or association," N.Y.C. Admin. Code § 8-107(20), and, unlike its federal counterpart, Title VII, "explicitly allows" associational discrimination claims, *see Loeffler v. Staten Island Hosp.*, 582 F.3d 268, 277–78 (2d Cir. 2009).  Caselaw interpreting the contours of such claims is scant.  But, federal courts interpreting the NYCHRL have held that "[t]o maintain a claim for association[al] discrimination, [plaintiffs] must simply allege that [they] suffered an independent injury because of [their] relationship with" a person in a protected class, who, in turn, "alleges unlawful discriminatory practices related to [his or her] terms, conditions, or privileges of employment." *Jing Zhang v. Jenzabar, Inc.*, No. 12 Civ. 2988, 2015 WL 1475793, at *12 (E.D.N.Y. Mar. 30, 2015).

The Court previously rejected Plaintiffs' associational discrimination claims under both Title VII and the NYCHRL, finding that because the original complaint was virtually devoid of factual allegations as to the white FPIs, Plaintiffs had failed to demonstrate that the "white FPIs and their minority counterparts have a 'relationship'—personal, social, professional, or otherwise—that goes beyond the tenuous bounds of merely working within the same 400-person department." Order at 13.  The Court also noted that, even under the liberal standard of the NYCHRL, Plaintiffs had failed to plead that the white FPIs had suffered any "independent injuries" as a result of the alleged associational discrimination. *Id.* at 14–15.

The amended complaint, by contrast, now makes specific references to four white FPIs, including a named plaintiff, and describes the quality and quantity of the interactions

6

between white and minority FPIs. *See generally* Am. Compl. ¶¶ 57–60. One employee, for instance, is the only white member of his thirty-person unit, and reports to a woman of color whom he considers a "mentor." *Id.* ¶ 59. Another white FPI has roughly six direct reports, all but one of whom are racial minorities. *Id.* ¶ 57. Because his desk is "clustered" with his team, he also "sees [his minority colleagues] regularly." *Id.* Named Plaintiff Darren Connors works on a team of six, where only one other employee is white—his team generally conducts building inspections in groups of two, meaning that he regularly partners with a minority FPI. *Id.* ¶ 58. Connors' immediate supervisor is also a minority FPI. *Id.* And, a fourth employee notes that roughly seventy-five percent of his unit is comprised of racial minorities, and "throughout his career," his supervisors—with whom he closely and regularly interacts—have been "racial minorities." *Id.* ¶ 60. Plaintiffs have, therefore, demonstrated that white and minority FPIs are each other's supervisors, co-workers, and direct reports. They train each other, regularly perform similar tasks as part of the same team, sit together at work, answer each other's questions, and form mentoring relationships. These factual allegations are sufficient to demonstrate—at minimum—that white and minority FPIs not only have the same job title, or work within the same large department, but have a professional relationship with each other.

In addition, the amended complaint now contains factual allegations that support a claim that white FPIs have suffered an independent injury—that is, that they were "aggrieved by defendants' act[ions]," because of the discrimination targeted at their predominantly-minority organization. *Fair Hous. Justice Ctr., Inc. v. Allure Rehabilitation Servs. LLC*, No. 15 Civ. 6336, 2017 WL 4297237, at *5 (E.D.N.Y. Sept. 26, 2017). Specifically, Plaintiffs have shown through statistical pay data that white FPIs have generally received the same base

7

salaries—and correspondingly, overtime pay and pension benefits—as their minority counterparts, leading to the necessary inference that they have also been underpaid as compared to the predominantly-white BI workforce. Am. Compl. ¶¶ 15, 128–31, 155. And, Plaintiffs have alleged that this disparity can be attributed to the fact that white FPIs are subjected to the same three policies and practices the City has directed at the predominantly-minority FPI workforce. *Id.* ¶¶ 16–19, 182, 191–200, 249. Plaintiffs, therefore, not only show that white FPIs have suffered an "independent injury" in the form of lower pay, overtime, and benefits compared to similarly situated BIs; but they also show that this injury is attributable to their association with the predominantly-minority FPI workforce, against whom the City has allegedly employed discriminatory practices.

The Court's obligation at this stage is twofold—it must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs," *Mihalik*, 715 F.3d at 110 (citation omitted), and draw all inferences in Plaintiffs' favor, *see ATSI Commc'ns, Inc.*, 493 F.3d at 98. Under these permissive standards, the Court finds that Plaintiffs' new factual allegations are sufficient to establish an associational discrimination claim under the NYCHRL as to the white FPIs.

