**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DARRYL CHALMERS, DARREN CONNORS, GLENN MENDEZ, JAMES NOVA, FATIMA Q. ROSEMOND, and AFSCME DISTRICT COUNCIL 37 LOCAL 2507, <br><br>                    Plaintiffs, <br><br>      v. <br><br> THE CITY OF NEW YORK, <br><br>                   Defendant. | Case No. 20 Civ. 3389 (AT) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF STIPULATION OF SETTLEMENT**

Cyrus Mehri
Michael Lieder
Mehri & Skalet, PLLC
2000 K Street NW, Suite 325
Washington, DC 20006
Tel: (202) 822-5100

Robert J. Valli, Jr.
Sara Wyn Kane
Matthew L. Berman
Valli Kane & Vagnini LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Tel: 516-203-7180

*Attorneys for Plaintiffs and Proposed*
*Settlement Classes*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................ 2

III.  SUMMARY OF THE SETTLEMENT .............................................................. 5

      A.  Definition of Settlement Classes ............................................................. 5

      B.  Payments to and Distributions from the Qualified Settlement Fund ...................... 6

           1.  General ............................................................................................ 6

           2.  Distributions to Damages Class Members ...................................... 7

           3.  Distributions to Pay Adjustment Class Members ........................... 8

           4.  Payment of Pension Contributions and Employment Taxes ............ 8

           5.  Service Awards ............................................................................... 9

           6.  Attorneys' Fees and Costs .............................................................. 9

           7.  Fees and Expenses of the Administrator and the Expert ............... 10

      C.  Labor-Management Committee. ............................................................. 11

      D.  Releases .................................................................................................. 11

      E.  Notice, Opt-Outs, and Objections/Comments ....................................... 12

      F.  Approval Process .................................................................................... 13

IV.   ARGUMENT AND AUTHORITIES ................................................................ 14

      A.  It Is "Likely" the Court Will Conclude at the Fairness Hearing that the
          Settlement Is Fair, Reasonable, and Adequate. ..................................... 15

           1.  The Classes Are Adequately Represented. .................................... 15

           2.  The Parties Engaged in Arms'-Length Negotiations. .................... 17

           3.  The Relief Is More than Adequate; It is Extraordinary. ............... 18

           4.  The Settlement Treats Class Members Equitably. ......................... 24

           5.  The Release Is Properly Limited .................................................. 24

**B.** **It Is "Likely" the Court Will Certify Both Settlement Classes.** ............................... 24

    **1.** **The Prerequisites of Rule 23(a) Are Satisfied for Settlement Purposes.** ......... 25

    **2.** **The Damages Class "Likely" Satisfies the Prerequisites of Rule 23(b)(3).** ...... 27

    **3.** **The Pay Adjustment Class "Likely" Satisfies the Prerequisites of Rule 23(b)(2).** ............................................................................................................... 29

**C.** **Appointment of Class Representatives and Class Counsel** .................................... 30

**D.** **The Notice and Notice Process Should Be Approved.** ............................................. 30

**E.** **A Process for the Final Approval Hearing Should Be Established.** ........................ 31

**V.** **CONCLUSION** .................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................28

*Andrews v. City of New York*,
  118 F. Supp. 3d 630 (S.D.N.Y. 2015).........................................................................20

*Calibuso v. Bank of Am. Corp.*,
  299 F.R.D. 359 (E.D.N.Y. 2014) ................................................................................18

*Chen-Oster v. Goldman Sachs & Co. LLC*,
  10 Civ. 6950 (AT), 2023 U.S. Dist. LEXIS 99669 (S.D.N.Y. May 15, 2023)................15, 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberg v.
  Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................14

*Clem v. Keybank, N.A.*,
  2014 WL 2895918 (S.D.N.Y. June 20, 2014) ...........................................................23

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..........................................................................................26

*Diaz v. Eastern Locating Serv.*,
  2010 U.S. Dist. LEXIS 139136 S.D.N.Y. Nov. 29, 2010..................................21, 22

*Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992)........................................................................................27

*Duling v. Gristede's Operating Corp.*,
  No. 06 Civ. 10197 (LTS)(HBP), 2013 U.S. Dist. LEXIS 87126 (S.D.N.Y.
  June 19, 2013)...............................................................................................................19

*Ebbert v. Nassau County*,
  No. CV 05-5445 (AKT), 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22,
  2011) ........................................................................................................................19, 22

*Flores v. Anjost Corp.*,
  No. 11 Civ. 1531 (AT), 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29,
  2014) ........................................................................................................................17, 21

*Hernandez v. Anjost Corp.*,
   No. 11 Civ. 1531 (AT), 2013 U.S. Dist. LEXIS 116048 (S.D.N.Y. Aug. 14,
   2013) .......................................................................................................................18

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ...........................................................................20

*Mercado v. Metro. Transp. Auth.*,
   No. 20 Civ. 6533 (AT), 2023 U.S. Dist. LEXIS 84303 (S.D.N.Y. May 15,
   2023) ...................................................................................................................23, 24

*Perry v. City of New York*,
   2023 U.S. App. LEXIS 22462 (2d Cir. Aug. 25, 2023)..........................................21

*Riedel v. Acqua Ancien Bath N.Y. LLC*,
   No. 14 Civ. 7238, 2016 U.S. Dist. LEXIS 68747 (S.D.N.Y. May 19, 2016)..........21

*Soler v. Fresh Direct, LLC*,
   No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14,
   2023) .......................................................................................................... *passim*

*United States v. City of New York*,
   No. 07-CV-2067 (NGG) (RLM), 2015 U.S. Dist. LEXIS 29859 (E.D.N.Y.
   Mar. 11, 2015).........................................................................................................22

*Velez v. Novartis Pharms. Corp.*,
   No. 04 Civ. 09194 (CM) 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30,
   2010) .......................................................................................................................19

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010)......................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................17, 30

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................................30

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v
Brixmor Prop. Group Inc.*,
   No. 1:16cv02400 (AT)(SN), 2017 U.S. Dist. LEXIS 225656 (S.D.N.Y. Dec.
   13, 2017) ...........................................................................................................23, 24

*Zorrilla v. Carlson Rests., Inc.*,
   No. 14 Civ. 2740 (AT), 2017 U.S. Dist. LEXIS 180292 (S.D.N.Y. Oct. 26,
   2017) .......................................................................................................................18

**Federal Statutes**

42 U.S.C. § 1981 ........................................................................................................2

42 U.S.C. § 1983 ........................................................................................................2

Title VII of the Civil Rights Act of 1964 ....................................................................2

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................1, 14, 25

Fed. R. Civ. P. 23(a) ........................................................................................25, 26, 27

Fed. R. Civ. P. 23(b) ............................................................................................. *passim*

Fed. R. Civ. P. 23(e) ............................................................................................. *passim*

**Local Law**

N.Y.C Human Rights Law, N.Y.C. Admin. Code § 8-107 .........................................2, 12, 20, 26

**Other Authority**

MANUAL FOR COMPLEX LITIGATION, FOURTH ........................................................14, 31

## I.    <u>INTRODUCTION</u>

After many months of arm's-length negotiations, including six full-day in-person mediation sessions, more than ten video-conference mediation sessions, and countless telephonic and email exchanges, plaintiffs Darryl Chalmers, Darren Connors, Glenn Mendez, James Nova, Fatima Rosemond, and AFSCME District Council 37 Local 2507 (collectively "Plaintiffs"), on behalf of themselves and all members of two proposed settlement classes, and the City of New York have reached a settlement that, if approved, will resolve all the claims in this pay discrimination case.

