**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

DARRYL CHALMERS,
DARREN CONNORS,
GLENN MENDEZ,
JAMES NOVA, and
FATIMA Q. ROSEMOND,

On behalf of themselves and all others
similarly situated, and

AFSCME DISTRICT COUNCIL 37
LOCAL 2507, on behalf of its members

                              Plaintiffs,

            -and-

BRANDEN BOWMAN and
SEBASTIAN STACK, on behalf of
themselves and all others similarly situated,

                   Plaintiffs-Intervenors,

             -versus-

CITY OF NEW YORK,

                       Defendant.

---------------------------------------------------------x

Civil No. 20 Civ. 3389 (AT)

**PLAINTIFFS-INTERVENORS'**
**COMPLAINT**

      BRANDEN BOWMAN and SEBASTIAN STACK (hereinafter collectively "Plaintiffs-Intervenors"), by and through their attorneys, Gladstein, Reif & Meginniss LLP, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

      1.     This is an action brought to remedy discrimination in employment on the basis of race in violation of 42 U.S.C. § 1981 enforced under 42 U.S.C. § 1983, Title VII of the 1964

Civil Rights Act, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"), and the New York City Human

Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.      Plaintiffs-Intervenors are recently hired Fire Protection Inspectors who work for

the Fire Department of New York ("FDNY"), an agency of Defendant City of New York (the

"City"). The FDNY's Fire Protection Inspectors and Associate Fire Protection Inspectors

(collectively "FPIs") perform similar work to the Building Inspectors ("BIs") who work for a

different agency of the City, the Department of Buildings ("DOB"), but the City pays FPIs

substantially less than BIs. The City discriminates against FPIs by paying them less than BIs

because of the difference in the racial composition of FPIs and BIs; for more than a decade, a

substantially higher percentage of FPIs have identified as non-white compared to BIs, who are

much more likely to identify as white. The City's pay discrimination against FPIs is part of a

broader pattern of racial discrimination against FPIs, and cannot be explained by differences in

job duties or market demands.

3.      Plaintiffs-Intervenors seek declaratory and injunctive relief and compensatory

damages on behalf of themselves and a class of FPIs denominated the Pay Adjustment Class. In

addition, Plaintiff-Intervenor Branden Bowman seeks declaratory and injunctive relief and

compensatory damages on behalf of himself and a class of FPIs denominated the Pay Adjustment

Subclass.

## JURISDICTION and VENUE

4.      This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §

1343(a)(4), 28 U.S.C. § 1331, and 28 U.S.C. § 1337, and over the state claims pursuant to 28

U.S.C. § 1367(a).

5.      The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## JURY TRIAL

6.      Plaintiffs-Intervenors demand a trial by jury on any and all issues triable as of right by a jury.

## PARTIES

7.      Plaintiff-Intervenor Branden Bowman is a non-white male who has been employed by the City as a FPI since he graduated from the Fire Protection Academy on January 25, 2024. During the entirety of his tenure as a FPI, he has been paid less than the average salary for similarly situated Building Inspectors with similar levels of responsibility.  He is a proposed representative of the Pay Adjustment Class and the Pay Adjustment Subclass.

8.      Plaintiff-Intervenor Sebastian Stack is a white male who has been employed by the City as a FPI since he graduated from the Fire Protection Academy on January 25, 2024. During the entirety of his tenure as a FPI, he has been paid less than the average salary for similarly situated Building Inspectors with similar levels of responsibility.  He is a proposed representative of the Pay Adjustment Class.

9.      Defendant City of New York is a municipal corporation duly organized and existing under the laws of the State of New York. Defendant City is an employer as defined by Title VII and a "person" for purposes of enforcement of the rights guaranteed under 42 U.S.C. §§ 1981 and 1983. The FDNY and the DOB are agencies of Defendant City.

## FACTS

10.    In 2017, about 30% of FPIs were white, about 40% were African American, about 15% were Asian American, and about 15% were Hispanic American.  The white percentage of FPIs has been almost constant throughout the period from 2008 through present.

11.    Based on the Workforce Profile Report for FY 2017 prepared by the Department of Citywide Administrative Services for the City of New York ("2017 Workforce Report"), about 50% of BIs were white employees that year.  Upon information and belief, the percentage of BIs who were white was close to 50% throughout the period from 2008 through present.