The City raises three arguments in response, none of which have merit. First, the City argues that the terms "relationship" or "association" must apply only to those of a "personal or political" nature, rather than a "professional" one. Def. Mem. at 4. The Court shall not infer such a narrow construction in the absence of any qualifiers in the statutory language, or inconsistencies with the plain meaning of the terms.[3]

---

[3] Even if the Court considers "the ordinary, common-sense meaning of the words" at issue, *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000), by reference to their dictionary definitions, *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016), the City's arguments remain meritless. Merriam-Webster defines a "relationship" as "the relation connecting or binding participants in a relationship," *Relationship*, Merriam-Webster, https://www.merriam-

The City argues that the NYCHRL's inclusion of the term "person" must mean a "personal relationship that becomes known to an alleged discriminator, not merely [a] 'business associate.'"  Def. Reply at 5, ECF No. 84.  The City overlooks, however, that the NYCHRL's definition of "person" is exceptionally broad, encompassing even non-human entities like "associations" "governmental bodies or agencies" and "corporations."  N.Y. Admin. Code § 8-102.  And, contrary to the City's assertion that no such cases exist, other courts have permitted associational discrimination claims based on purely professional relationships, such as those between employee and employer, or a company and its founder.  *E.g.*, *Jing Zhang*, 2015 WL 1475793, at *12–13 (denying summary judgment on NYCHRL associational discrimination claim by non-profit entity based on discrimination against its founder); *Bartman v. Shenker*, 786 N.Y.S.2d 696, 700–01 (N.Y. Sup. Ct. 2004) (permitting NYCHRL associational discrimination claim by company based on discrimination experienced by executive director).  If, for purposes of a NYCHRL associational discrimination claim, an individual employee or executive can have an actionable relationship or association with a business or other non-human entity, it is illogical to conclude that the relationship between co-workers of different races—even if purely professional, rather than social or personal—is not similarly actionable.

Second, the City argues that "much like in" Title VII cases, Plaintiffs must show that the defendant "disapproved of the relationship between white and non-white FPIs."  Def. Mem. at 4.  But, as the Court explained in the Order, Title VII and NYCHRL associational discrimination

---

webster.com/dictionary/relationship (last accessed June 8, 2022), and in turn, defines "relation" as "an aspect or quality . . . that connects two or more things or parts as being . . . or *working together* or as being of the same kind," *Relation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/relation (last accessed June 8, 2022) (emphasis added).  Certainly, co-workers who regularly interact, work on the same teams to perform tasks in tandem, and supervise or mentor each other, meet this definition.

claims are not analyzed similarly. *See* Order at 14–15. Certainly, in the Title VII context, the Second Circuit has found that because Title VII prohibits discrimination "against any individual . . . because of *such individual's* race," 42 U.S.C. § 2000e-2(a)(1) (emphasis added), a white employee must demonstrate that they suffered discrimination because of their *own* race—that is, that "an employer disapproves of interracial association," and therefore subjects the white employee to an adverse action for engaging in such an association. *Holcolmb v. Iona Coll.*, 521 F.3d 130, 138–139 (2d Cir. 2008). Applying these precedents, this Court concluded that, because Plaintiffs failed to show any discrimination against white FPIs stemming from the City's disapproval of "interracial association," they could not sustain a Title VII claim as to the white FPIs. Order at 11–14. The NYCHRL, by contrast, "allow[s] claims by persons who were not themselves members of the protected class[,] but who were personally affected, albeit indirectly, by virtue of the alleged discrimination." *Axelrod v. 400 Owners Corp.*, 733 N.Y.S.2d 587, 590–91 (N.Y. Sup. Ct. 2001). NYCHRL claims, therefore, require no showing that the defendant's discriminatory conduct was motivated by its disapproval of interracial associations or relationships.

    Finally, the City argues that, in finding that the terms "relationship" and "association" apply to professional relationships, the Court will open the floodgates to claims by "any white employee" who could allege discrimination solely because "they and a single non-white colleague with whom they worked are underpaid." Def. Mem. at 5. The City overlooks, however, the causal requirement set forth by the NYCHRL. Plaintiffs cannot merely claim associational discrimination by demonstrating a relationship with an individual in a protected class. Rather, they must show causality—that, because of that relationship or affiliation, they too, experienced an independent injury as a result of the defendant's discriminatory behavior.

*See, e.g.*, *Lapko v. Grand Mkt. Int'l Corp.*, No. 514403-2019, 2020 WL 4818702, at *9 (N.Y. Sup. Ct., Aug. 12, 2020) (upholding associational discrimination claim where plaintiff faced discrimination "because of his known relationship or association with those of Russian origin" (quotation marks omitted)); *Bartman*, 786 N.Y.S.2d 696, 700–01; *Jing Zheng*, 2015 WL 1475793, at *13.  A white employee cannot simply point to a minority co-worker who is similarly underpaid—she must show a causal relationship between her alleged "injury" and her relationship with an individual in a protected class.

Here, the white FPIs allege that their injuries—lower pay, as compared to BIs with similar job functions—are caused by the City's discrimination against their predominantly-minority colleagues.  Permitting such a claim to proceed is consistent with the NYCHRL's expansive reach—it does not, however, pave the way for meritless claims from white individuals who simply happen to know of a minority co-worker they believe is being unfairly treated.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Count 3 of the amended complaint as to the white FPIs is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 73.

SO ORDERED.

Dated: June 9, 2022
    New York, New York

_____
ANALISA TORRES
United States District Judge