Plaintiffs ask the Court to preliminarily approve the settlement – including a Stipulation of Settlement (the "Stipulation"), attached as Exhibit 1; a written notice to class members (the "Notice"), attached as Exhibit 1.A; a settlement timeline (the "Timeline"), attached as Exhibit 1.B; and a proposed order for preliminary approval of the settlement (the "Order"), attached as Exhibit 1.C – so that notice of the settlement can be provided to members of the settlement classes. In order to grant preliminary approval, the Court must preliminarily determine that the settlement classes satisfy the requirements of Rule 23 and that the settlement is fair, reasonable, and adequate to those class members. Here, those requirements are met. The settlement classes are similar in structure to a class the Court already has approved. And the settlement requires the City to pay the amount of $29,200,000 plus the employer's share of employment taxes and its portion of pension contributions in amounts to be determined, into a settlement fund. All interest earned by the fund also will be available for distribution. Because the settlement classes presently have about 550 members, this settlement amount provides an average of over $50,000 per class member, a substantial amount for what the Court accurately described as an "atypical discrimination claim." ECF 63 (9-16-21 Order), at 7.

This settlement will resolve those "atypical" claims brought by current and former Fire Protection Inspectors and Associate Fire Protection Inspectors (together "FPIs") in the Fire Department of the City of New York ("FDNY"). FPIs conduct inspections of buildings, facilities, vehicles, and public activities in the City to ensure compliance with building and fire safety codes and regulations. ECF 69, ¶ 1. Since at least fiscal year ("FY") 2005, the City has paid FPIs salaries that are substantially lower than salaries paid to the building inspectors employed by the City's Department of Buildings ("BIs"). *E.g., id*. ¶¶ 2, 6-9. For many years, only about 30% of FPIs have identified as white whereas, until very recently, over 50% of BIs have identified as white. *Id.* ¶¶ 9, 14, 35-36. Plaintiffs claim that the pay disparities have been a product of intentional racial discrimination and that the City's facially neutral policies and practices have had a disparate impact on racial minorities in violation of 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. *Id.*, ¶¶ 219-50. The City denies these allegations and contends that it complied with the law at all times. Stip., ¶ IX.3.

## II.    <u>BACKGROUND</u>

Plaintiffs filed their initial complaint on May 1, 2020. ECF 1. The complaint asserted pay discrimination claims arising out of the pay disparities between FPIs and BIs going back to FY 2005 under the continuing violation doctrine. It sought to certify a class of all FPIs (including white FPIs alleging pay discrimination claims on the basis of their association with other, predominantly non-white, FPIs) and also a subclass of non-white FPIs. *Id*. at 49.

The lengthy complaint reflects that Class Counsel had already performed significant factual investigations into the claims. Among other allegations, it identifies substantial similarities in the job duties and requirements of FPIs and BIs (ECF 1, ¶¶ 33-59), contains allegations about the

racial composition of each workforce (*id.*, ¶¶ 31-32), sets out differences in pay between FPIs and BIs each year starting in FY 2008 (*id.*, ¶¶ 60-102), and compares the relative pay of FPIs and BIs in the City to that in other states and cities (*id.*, ¶¶ 103-08). To make these allegations, Class Counsel met with numerous FPIs (many of those meetings were organized by first named Plaintiff Darryl Chalmers), obtained and reviewed FPIs' and BIs' collective bargaining agreements ("CBA") and documents relating to FPI job duties, performed calculations based on data available on the website www.seethroughny.net, and consulted with Drs. Harold Goldstein and Charles Scherbaum, who became Plaintiffs' experts in the case. Class Counsel also investigated and analyzed the relevant federal and City laws. *See* Lieder Decl., ¶¶ 4-11.

The City filed a motion to dismiss the complaint (ECF 25), which the Court granted with respect to the associational discrimination claims of white FPIs and otherwise denied. ECF 63. Plaintiffs were granted leave to re-plead (ECF 68), resulting in the filing of the first amended complaint ("FAC") with additional allegations supporting the associational discrimination claims. ECF 69. The City sought to dismiss those claims of white FPIs in the FAC but, this time, the Court denied its motion. ECF 93.

During and after the litigation over these motions to dismiss, the Parties engaged in significant discovery, including the production of voluminous human resources and payroll data and other written discovery, expert witness discovery, and numerous depositions of fact and expert witnesses. Lieder Decl., ¶¶ 14-15, 17. The discovery was followed by the parties' competing motions to exclude expert testimony (ECF Nos 61 and 80) and Plaintiffs' motion for certification of a class (and subclass) and appointment of Class Counsel (ECF 61). On September 19, 2022, the Court granted in part and denied in part Plaintiffs' motion to exclude the City's expert witness

testimony, denied the City's motion to exclude Plaintiffs' expert testimony, and granted Plaintiffs' Motion for Class Certification and appointment as Class Counsel. ECF No. 98.

Shortly after the Court's ruling on these motions, in late September 2022, the parties agreed to enter into settlement negotiations. Lieder Decl., 18. Early on, the parties agreed to appoint Robin Gise of JAMS ADR Services as the mediator. Ms. Gise previously worked with Class Counsel and the City's lead lawyer, Kami Barker, *id.*, and has extensive experience resolving complex employment and labor disputes, including a wide range of discrimination claims and class and collective actions. https://www.jamsadr.com/gise/.

The mediation conducted by Ms. Gise consumed over nine months and proceeded simultaneously on several tracks. Plaintiffs' expert prepared a large spreadsheet analyzing the Class's damages. Lieder Decl., ¶ 19. During the mediation, the City produced additional human resources and payroll data for the relevant years through FY 2023, and both parties' experts performed supplemental statistical analyses. *Id.*, ¶ 22. Class Counsel prepared several analyses of key legal issues that they gave to the City. *Id.*, ¶ 23. Plaintiffs and Class Counsel met with Ms. Barker and representatives from several City agencies numerous times over many months: six in-person full-day mediation sessions, more than ten video conference calls, numerous subsequent telephone and conference calls, and scores of emails dedicated to meaningful discussion and resolution of the parties' claims and defenses in this action. *Id.*, ¶¶ 20-21.

During the mediation sessions, the parties vigorously debated several issues, including: (1) the claims' size and scope, (2) the likelihood of the claims' success on the merits, (3) the continuing violation theory, (4) whether certain of the payments would be factored into the calculation of Plaintiffs' employee pension benefits, (5) whether the City as a municipality was likely to be required to pay prejudgment interest and, if so, the appropriate rate of interest, (6) the manner in

which potential damages associated with Plaintiffs' claims could be calculated and collected, and (7) possible equitable relief intended to foster an environment of inclusion and mutual respect for FPIs. *Id.*, ¶ 24. During the negotiations, the parties also agreed on an administrator of the settlement and an expert to perform damages calculations, and they engaged in discussions with the administrator and expert to ensure that all the settlement agreement's provisions could be feasibly performed. *Id.*

Starting in about June 2023, the parties graduated from drafting a memorandum of understanding to exchanging drafts of the settlement documents. *Id.*, ¶ 25. On or about July 21, 2023, the Parties tentatively agreed on the proposed settlement amount . *Id.* The negotiations, while cordial and professional, were always conducted at arm's length. *Id.*, ¶ 26.