12.    Nothing about the nature of the FPI and BI jobs justifies the City in paying FPIs lower salaries than BIs on a per hour basis.  The two types of position have similar educational and experiential requirements.  They receive similar training after the City hires them although the FPI job requires somewhat longer and more comprehensive training.  FPIs and BIs have substantially similar job duties.  To the extent that they differ, FPI duties tend to be broader and more technical.  They have virtually identical powers after conducting inspections.  They also frequently work together on joint task forces.  The jobs, however, differ in one important respect: FPIs face substantially greater risks in terms of employee health and safety.  The similarity of the duties justifies payment on at least the same salary scales; to the extent that the differences should be factors in determining the pay scales, they favor a higher, not a lower, pay scale for FPIs.

13.    According to publicly available payroll data, in every year between 2008 and 2019, the City has paid FPIs lower salaries than BIs, even adjusting for differences in their regular hours worked per week. For example, FPIs were paid on average about $9,600 less in salary than BIs in FY 2008.  In that year, FPIs were paid for a 35-hour week while BIs were paid

for a 40-hour week.  Adjusting for the difference in hours, FPIs were paid about $2,500 less than BIs. This pay gap has steadily increased over time, and by FY 2019, adjusting for the difference in hours, FPIs were paid average salaries of about $9,000 less than BIs. The pay disparities have continued and increased to the present time.

14.     The City's decision to pay FPIs lower salaries than BIs since at least 2008 is the reverse of the general labor market, whether that market is measured nationally, by other large states, or by other large cities.  According to the Occupational Information Network (O*NET) of the U.S. Department of Labor, in 2018 the median salary for fire inspectors across the country was $62,510 while the median salary for Building Inspectors was $59,700.  That is, fire inspector salaries were, on average, 5% higher than those paid to Building Inspectors. Similarly, fire inspectors typically earn more than Building Inspectors in the vast majority of the largest states and cities.

15.     Overtime pay exacerbates the compensation gap between FPIs and BIs. FPIs receive less overtime pay than comparable BIs for two reasons.  First, when City non-exempt employees work more than 40 hours in a week they are paid 1.5 times their regular hourly salary rate, and since BIs have higher hourly salary rates than FPIs, they also have higher overtime rates.  Second, the first 5 hours in a week beyond their regular schedule that FPIs worked prior to FY 2017, and the first 2.5 hours in a week beyond their regular schedule that FPIs worked in and after FY 2017, are paid at their regular rate and not at an overtime premium rate.  These two factors negatively affect FPI overtime pay relative to BI pay in every year and are the focus of the claims relative to overtime.

16.     Publicly available data shows overtime pay received by FPIs and BIs for FYs 2014-19.  In every year, the data reflects that FPIs received less in overtime than BIs because

BIs' salary rates are higher (even accounting for the differences in hours) and BIs are paid on a 40-hour week whereas FPIs have been paid on either a 35 or a 37.5 hour week.  Although the publicly available data goes back only to 2014, the same would be true for as long as the City has treated FPIs and BIs differently with respect to these two factors. The overtime disparities have continued and increased to the present time.

17.    The City's decision to pay BIs higher salaries than FPIs is part of the pattern of racial discrimination in compensation at FDNY.  The racial composition and average salaries of job groups at FDNY are strongly correlated; the lower the percentage of white employees in a job group, the lower the pay of that group, and the higher the percentage of white employees in a job group, the higher the pay.

18.    The City knowingly pays FPIs lower salaries than firefighters, provides FPIs lesser benefits than firefighters and EMS employees, and treats FPIs as separate and unequal with respect to health and safety, uniforms, and honors than firefighters and EMS employees. This combination of economic and non-economic badges of inferiority is the product of discriminatory animus.  This same attitude animates the pay disparities between FPIs and BIs.

19.    The history of racial discrimination at FDNY goes well beyond FPIs.  During the past 50 years, two large class action lawsuits against the City of New York have resulted in rulings that the FDNY has discriminated against African Americans and Hispanics in the hiring of firefighters.  Although the lawsuits involved applicants for firefighter positions rather than FPIs, the lawsuits are relevant because of the resistance to integration exhibited by high levels of the FDNY. *See Vulcan Society of New York City Fire Dep't, Inc. v. Civil Serv. Comm'n*, 360 F. Supp. 1265, 1269 (S.D.N.Y.), *aff'd in relevant part*, 490 F.2d 387 (2d Cir. 1973); *United States v. City of New York*, 637 F. Supp. 2d 77, 82-83, 132 (E.D.N.Y. 2009).