On or about August 9, 2023, these negotiations culminated in an agreement among the lawyers to settle the Plaintiffs' claims on the terms set forth in the Stipulation. The agreement was signed as of August 11, 2023. *Id.*, ¶ 25.

### III.   <u>SUMMARY OF THE SETTLEMENT</u>

#### A.   <u>Definition of Settlement Classes</u>

The Stipulation provides for two "Settlement Classes:" one for damages suffered by FPIs employed from May 1, 2017, through August 31, 2023 (the "Damages Class"), and the other (the "Pay Adjustment Class") to increase current FPIs' pay to what is roughly the current average pay of comparable levels of BIs from September 1, 2023, until August 31, 2024 (the "Pay Adjustment Period"). Stip., ¶ II.4.

The Damages Class includes "all persons whom the City has employed as an FPI at any time between May 1, 2017 and August 31, 2023." *Id*., ¶ I.14. It is essentially the same class that the Court previously certified, except that its end date has been moved from the prior date of

certification until August 31, 2023. Plaintiffs ask that it be certified under Rule 23(b)(3), permitting opt out rights. *Id.*, ¶ II.4.

The Pay Adjustment Class includes "all persons who serve as a fire protection inspector or associate fire protection inspector in the FDNY at any time between September 1, 2023, and August 31, 2024, except that persons who are attending the Fire Protection Academy during the Pay Adjustment Period must graduate before becoming a Pay Adjustment class member." *Id.*, ¶¶ I.27, 28. New hires do not qualify for the pay adjustment until they graduate from the academy. Plaintiffs ask that this class be certified under Rule 23(b)(2) without opt-out rights. *Id.*, ¶ II.4.

The Damages Class had under 550 members as of March 25, 2023, the last date for which Plaintiffs currently have data. Lieder Decl., ¶ 27. The eventual number of Pay Adjustment Class members will be unknown until the end of the Pay Adjustment Period (August 31, 2024), but as of March 25, 2023, there were approximately 365 FPIs, all of whom are members of the Damages Class as well. *Id.* The City has informed Class Counsel that it intends to hire more FPIs before August 31, 2024, and the number of Pay Adjustment Class members may eventually top 400. *Id.*

**B.**    **Payments to and Distributions from the Qualified Settlement Fund**

**1.**    **General**

The Stipulation provides that the City will pay a total of $29,200,000.00 (the "Settlement Amount") plus the employer's portion of any payroll taxes and pension contributions into a Qualified Settlement Fund ("QSF"). *Id.*, ¶¶ I.36, III.3-5, VII.3. The Settlement Amount, plus interest earned by the QSF, will be used to pay awards to members of the Damages Class, adjustments to Pay Adjustment Class members, service awards to the five individual Plaintiffs and a class member, Michael Riordan, attorneys' fees and expenses, and the administrator and joint expert's fees and expenses. *Id.*, ¶¶ IV.1.

There will be two distributions from the QSF. The first will occur within 40 days after the Effective Date (which is 31 days from entry of the Final Approval Order). Timeline, p. 3. The second will occur on or after January 1, 2025. *Id.* The total amount to be distributed for each of the five purposes (Damages Class members' awards, Pay Adjustment Class members' awards, service awards, attorneys' fees and expenses, and administrator and expert fees and expenses) cannot be determined until shortly before the second distribution. If the settlement is approved and 50% of Damages Class members do not opt out, no money will revert to the City. Stip., ¶ XI.3.

### 2.     Distributions to Damages Class Members

The Stipulation sets out a formula that the administrator will use to allocate awards among Damages Class members. The formula considers whether a member was an FPI during FYs 2005 through 2023, what title the member had during each of these years (new hire, incumbent FPI, AFPI I, AFPI II, or AFPI III), and the difference between that member's salary and the average salary of comparable construction BIs in that year. The formula discounts the differences between average FPI and average construction BIs before 2016 because of the increasing risk that old claims may be rejected notwithstanding the continuing violation doctrine. Finally, the formula establishes a minimum award of $500 per class member. *Id.*, ¶ IV.5.

For tax and pension purposes, Damages Class awards will be allocated between wages (from which payroll withholding and deductions will be taken) and interest (for which a 1099 will be issued), depending on the year in which a Damages Class member first became an FPI. *Id.*, ¶ IV.9. The amount of each Damages Class members' award will be calculated by Dr. Charles Scherbaum, who will serve as a joint expert for purposes of the settlement. *Id.*, ¶ I.17, VI.3.

Class Counsel currently estimates the amount to be distributed to Damages Class members to be at least $18.4 million. Counsel makes this estimate based on the following calculations: from the $29.2 million, we estimate that about $1.7 million will be distributed to Pay Adjustment Class members, about $8.9 million will be paid in attorneys' fees and expenses if we seek and the Court awards 30% of $29.2 million as fees, $90,000 will be paid in service awards if the Court awards the full amount to be requested, and no more than $80,000 will be paid to the Administrator and Expert. Lieder Decl., ¶ 28. Dr. Scherbaum will estimate the award for each member before the Notice is sent and that amount will appear on the first page of the Notice. *See* Stip., ¶ IV.5, X.2; Timeline, p. 1; Notice, p. 1.

### 3.    Distributions to Pay Adjustment Class Members

The compensation of each Pay Adjustment Class member will be increased during the Pay Adjustment Period, based on a formula set out in a table in the Stipulation. Stip., ¶ IV.10. The amounts of the increases are based on the differences in average pay between five levels of FPIs and the corresponding levels of construction BIs during fiscal year 2023. *Id.* If each Pay Adjustment Class member worked the standard 2,088 hours during the Pay Adjustment Period, the adjustments would total about $1,430,000, but because some class members will work overtime, some will not work a full year because of retirement, resignation, or unpaid leave, and some will be hired during this period, the total amount of pay adjustment awards will be unknown until after August 30, 2024. *See id.*, ¶ IV.11. Rather than being paid bi-weekly, Pay Adjustment Class members will receive their awards retroactively in two payments. Stip., ¶ IV.16; Timeline, p. 3. All Pay Adjustment awards will be considered wages for taxes and pension purposes. Stip., ¶ VII.2.

### 4.    Payment of Pension Contributions and Employment Taxes

The City will pay its portion of employment taxes and pension contributions as it does when paying regular wages. The City will deposit into the QSF the employer's share of pension contributions and employment taxes in addition to its payment of $29,200,000, and the QSF is responsible for making those contributions and payments to the appropriate government agency. *Id.*, ¶ I.40, III.5, VII.3. The QSF administrator will also withhold the employee's share of pension contributions and employment taxes from the Class members' awards and make the necessary pension contributions and tax payments. *Id.*, ¶ VII.2, 3.