20.    Finally, the lack of any bona fide business reason to pay BIs more than FPIs provides additional circumstantial evidence that the pay disparity is the result of intentional discrimination. The labor market does not support a pay differential to the detriment of FPIs.  As alleged above, nationwide, state, and city data compiled by the DOL reveal that fire inspectors are, on average, paid more than building inspectors, not less.  The job duties of FPIs, as set forth above, require more wide-ranging and more detailed knowledge than the job duties of BIs. The job duties of FPIs, also as set forth above, involve greater physical risks than do the job duties of BIs. The City has had trouble filling FPI positions, which generate revenue for the FDNY.  If it paid FPIs higher salaries, the problem of a shortage of FPIs would be lessened or eliminated and the City would realize more, not less, net revenue.

21.    The City's decision to pay BIs more than FPIs, which would not have been made but for the differences in the racial compositions of the two groups of employees, was made sometime before FY 2008, and has been adhered to on a continuous basis at all times since then.

22.    Similarly, the City established a practice of paying BIs substantially more than the minimum salaries set in their CBA but of paying FPIs, with very few exceptions, only the minimum salaries set in their CBA sometime before FY 2008 and has adhered to that policy or practice on a continuous basis at all times since then.  The disparate impact against racial minorities caused by this policy or practice also has been continuous since FY 2008 if not before.

23.    The City's decision or practice has caused members of the proposed Pay Adjustment Class and Pay Adjustment Subclass defined below to receive far less in salaries, overtime compensation, and employee benefits than they would have on a continuing basis in every year between 2008 (or earlier) and the present.

## CLASS AND SUBCLASS ALLEGATIONS

24.     Plaintiffs-Intervenors bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Both Plaintiffs-Intervenors bring their disparate treatment claims under the NYCHRL on their own behalf and on behalf of a class of all persons denominated the Pay Adjustment Class, which is defined as: all persons who served or serve as Fire Protection Inspectors or Associate Fire Protection Inspectors in the FDNY at any time between September 1, 2023, and August 31, 2024 (the "Pay Adjustment Period"), except that persons who are attending the Fire Protection Academy during the Pay Adjustment Period must graduate before becoming a Pay Adjustment Class member.  Plaintiff-Intervenor Branden Bowman also brings his disparate treatment claims under sections 1981 and 1983 and under Title VII and his disparate impact claims under Title VII and the NYCHRL on behalf of himself and a subclass denominated the "Pay Adjustment Subclass" defined as all persons who do not self-identify as white and who have been employed by the City as Fire Protection Inspectors or Associate Fire Protection Inspectors in the FDNY at any time during the Pay Adjustment Period, except that persons who are attending the Fire Protection Academy during the Pay Adjustment Period must graduate before becoming a Pay Adjustment Subclass member.

25.     The Pay Adjustment Class contains an estimated 400 members, and the Pay Adjustment Subclass contains an estimated 300 members, rendering joinder of all their members impractical.

26.     The claims of both the Pay Adjustment Class and the Pay Adjustment Subclass raise numerous common questions of fact or law that can be answered largely or completely through common evidence. These common questions include but are not limited to whether the

FPI and BI jobs are similar, whether the City has treated FPIs in a discriminatory manner, and whether City policies or practices have had a disparate impact on FPIs of color.

27. Plaintiffs-Intervenors are typical of other Pay Adjustment Class members in that they have worked for the City as FPIs during the Pay Adjustment Period, and they have claims for lower salaries than BIs as a result of the same factors that led to discrimination against other Pay Adjustment Class members. Plaintiff-Intervenor Branden Bowman is typical of other Pay Adjustment Subclass members for the same reasons and because, like them, he is non-white.

28. Plaintiffs-Intervenors are adequate representatives of the Pay Adjustment Class because their claims are typical of other Pay Adjustment Class members, they have no conflicts with the Pay Adjustment Class members, and they have retained experienced counsel capable of representing the Pay Adjustment Class. Plaintiff-Intervenor Branden Bowman is an adequate representative of the Pay Adjustment Subclass for the same reasons.

29. Certification of the Pay Adjustment Class and the Pay Adjustment Subclass is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any individual issues, and a class action is superior to other means for fairly and efficiently adjudicating the controversy.