### 5.    Service Awards

No later than 30 days after Notice is mailed,[1] Plaintiffs will apply to this Court for service awards totaling $90,000 allocated as follows: $20,000 to lead Plaintiff Darryl Chalmers, $15,000 apiece to the other four individual Plaintiffs, and $10,000 to Settlement Class member Michael Riordan. *Id.*, ¶ V.1. As will be explained in more detail in the motion for service awards, the Plaintiffs have devoted tremendous time to the case, including: talking with Class Counsel before the case was filed, answering written discovery, being deposed, reviewing numerous emails from Class Counsel, participating in conference calls with Class Counsel about the progress of the case, and participating in the mediation in various ways. Lieder Decl., ¶¶ 4, 5, 11, 14, 16, 20-21. Riordan did not participate in discovery but otherwise engaged in all the same types of activities. *Id.* Payments in the following amounts reflect Plaintiffs' and Riordan's leadership role in the litigation and the associated risk of retaliation for the Plaintiffs. *Id.*

### 6.    Attorneys' Fees and Costs

Also, no later than 30 days after Notice is mailed, Class Counsel will apply to this Court for reimbursement of expenses they have incurred in the litigation and fees of up to 30% of the

---

[1]    The Stipulation imposes a deadline of 45 days after mailing of the Notice for filing of the motions for service awards and for attorneys' fees and expenses, but Plaintiffs and Class Counsel commit to file within 30 days.

$29,200,000 settlement fund, or up to $8,760,00.00. Stip., ¶ V.2. Class Counsel have worked on this case for almost four years without any reimbursement or compensation, and, by the time their duties under the settlement are concluded, they will have devoted over five years to the litigation. Lieder Decl., ¶ 31.

The motions for service awards and attorneys' fees and expenses will be filed at least 30 days prior to the opt-out and comment deadline so that all Settlement Class members will have an opportunity to opt-out, object, or otherwise comment.[2] If the Court reduces the requested service fees or attorneys' fees and expenses, the money not awarded shall become part of the QSF available for distribution to Damages Class members.

### 7. Fees and Expenses of the Administrator and the Expert

The parties have selected Settlement Services, Inc. ("SSI," which is a wholly owned subsidiary of Epiq Systems Inc.), as the Administrator of the settlement. Stip., ¶ I.2. The Administrator will have a wide varieties of duties, many of which are briefly identified in the Timeline and Settlement Agreement, including: (1) receiving data from the City concerning Pay Adjustment Class members, providing that information to the Expert, and incorporating information from the Expert in various ways; (2) sending the Notice to Settlement Class members; (3) creating a website with information about the settlement; (4) receiving and alerting counsel for both parties about opt-outs, objections and comments; (5) summarizing for the Court information about the provision of notice, opt-outs, objections, and comments; (6) calculating withholdings and employer tax contributions; (7) cutting and mailing checks in the appropriate amounts; and (8) making tax and pension payments. SSI has submitted a non-binding estimate of fees in the total amount of $43,500. Lieder Decl., ¶ 28.

---

[2] The Stipulation also provides that "[t]he City's entry into this Stipulation shall have no impact on its decision about whether or not to file an opposition to Plaintiffs' request for attorneys' fees and expenses." Stip., ¶ V.2.

The joint expert identified above, Dr. Scherbaum, has agreed to perform three sets of calculations of the awards for Damages Class members – for the Notice, the first distribution, and the second distribution – at the rate of $350 per hour for his time (less to the extent that he delegates some of the work to persons under his direction) and a total cost of not more than $30,000. Stip., ¶ VI.4.

The Administrator and the Expert may submit monthly invoices to both counsel for their work and, if neither counsel objects within ten days of receipt, the invoices will be paid. Any disputes that cannot be resolved internally will be submitted to the Court. *Id.*, ¶¶ VI.2, 5.

Any money in the QSF that has not been distributed to Pay Adjustment Class members, for service awards, for attorneys' fees and expenses, and to the Administrator and Expert will be distributed to Damages Class members. *Id.*, ¶ IV.22.

**C.    Labor-Management Committee.**

Although the complaint states no claims beyond discrimination in pay, it contains allegations of FDNY's disparate treatment toward FPIs presumably because of their racial composition. ECF 69, ¶¶ 156-67. To try to address this continuing perceived disparate treatment of FPIs, the Stipulation creates a labor-management committee that will meet quarterly for the first year after final approval and at least six other times. Stip., ¶ VIII.1. While the committee lacks authority to compel changes in FDNY practices, the parties hope that the meetings will result in a healthier and more productive work environment.

**D.    Releases**

Settlement Class members who do not opt out will release the City for only the claims that were or could have been alleged in the action: "discriminatory compensation claims that were pled or could have been pled arising out of the same facts and circumstances within the time period

alleged in the Complaint, including under Title VII, Sections 1981 and 1983, and the NYCHRL." Stip., ¶¶ I.32, IX.1. The time period covered by each class member's release also is tied to the period for which they will receive awards: "the later of July 1, 2004, or the beginning of their employment as an FPI until the earlier of the end of their employment as an FPI or August 31, 2024." *Id.*, ¶ IX.1.

**E.      Notice, Opt-Outs, and Objections/Comments**

The notice plan is designed to ensure that all Settlement Class members are aware of their rights. The City will provide the Administrator with last known mailing and email addresses for all members. *Id.*, ¶ X.2. Because class members are either current or former FPIs for the City and/or participate in the City's pension plan, those addresses should be substantially up-to-date. The Administrator then will send the Notice by U.S. mail and email. *Id.* In plain English, the Notice (Ex. 1.A) informs class members about the background and claims in the litigation, summarizes the terms of the settlement, and informs them of their rights. It also will provide an individualized estimate of the award for each Damages Class member and contains a table showing the pay adjustment for each Pay Adjustment Class member. Notice, pp. 1, 6.

If a Notice is returned as undeliverable, the Claims Administrator will use its best efforts to ascertain current address and addressee information, and promptly re-mail the Notice to the Settlement Class members for whom a new address is found. Stip., ¶ X.4. And to increase the chances that Settlement Class members will not discard the Notice as unread junk, Local 2507 will send class members a written announcement about the terms of the proposed Settlement that also will alert them to the anticipated communications from the Administrator. *Id.*, ¶ X.5. Finally, the Administrator will create a website, the url address of which is referenced in the Notice, that will contain information about the settlement beyond that in the Notice. Stip., ¶ X.3.

The Notice informs Damages Class members of their right to opt out of the damages portion of the settlement and all Settlement Class members of their right to object or otherwise comment and, if so, their right to speak at the final fairness hearing. Notice, p. _. The deadline for submitting opt outs, objections, or other comments is 60 days after the Notice is mailed. Notice, p. 2.

## F.   Approval Process

Plaintiffs request that the Court enter the proposed Order for preliminary approval or an Order addressing the same matters:

- Finding that the proposed settlement is within the range of a settlement that is fair, adequate, and reasonable to Settlement Class members and should be submitted to those members for their consideration;

- Provisionally finding that the Damages Class should be certified under Rule 23(b)(3) and the Pay Adjustment Class should be certified under Rule 23(b)(2);

- Approving the Notice and directing the Administrator to provide it to Settlement Class members as set out in the Stipulation;

- Approving of the procedures for Damages Class members to opt out of the settlement and for Settlement Class members to object to or otherwise comment on the settlement;

- Approving of the schedule for Plaintiffs to submit a motion for approval of the proposed service awards and for Class Counsel to submit a motion for attorneys' fees and reimbursement of expenses, which motions will be decided at the final fairness hearing; and

- Setting the date and time for the final fairness hearing.

13

The Timeline sets forth the other dates to which the parties have agreed, including dates associated with the approval of the settlement.