**FIRST CAUSE OF ACTION:**
**Disparate Treatment Claims Under 42 U.S.C. §§ 1981 and 1983**
**on Behalf of the Pay Adjustment Subclass**

30. Plaintiffs-Intervenors repeat and incorporate herein Paragraphs 1-29 above.

31. The City has impaired under color of state and municipal law the right of Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass to make and enforce contracts of employment, which under 42 U.S.C. § 1981 shall be the same as the right of white persons, in that the City through the FDNY has discriminatorily paid FPIs,

because they are primarily racial minorities, lower salaries than BIs even though FPI job duties, and the risks associated with performing the duties, warrant FPIs being paid salaries equal to, if not larger than, BIs.

32.    In making its decisions concerning the compensation of FPIs relative to BIs, the City and its officials and managers have acted under color of the statutes, ordinances, regulations, customs, and usages, of the laws of the State of New York which, among other things, delegate authority over these decisions to the City.

33.    The City has subjected Plaintiff-Intervenor Branden Bowman and the members of the proposed Pay Adjustment Subclass to the deprivation of the rights, privileges, or immunities secured by 42 U.S.C. § 1981, as set forth above.

34.    The discrimination in compensation relative to the BIs against Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass has been pursuant to a policy or custom within the City entitling Plaintiff-Intervenor Branden Bowman and the proposed Pay Adjustment Subclass members to relief under 42 U.S.C. § 1983. The discrimination has been so persistent or widespread to constitute a custom or usage with the force of law. It also has been so manifest as to imply the constructive acquiescence of senior policy-making officials within FDNY, which is the City's agent, and the City Government. The City's failure to make non-discriminatory decisions and to train and supervise its employees to avoid discriminatory decisions display a deliberate indifference to the constitutional rights of FPIs, who are primarily racial minorities.

35.    Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass have been damaged by the discrimination in compensation relative to BIs since 2008 (if not before) or such later date as they first became employed as FPIs. This damage

takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels for Pay Adjustment Subclass members.  Pay Adjustment Subclass Members will be damaged in the future by the discrimination unless injunctive relief is entered.

**SECOND CAUSE OF ACTION:**
**Disparate Treatment Claims Under Title VII on Behalf of the Pay Adjustment Subclass**

36.    Plaintiffs-Intervenors repeat and incorporate herein Paragraphs 1-35 above.

37.    The City has discriminated against Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass in their compensation because of their race in violation of Title VII, in that the City through the FDNY has been motivated to pay FPIs, because they are primarily racial minorities, lower salaries than BIs even though FPI job duties, and the risks associated with performing the duties, warrant FPIs being paid salaries equal to, if not larger than, BIs.

38.    The discrimination in compensation relative to the BIs against Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass has been so manifest as to imply the constructive acquiescence of senior policy-making officials within FDNY, which is the City's agent, and the City Government.  The City's failure to make non-discriminatory decisions and to train and supervise its employees to avoid discriminatory decisions displays a deliberate indifference to the rights of FPIs, who are primarily racial minorities.

39.    Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass have been damaged by the discrimination in compensation relative to BIs throughout the liability period under Title VII.  This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels for Pay Adjustment Subclass members.  Pay Adjustment Subclass members will be damaged in the future by the discrimination unless injunctive relief is entered.

**THIRD CAUSE OF ACTION:**
**Disparate Treatment Claims Under the NYCHRL on Behalf of the Pay Adjustment Class**

40.     Plaintiffs-Intervenors repeat and incorporate herein Paragraphs 1-39 above.

41.     The City has discriminated against Plaintiffs-Intervenors and Pay Adjustment Class members in their compensation because of their race in violation of N.Y.C. Admin. Code § 8-107.1(a)(3), in that the fact that FPIs are primarily racial minorities has been a factor in the City's decision to pay FPIs lower salaries than BIs even though FPI job duties, and the risks associated with performing the duties, warrant FPIs being paid salaries equal to, if not larger than, BIs.

42.     The City has violated the rights of Plaintiffs-Intervenors and members of the proposed Pay Adjustment Class in violation of N.Y.C. Admin. Code § 8-107.13(b)(2) in that it knew of the compensation discrimination engaged in by its employees or agents against FPIs and acquiesced in such conduct or failed to take immediate and appropriate corrective action. Among other indicia of the City's knowledge, its managers or supervisors knew of the discrimination engaged in by its employees or agents.