## IV.    ARGUMENT AND AUTHORITIES

Preliminary approval is the first step in the process required before a class action may be finally settled. MANUAL FOR COMPLEX LITIGATION, FOURTH, at 320. Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. *Id.* at 322; *see* Fed. R. Civ. P. 23(e) (setting out procedures for settling class actions).

This Court recently summarized the analysis it must undertake in evaluating whether to preliminarily approve a proposed class settlement:

> At the preliminary approval stage, a court must assess "whether it is 'likely' it will be able to finally approve the settlement after notice, an objection period, and a fairness hearing." 4 *Newberg and Rubenstein on Class Actions* § 13:10 (6th ed.) (citation omitted). To approve a proposed settlement, a court must find "that it is fair, reasonable, and adequate" after considering four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members.

*Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647, at *5 (S.D.N.Y. Mar. 14, 2023) (Torres, J.).[3] Considerations affecting the third and fourth factors include "the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the stage of the proceedings at which the Settlement was reached and the discovery that was conducted, the

---

[3]     As this Court explained, "Before the 2018 amendments to Rule 23, courts in the Second Circuit considered whether a settlement was 'fair, reasonable, and adequate' under the nine factors outlined in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberg v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir. 2000). The advisory committee notes to the 2018 amendments indicate that the four new Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the 'core concerns of procedure and substance.'" *Soler*, 2023 U.S. Dist. LEXIS 42647, at 5 n.3 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

effectiveness of the proposed method for distributing relief to the Settlement Class, [and] the proposed manner of allocating benefits to Settlement Class Members." *Chen-Oster v. Goldman Sachs & Co. LLC*, 10 Civ. 6950 (AT), 2023 U.S. Dist. LEXIS 99669, at *6 (S.D.N.Y. May 15, 2023) (Torres, J.). In addition, "the Court must also find that it will likely be able to certify the class for purposes of judgment on the Settlement." *Soler*, 2023 U.S. Dist. LEXIS 42647, at *13.

As discussed below, it is "likely" that the Court will be able to approve the settlement at the final fairness hearing because (A) "it is fair, reasonable, and adequate" based on the four principal considerations and (B) it is "likely" that the Court will be able to certify both Settlement Classes.

**A.    It Is "Likely" the Court Will Conclude at the Fairness Hearing that the Settlement Is Fair, Reasonable, and Adequate.**

**1.    The Classes Are Adequately Represented.**

The Federal Rules require a court evaluating a class settlement to determine whether the class is adequately represented. Fed. R. Civ. P. 23(e)(2)(A). "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation.'" *Soler*, 2023 U.S. Dist. LEXIS 42647, at *6 (quoting *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

The Court already has found in its Order of September 19, 2022, that "Plaintiffs' interests do not conflict with those of the class or subclass" certified in that Order, primarily because "Plaintiffs are all FPIs subject to the identified City policies that are paid less than their BI comparators, see ECF 69, ¶¶ 183–189, and no named plaintiff advances any unique claims." ECF 98, at 34; *see Soler*, 2023 U.S. Dist. LEXIS 42647, at *6 (finding that lack of conflict prong is

satisfied because "Plaintiffs' experiences were substantially the same as that of all other class members, and Plaintiffs have the same interest in remedying Fresh Direct's alleged discrimination"). The same conclusion that the five Plaintiffs are adequate representatives should equally apply to representation of the Damages Class, which, as noted above, is identical to the certified class except that the class period extends about 11 months later, until August 30, 2023. And while the period of the Pay Adjustment Class (September 1, 2023 – August 31, 2024) does not overlap with the certified class, and only three of the five Plaintiffs can be representatives of this class because the other two Plaintiffs have ceased working as FPIs, the Pay Adjustment Class Representatives' interests are not adverse to those of the Pay Adjustment Class. That is because, as the Court found on class certification, the proposed Pay Adjustment Class Representatives "are all FPIs subject to the identified City policies … [and will be] paid less than their BI comparators," *see* ECF 69, ¶¶ 183–189, "and no named plaintiff advances any unique claims."

The Court also found adequacy of representation in its Order of September 19, 2022, because "Plaintiffs have retained counsel experienced in employment discrimination class action cases." ECF 98, at 34. Class Counsel's successes in defeating the motions to dismiss, prevailing on their class certification motion, largely prevailing on the cross-*Daubert* motions, and negotiating this settlement – combined with their prior attestations about their work on the case and their knowledge of employment and class action law – also show that Class Counsel are "qualified" and "able" to conduct the litigation. ECF 62-13; *see Soler*, 2023 U.S. Dist. LEXIS 42647, at *6 (finding that plaintiffs' counsel "has demonstrated that it is qualified, experienced, and able to conduct the litigation" because it "did substantial work identifying, investigating, litigating, and settling Plaintiffs' and the class members' claims, has years of experience

prosecuting and settling criminal history discrimination cases, and is well-versed in employment law and class action law").

For these reasons, the two Settlement Classes are adequately represented.

### 2. The Parties Engaged in Arms'-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), this Court considers whether the parties engaged in "arm's-length negotiations between experienced, capable counsel after meaningful discovery" and whether a respected mediator was involved in deciding whether to preliminarily approve a class settlement. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *7 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005) and *In re GSE Bonds*, 414 F. Supp. 3d at 693). A presumption of fairness arises when a settlement is reached after arms'-length negotiations between experienced, capable counsel. *Wal-Mart,* 396 F.3d at 116; *Flores v. Anjost Corp.,* No. 11 Civ. 1531 (AT), 2014 U.S. Dist. LEXIS 11026, at *11 (S.D.N.Y. Jan. 29, 2014) (Torres, J.) (quoting *Wal-Mart*). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Flores*, 2014 U.S. Dist. LEXIS 11026, at *12.

As in *Soler*, the following factors "weigh in favor of approval": here, the parties engaged in six full-day in-person mediations (compared to three in *Soler*) and many other mediated negotiation sessions via remote media, including video and phone conferencing; the mediation lasted over nine months (compared to five months in *Soler*); the mediation occurred before an experienced and respected JAMS mediator (as in *Soler*); and the parties engaged in meaningful factual and expert discovery (also similar to *Soler*), sufficient in this case for the Court to grant Plaintiffs' class certification motion. 2023 U.S. Dist. LEXIS 42647, at *7; *see also Chen-Oster*, 2023 U.S. Dist. LEXIS 99669, at *6 (considering "the stage of the proceedings at which the

Settlement was reached and the discovery that was conducted," among other factors, in granting preliminary approval); *Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2017 U.S. Dist. LEXIS 180292, at *8 (S.D.N.Y. Oct. 26, 2017) (Torres, J.) (granting preliminary approval partly because "[n]egotiations were conducted both directly between the parties' counsel and with the assistance of an experienced employment mediator, whom counsel met with on multiple occasions before reaching a settlement"); *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 U.S. Dist. LEXIS 116048, at *6-7 (S.D.N.Y. Aug. 14, 2013) (Torres, J.) (granting preliminary approval partly because the settlement is "the result of extensive, arms'-length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions" with "[t]he assistance of an experienced mediator … of JAMS").

### 3.     The Relief Is More than Adequate; It is Extraordinary.

"Rule 23(e)(2)(C) requires a court to examine whether relief for the class is adequate, taking into account: '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'" *Soler*, 2023 U.S. Dist. LEXIS 42647, at *7-8 (quoting Fed. R. Civ. P. 23(e)(2)(C)).