43.     The City has violated the rights of Plaintiffs-Intervenors and members of the proposed Pay Adjustment Class in violation of N.Y.C. Admin. Code § 8-107.13(b)(3) in that it should have known of the discriminatory conduct of its employees and agents and failed to exercise reasonable diligence to prevent such discriminatory conduct.

44.     The discrimination in compensation relative to the BIs against Plaintiffs-Intervenors and members of the proposed Pay Adjustment Class has been so manifest as to imply the constructive acquiescence of senior policy-making officials within FDNY, which is the City's agent, and the City Government.  The City's failure to make non-discriminatory decisions

and to train and supervise its employees to avoid discriminatory decisions displays a deliberate indifference to the rights of FPIs, who are primarily racial minorities.

45.    Even though the fact that few FPIs are white has been a factor in the City's decision to pay FPIs less than BIs, the disparate treatment equally affects the white FPIs such as Plaintiff-Intervenor Sebastian Stack and other members of the proposed Pay Adjustment Class, who have a relationship or association with the racial minority FPIs within the meaning of N.Y.C. Admin. Code § 8-107.20.

46.    The City has discriminatorily and intentionally paid BIs more than FPIs in violation of the NYCHRL on a continuous basis since 2008, if not before, and continuing up to the present.

47.    Plaintiffs-Intervenors and members of the proposed Pay Adjustment Class have been damaged by the discrimination in compensation relative to BIs throughout the liability period under the NYCHRL, including the period back to FY 2008, or even earlier, under which it is liable under the continuing violation doctrine.  This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels for Pay Adjustment Class members.  Pay Adjustment Class members will be damaged in the future by the discrimination unless injunctive relief is entered.

## FOURTH CAUSE OF ACTION:
### Disparate Impact Claims Under Title VII on Behalf of the Pay Adjustment Subclass

48.    Plaintiffs-Intervenors repeat and incorporate herein Paragraphs 1-47 above.

49.    For many years, the City has engaged in the practice of paying virtually all BIs higher salaries than the minimums specified in their collective bargaining agreements but paying almost all FPIs the minimum salaries specified in their collective bargaining agreements.

13

50.     The practice described in the paragraph above, combined with the fact that a much higher percentage of BI employees than FPIs are white, has created a disparate impact in violation of Title VII under which racial minorities receive lower compensation than white employees.

51.     In addition, the provisions in the BI collective bargaining agreements making their standard work week 40 hours compared to the provisions in the FPI collective bargaining agreements making their standard work week 37.5 hours has exacerbated the disparate impact created by the practice described two paragraphs above.

52.     The City has had no valid business reasons for engaging in the practices that have caused BIs to be paid more than FPIs.  Indeed, the FPI job duties, and the risks associated with performing the duties, warrant FPIs being paid salaries equal to, if not larger than, BIs.

53.     Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass have been damaged by the disparate impact discrimination described above throughout the Title VII liability period or since such later date as they were first employed as FPIs.  This damage takes the form of lost salary, lost overtime, and diminishment of those employee benefits tied to pay levels for members of the Pay Adjustment Subclass.  Pay Adjustment Subclass members will be damaged in the future by the discrimination unless injunctive relief is entered.

**FIFTH CAUSE OF ACTION:**
**Disparate Impact Claims Under the NYCHRL on Behalf of the Pay Adjustment Subclass**

54.     Plaintiffs-Intervenors repeat and incorporate herein Paragraphs 1-53 above.

55.     Since 2008, if not before, the City has engaged in the practice of paying virtually all BIs higher salaries than the minimums specified in their collective bargaining agreements but paying almost all FPIs the minimum salaries specified in their collective bargaining agreements.

14

56.     The practice described in the paragraph above, combined with the fact that a much higher percentage of BI employees than FPIs are white, has created a disparate impact in violation of N.Y.C. Admin. Code § 8-107.17(a)(1) under which racial minorities receive lower compensation than white employees.

57.     In addition, the provisions in the BI collective bargaining agreements making their standard work week 40 hours compared to the provisions in the FPI collective bargaining agreements making their standard work week initially 35 hours, then 37.5 hours, has exacerbated the disparate impact created by the practice described two paragraphs above.