Any evaluation of the adequacy of the settlement should begin with the relief afforded to the class. The relief in this case is extraordinary. Very few employment discrimination class cases result in settlement funds of about $50,000 gross per class member.[4] *See, e.g., Soler,* 2023 U.S. Dist. LEXIS 42647, at *10 ("approximately $1,156 per class member"); *Calibuso v. Bank of Am.*

---

[4]     Obviously, the net amount after deduction of attorneys' fees and expenses, service awards, and Administrator and Expert fees and expenses will be less, but the net amount will be at minimum in the neighborhood of $35,000 per class member.

*Corp.*, 299 F.R.D. 359, 364, 365 (E.D.N.Y. 2014) (granting final approval to settlement in gender discrimination class action creating settlement fund of $38,225,000 for 4.928 class members, an average of about $7,757 per class member); *Duling v. Gristede's Operating Corp.*, No. 06 Civ. 10197 (LTS)(HBP), 2013 U.S. Dist. LEXIS 87126, at *4, 5 (S.D.N.Y. June 19, 2013) (granting final approval to settlement in gender discrimination class case creating settlement fund of $1,450,000 for which 666 class members submitted claims, an average of about $2,177 per claimant); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM) 2010 U.S. Dist. LEXIS 125945, at *4, 14-15 (S.D.N.Y. Nov. 30, 2010) (granting final approval to settlement in gender discrimination class action creating settlement fund of $152,500,000 for class of 6,206 women, an average of about $24,573 per class member).[5] In addition to the monetary relief to be provided in 2024 and early 2025, Plaintiffs contend that FPI salaries need to be increased by over $1,400,000 per year (an average of about $4,000 per year per Adjustment Pay Class member) to bring them to rough parity with BI salaries. Although the Stipulation does not attempt to dictate what will emerge from the current round of collective bargaining (Stip., ¶ IV.17), Plaintiffs expect that FPI salaries collectively will permanently increase by at least that amount per FPI more than the increase that would result from the pattern increase available to all City unions.

The negotiated relief per class member also is impressive when compared with settlements in the two cases of which Plaintiffs are aware that proceeded under a similar theory, *i.e.*, that employees in a job title primarily populated by women (or people of color) are paid less than employees in another job title performing substantially similar work but composed primarily of men (or white) employees. First, the settlement in *Ebbert v. Nassau County*, No. CV 05-5445 (AKT), 2011 U.S. Dist. LEXIS 150080, at *17 (E.D.N.Y. Dec. 22, 2011), created a settlement

---

[5]     *Velez* settled after a well-publicized trial resulting in a huge victory for plaintiffs, and yet settled for about half the amount per class member as the settlement here.

fund of $7,000,000 for 230-250 class members, an average of about $30,000 gross per class member. Second, the settlement in *Andrews v. City of New York*, 118 F. Supp. 3d 630, 633 (S.D.N.Y. 2015), paid class members "from $250 to $7,000 per plaintiff depending upon such factors as their dates and lengths of employment."[6]

In negotiating this settlement, Plaintiffs took account of the risks, costs, and delay of trial and appeal. Despite the Court's ruling on class certification, the novelty of Plaintiffs' claims meant that they still faced substantial challenges on the merits that, if decided adversely, could result in no recovery at all. Plaintiffs would have had to prove that the FPI and BI job duties and requirements were indeed substantially similar. To prevail on the disparate treatment claims, they would have had to prove that the pay differences stemmed from racial biases rather than non-discriminatory factors such as market forces and on the disparate impact claims that they had correctly identified the City's practices that resulted in pay disparities. And even if Plaintiffs prevailed on liability, they would have faced substantial uncertainty about damages awardable under the NYCHRL's continuing violation doctrine. While numerous decisions establish the doctrine's viability under the NYCHRL, no court has awarded damages prior to the limitations period in a pay discrimination case, let alone for 13 years prior to the limitations period as Plaintiffs have sought in this case. These types of risk make the proposed settlement fair, reasonable, and adequate. *See Soler*, 2023 U.S. Dist. LEXIS 42647, at *9-10 (finding relief to be adequate partly because "Plaintiffs' legal theory is novel and relatively untested by courts, and estimating damages for each class members would be challenging"); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (approving class settlement "that removes the uncertainty that litigation

---

[6]     Settlement Class members will further benefit from the City's agreement to pay the employer share of employment taxes and pension contributions in addition to the set amount of $29.2 million to be paid into the settlement account. Lieder Decl., ¶ 30.

necessarily entails" when "Defendants presented several non-frivolous arguments at the settlement conference that might have reduced plaintiffs' eventual damages award or resulted in a verdict for defendants"); *Flores*, 2014 U.S. Dist. LEXIS 11026, at *16 (holding settlement to be adequate partly because "Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendant's defenses, proving willfulness in order to obtain a third year of liability and damages, and facing a substantial risk of collection"); *Diaz v. Eastern Locating Serv.*, 1:10-cv-04082-JCF, 2010 U.S. Dist. LEXIS 139136, at *14-15 (S.D.N.Y. Nov. 29, 2010) (finding that settlement was within range of reasonableness given various challenges, risks and costs continued litigation would entail).

Turning to costs, the settlement enables Plaintiffs to avoid substantial expenses. If this settlement is not approved, Plaintiffs would have to pay for their expert to conduct additional expensive analysis about the similarity of the FPI and BI jobs and for their attorneys to draft motions for summary judgment, possibly another round of *Daubert* motions, and then potentially prepare for a trial. *See Soler*, 2023 U.S. Dist. LEXIS 42647, at *9 (although sufficient discovery had already occurred for the parties to engage in meaningful settlement discussions, "assessing liability and damages would require significant more factual discovery").

Third, if the parties do not settle Plaintiffs' claims, it would likely take years before reaching final resolution of those claims, including exhaustion of all appeals. For example, the Second Circuit just ruled last week on an appeal from a jury verdict entered in 2019 -- four years before -- in favor of the other group of employees represented by Local 2507: emergency medical service employees. *Perry v. City of New York*, 2023 U.S. App. LEXIS 22462 (2d Cir. Aug. 25, 2023). Thus, this factor also weighs in favor of approving the settlement. *See Riedel v. Acqua Ancien Bath N.Y. LLC,* No. 14 Civ. 7238, 2016 U.S. Dist. LEXIS 68747, at *22 (S.D.N.Y. May

19, 2016) (finding that settlement would avoid additional expense and delay consequent to motion practice and a fact-intensive trial); *Diaz*, 2010 WL 5507912, at *4 (concluding that this factor weighs in favor of approving the settlement because "[l]itigation through trial would be complex, expensive, and long").

Finally, the Stipulation's provisions concerning service awards and attorneys' fees and expenses do not make the relief inadequate. The six proposed service awards totaling $90,000 are less than 3/10 of one percent of the settlement amount of $29,200,000. Courts have regularly approved service awards of up to $20,000 for individual plaintiffs in employment discrimination cases. *See, e.g., United States v. City of New York,* No. 07-CV-2067 (NGG) (RLM), 2015 U.S. Dist. LEXIS 29859, at *109 (E.D.N.Y. Mar. 11, 2015) (approving service awards of $15,000 apiece to each of seven individual plaintiffs and $50,000 to Vulcan Society in racial discrimination case for minority firefighter applicants against FDNY); *Ebbert,* 2011 U.S. Dist. LEXIS 150080, at *53-54 (approving service awards of $20,000 to each of six named plaintiffs in employment discrimination case).