58.     The City's practices described above have not had a significant relationship to its significant business objectives.  Indeed, the FPI job duties, and the risks associated with performing the duties, warrant FPIs being paid salaries equal to, if not larger than, BIs.

59.     Even if the City could prove that its practices have had a significant relationship to its significant business objectives, the City violated N.Y.C. Admin. Code § 8-107.17(a)(2) by failing to engage in the alternative policy or practice of paying FPIs on the same scale and same hourly schedule as BIs, which would have had less disparate impact on protected racial groups.

60.     The City's practice of paying virtually all BIs more than the minimum required under their collective bargaining agreement while paying almost all FPIs the minimum required under their collective bargaining agreement has had a disparate impact against Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass in violation of the NYCHRL on a continuous basis since 2008, if not before, and continuing up to the present.

61.     Plaintiff-Intervenor Branden Bowman and members of the proposed Pay Adjustment Subclass have been damaged by the discriminatory disparate impact throughout the

liability period under the NYCHRL, including the period back to FY 2008, or even earlier, during which the City is liable under the continuing violation doctrine. This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels for Pay Adjustment Subclass members. Pay Adjustment Subclass members will be damaged in the future by the disparate impact unless injunctive relief is entered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs-Intervenors request that this Court enter a judgment against Defendant and in favor of Plaintiffs-Intervenors and the Pay Adjustment Class and Pay Adjustment Subclass members and award the following relief:

A.   An order certifying this action as a class action on behalf of the proposed Pay Adjustment Class pursuant to Federal Rule of Civil Procedure 23 to litigate the claims in Count Three; declaring Plaintiffs-Intervenors Sebastian Stack and Branden Bowman as representatives of the Pay Adjustment Class; and declaring Plaintiffs-Intervenors' counsel as counsel for the Pay Adjustment Class;

B.   An order certifying this action as a class action on behalf of the proposed Pay Adjustment Subclass pursuant to Federal Rule of Civil Procedure 23 to litigate the claims in Counts One, Two, Four, and Five; declaring Plaintiff-Intervenor Branden Bowman as representative of the Pay Adjustment Subclass; and declaring Plaintiffs-Intervenors' counsel as counsel for the Pay Adjustment Subclass;

C.   An order granting Plaintiffs-Intervenors and members of the Pay Adjustment Class and Pay Adjustment Subclass actual damages for violations of 42 U.S.C. § 1981 and 1983 and of the NYCHRL, including but not limited to back pay, front

pay, lost overtime pay, and other forms of lost compensation such as the value of lost employee benefits;

D.    An order granting Plaintiffs-Intervenors and the members of the Pay Adjustment Class and Pay Adjustment Subclass reasonable attorneys' fees and expenses and other compensable costs and expenses;

E.    An order granting Plaintiffs-Intervenors and the Pay Adjustment Class and Pay Adjustment Subclass appropriate injunctive and declaratory relief for a period of time to be determined by the Court but not less than five years, including but not limited to:

- Requiring the City to pay FPIs salaries that are similar to if not more than BI salaries, unless the City receives prior consent from an outside monitor to pay FPIs lower salaries than BIs;

- Appointing an outside monitor who will review BI and FPI salaries before they become effective to assure that FPIs are paid at least as much as BIs at similar levels of the organizational hierarchies; and

- Empowering the outside monitor to consider and rule on any reasons that the City may choose to present in writing that did not exist at the time of the final Order in this case for paying FPIs as a group less than BIs after any such written explanation also is provided to counsel for Plaintiffs-Intervenors who will have a reasonable opportunity to present any counterarguments to the monitor; and

F.    An order granting Plaintiffs-Intervenors and the Pay Adjustment Class and Pay Adjustment Subclass members such other, further, and different relief as the

nature of the case may require or as may be determined to be just, equitable and proper by this Court.

G.   Some members of the Pay Adjustment Class and Pay Adjustment Subclass will also seek damages for the period preceding the Pay Adjustment Period as members of the damages class.

Dated:    March 14, 2024
          New York, New York

GLADSTEIN, REIF & MEGINNISS LLP

By:

Jessica E. Harris
Walter M. Meginniss, Jr.
Max Utzschneider
39 Broadway, Ste. 2430
New York, New York 10006
(212) 228-7727
jharris@grmny.com
tmeginniss@grmny.com
mutzschneider@grmny.com