The individual Plaintiffs conferred with Class Counsel before the litigation was filed and numerous times throughout the litigation, provided and reviewed documents, were deposed, informed class members about progress on the case, and actively participated in the mediation, including helping to formulate relief proposals presented to Defendants during the mediation. Lieder Decl., ¶¶ ¶¶ 4, 5, 11, 14, 16, 20-21. Riordan, the one unnamed class member proposed for an award, participated in the planning of the case before it was filed, many of the conferences throughout the litigation, and every mediation session. *Id.* And, of course, any class member will have an opportunity to object before the Court finally determines whether the awards are fair and reasonable.

And neither does the planned request for attorneys' fees and expenses make the relief inadequate. "Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010). A fee equal to 1/3 of the settlement fund is typical in employment discrimination class action settlements. S*ee Mercado v. Metro. Transp. Auth.*, No. 20 Civ. 6533 (AT), 2023 U.S. Dist. LEXIS 84303, at *8-11 (S.D.N.Y. May 15, 2023) (Torres, J.) (approving fee request for 1/3 of settlement fund of $7,250,000, which would create about a 1.5 multiplier);  *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted).

Here, the parties have not agreed on an attorneys' fee award, except that Class Counsel has agreed to cap its request at 30%, below 1/3. Stip., ¶ V.2. The Court has approved a 30% contingency in a case with numbers remarkably similar to this case, *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v Brixmor Prop. Group Inc.,* No. 1:16cv02400 (AT)(SN), 2017 U.S. Dist. LEXIS 225656, at *4 (S.D.N.Y. Dec. 13, 2017) (Torres, J.). In that case, the Court granted a request for attorneys' fees in the amount of 30% of the settlement amount of $28,000,000.00, or $8,400,000.00, plus interest earned, which equaled a 3.25 multiplier. The reasons that the Court gave for granting the request are equally applicable here: "the significant risk posed by the contingent nature of the case; the significant risks posed by the complex factual and legal issues in this action, and by protracted litigation against Defendants, the outcome of which would be uncertain; the considerable time and effort expended by Lead Counsel in prosecuting this action and obtaining the Settlement; the quality of the legal services rendered; the

substantial benefit obtained for the Settlement Class …; [and] the fee awards in similar actions involving common funds of a comparable size." *Id.* at *4-5. And finally, Settlement Class members will have a chance to object to the fee request, just as they will the request for service awards, and the Court will decide what is fair, reasonable, and adequate.

### 4.    The Settlement Treats Class Members Equitably.

The settlement also passes the final consideration in evaluating whether it is fair, reasonable, and adequate: it treats all class members equitably. The formulas for allocating awards among Damages Class members and among Pay Adjustment Class members weigh the amount of injury that each member has suffered: those with greater injuries will receive larger awards. The formulas do this objectively; neither the Expert nor the Administrator will be exercising any discretion. And the formulas do not favor the Plaintiffs over class members. The only difference in their awards is that the Plaintiffs will receive service awards in the amounts that the Court deems fair and reasonable in addition to their class awards.

### 5.    The Release Is Properly Limited

While not specifically mentioned in Rule 23(e)(2), the proposed settlement also is fair, reasonable, and adequate because the release is not overly broad. It is limited to the pay discrimination claims that were asserted or could have been asserted, it is limited to the time period for which each class member is obtaining relief, and it only releases the City and its agents. *Cf. Mercado*, 2023 U.S. Dist. LEXIS 84303, at *6-8 (denying motion for preliminary approval without prejudice partly because release protected entities only tenuously connected to the litigation).

For these reasons, the Court should preliminarily conclude that the proposed settlement is fair, reasonable, and adequate.

### B.    It Is "Likely" the Court Will Certify Both Settlement Classes.

"To preliminarily approve the Settlement, the Court must also find that it will likely be able to certify the class for purposes of judgment on the Settlement;" that is, the Court should not make a final decision on certification now. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *13 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019)). And, as in *Soler*, the defendant "has agreed not to oppose, for settlement purposes only, conditional certification" of the Settlement Classes. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *13; *see* Stip., ¶ II.1.f, II.4.

This Court has already certified a class of FPIs (ECF 98) and the close similarity of the proposed classes to the previously certified class should make preliminary approval of the Settlement Classes easy. Based on the prior certification decision, it is "likely" – indeed, even more than "likely" – that the Court will conclude that the Settlement Classes meet the standards of Rule 23(a) and (b).

**1.      The Prerequisites of Rule 23(a) Are Satisfied for Settlement Purposes.**

To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). Here, all four elements are "likely" satisfied.

**a.      *The Classes Are Sufficiently Numerous.***

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Generally, "numerosity is presumed at a level of 40

members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is indisputable here. There will be about 550 members of the Damages Class and over 350 members of the Pay Adjustment Class. ECF 98, at 26-27 (finding numerosity for the certified class based comprising about 507 members and for the proposed subclass limited to FPIs of color of about 365 members).

> b.      *The Claims Raise Common Questions of Law and Fact.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Court has already identified questions that were common to all class members through September 2022, including whether (1) the FPI and BI jobs are similar, (2) common evidence points toward discriminatory treatment of FPIs, and (3) three City policies or practices have had a disparate impact on FPIs of color. ECF 98, at 27-33. The claims of the Damages Class, which is identical to the certified class except that the end date of the class definition stretches to August 31, 2023, raise those same questions. So too do the claims of the Pay Adjustment Class, which covers the period from September 1, 2023, through August 31, 2024.[7]

> c.      *The Claims and Defenses Are Typical.*

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those other class members. The Court already has found this requirement satisfied by the five individual Plaintiffs with respect to the claims through September 2022. ECF 98, at 34. The fact that the claims of the Damages Class will run through August 31, 2023 does not alter the fact that the five

---

[7]      The claims of the Damages Class raise one common question not raised by the claims of the Pay Adjustment Class, namely, whether class members may assert claims prior to May 1, 2017, under the NYCHRL based on a continuing violation. However, the Court did not identify that question in its discussion of commonality in its September 19, 2022, Order, and the inapplicability of that one question does not undermine the existence of commonality for the claims of the Pay Adjustment Class.

individual Plaintiffs' claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). And although only three Plaintiffs can be Pay Adjustment Class representatives because two Plaintiffs are no longer FPIs, their claims likewise arise from the same pay practices of the City that result in lower salaries for all members of the Pay Adjustment Class than comparably situated Bis, and the three Plaintiff-Representatives make the same legal arguments to challenge those practices as do the other Pay Adjustment Class members.

        d.     *Class Counsel and the Class Representatives Are Adequate.*

As the Court already has held, ECF 98, at 34-35, and as discussed at pages 12-14 above, "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. 23(a)(4).

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied, Plaintiffs now turn to the requirements of Rule 23(b).

    **2.**    **The Damages Class "Likely" Satisfies the Prerequisites of Rule 23(b)(3).**

Under Rule 23(b)(3) a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R CIV. P. 23(b)(3).

Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. ECF 98, at 35-36 (quoting, among other decisions, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016), *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002), and *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 462 (S.D.N.Y. 2018)). The Court found that the common

questions raised by both the disparate impact and disparate treatment claims in this case predominated over individual questions. ECF 98, at 37-40. All the common questions discussed by the Court apply as well during the period from September 20, 2022, through August 31, 2023. It follows that the claims of the Damages Class "likely," if not certainly, predominantly raise common questions as well.

The Damages Class also "likely," if not certainly, satisfies the superiority requirement. In assessing superiority, "courts analyze: (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action.'" ECF 98, at 40-41 (quoting *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)). When evaluating superiority in the context of a settlement class, a showing of manageability of trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 618-620 (1997). A year ago, the Court found that "disaggregating the claims into hundreds of individual proceedings would only waste 'time, effort, and expense' and increase the likelihood of conflicting outcomes," and that "[a]ll class members' interests are implicated by the present case, and it is more expedient to concentrate in one forum the litigation of all class members' claims based on differences in pay due to racial discrimination." ECF 98, at 41. It also rejected the City's argument that "continuing to pursue wage increases through collective bargaining would … be a superior method of adjudication." *Id.* at 42. Extending the Damages Class by about 11 months should not change that analysis one iota.

Accordingly, the Damages Class should be preliminarily certified under Rule 23(b)(3) for settlement purposes.

### 3.      The Pay Adjustment Class "Likely" Satisfies the Prerequisites of Rule 23(b)(2).

In the Amended Complaint, Plaintiffs sought certification of a class under both Rule 23(b)(2) and 23(b)(3). ECF 69, ¶ 216. For the Rule 23(b)(2) class they sought declaratory and injunctive relief for a period of at least five years including "[a]ppointing an outside monitor who will review BI and FPI salaries before they become effective to assure that FPIs are paid at least as much as BIs at similar levels of the organizational hierarchies" and "[r]equiring the City to pay FPIs salaries that are similar to if not more than BI salaries, unless the City receives prior consent from [the] outside monitor to pay FPIs lower salaries than BIs." *Id.*, Prayer for Relief.

The provisions in the Stipulation concerning relief for the Pay Adjustment Class are intended to achieve the goal of the injunctive relief requested in the Amended Complaint in a different manner. Rather than appointing an outside monitor, the parties negotiated salary increases for the one-year Pay Adjustment Period that, based on 2023 data, would roughly equalize FPI and BI salaries for employees at similar levels of the organizational hierarchies. Lieder Decl., ¶ 29; Stip., IV.10. The parties expect that, in the upcoming CBA negotiations, the City and Local 2507 will negotiate contractual salary increases for FPIs that are similar to the negotiated increases for the Pay Adjustment Period. Lieder Decl., ¶ 29. Although the Stipulation does not bind either party in the CBA negotiations to a specific increase in pay, both parties have strong incentives to increase FPIs wages to rates similar to those outlined in this agreement.

ECF Rule 23(b)(2) allows certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Here, as the Court has found, the City has engaged in actions affecting the pay of FPIs and BIs that apply generally to all FPIs, including the persons who become members of the Pay

Adjustment Class during the Pay Adjustment Period. If Plaintiffs had prevailed at trial, those actions would have made appropriate injunctive relief in favor of the class as a whole. The negotiated relief is a substitute for that injunctive relief. For these reasons, it is "likely" that the Pay Adjustment Class satisfies the requirements of Rule 23(b)(2).

**C.**     <u>**Appointment of Class Representatives and Class Counsel**</u>

For the reasons stated in the Court's Order of September 19, 2022 appointing plaintiffs' counsel as Class Counsel for the certified class, ECF 98, at 43-44, and in section IV.A.1 above concerning the adequacy of the representation of the Settlement Classes, the Court should appoint (1) Plaintiffs Chalmers, Connors, Mendez, Nova, and Rosemond as representatives of the Damages Class, (2) Plaintiffs Connors, Nova, and Rosemond as representatives of the Pay Adjustment Class, and (3) Mehri & Skalet, PLLC and Valli Kane & Vagnini LLP as Class Counsel for both classes. *See Soler*, 2023 U.S. Dist. LEXIS 42647, at *17 (appointing plaintiffs as class representatives and their lawyers as class counsel based on the discussion of adequacy of representation).

**D.**     <u>**The Notice and Notice Process Should Be Approved.**</u>

Under FED. R. CIV. P. 23(e), settlement class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. A settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). It must also be "understood by the average class member." *Wal-Mart*, 396 F.3d at 114 (internal citations omitted).

The Notice and process for providing notice in this case are reasonable and should be approved for the same reasons set out in *Soler*. As in *Soler*,

> [t]he Notice is written in plain language, organized clearly, and based on the Federal Judicial Center's model notices. The Notice fairly, plainly, accurately, and reasonably informs class members of: (1) appropriate information about the nature of this litigation, the settlement class[es] at issue, the identity of class counsel, and the essential terms of the Settlement; (2) appropriate information about [Class Counsel's] forthcoming application for attorney's fees and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about the Court's procedures for final approval of the Settlement; (5) appropriate information about how to challenge or opt-out of the Settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation and the Settlement.

2023 U.S. Dist. LEXIS 42647, at *18-19. The Notice also informs each class member of the approximate amount of monetary relief the Settlement will provide and provides details on the date, time and place of the final approval hearing. *See* MANUAL FOURTH at § 21.312.

The Court's analysis in *Soler* also shows that the method for providing notice here is reasonable. "The settlement administrator will mail the Notice to class members [and] create and administer a website." 2023 U.S. Dist. LEXIS 42647, at *19. Whereas in *Soler* the administrator will "inform class members of the Settlement and website via text message," *id.*, here they will be informed by email communications from the administrator and Local 2507 . As in *Soler*, the administrator will "take reasonable steps to obtain correct addresses for class members whose notice is returned as undeliverable [and] attempt re-mailings for those class members. *Id.* at *19-20. In short, "the proposed plan for distributing the Notice will provide the best notice practicable under the circumstances, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements." *Id.* at *20.

**E.    A Process for the Final Approval Hearing Should Be Established.**

Finally, as in *Soler*, the Court should set the date, time, and location for the final approval or fairness hearing at which it will decide whether to finally approve the Settlement Classes and proposed settlement, the motion for service awards, and the motion for attorneys' fees and

expenses. The Court also should approve all the intermediate dates, such as the deadline for submitting opt outs, comments, and objections and the deadlines for submissions to be considered at that hearing. Except for the date of the hearing, the parties' proposed deadlines are set out in the Stipulation, the Notice, the Timeline, and the proposed Order. The parties ask the Court to schedule the final approval hearing at the earliest date available on its calendar that is at least 110 days after the Court preliminarily approves the settlement.

## V.  CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order, attached hereto as Exhibit 1.C, or a substantially similar Order.

Dated:  August 29, 2023                             Respectfully submitted,

                                                    */s/* Michael D. Lieder
                                                    Cyrus Mehri
                                                    Michael Lieder
                                                    Mehri & Skalet, PLLC
                                                    2000 K Street NW, Suite 325
                                                    Washington, DC 20006
                                                    Tel: (202) 822-5100

                                                    Dated: August ___, 2023

                                                    Robert J. Valli, Jr.
                                                    Sara Wyn Kane
                                                    Matthew L. Berman
                                                    Valli Kane & Vagnini LLP
                                                    600 Old Country Road, Suite 519
                                                    Garden City, New York 11530
                                                    Tel: 516-203-7180

                                                    *Attorneys for Plaintiffs and the Proposed Classes*