20 Civ. 3389 (AT) (GWG)

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK

DARRYL CHALMERS, DARREN CONNORS, GLENN
MENDEZ, JAMES NOVA, and FATIMA Q. PDF of
Excel Sheet 8-23-24ROSEMOND, on behalf of
themselves and all others similarly situated, and AFSCME
DISTRICT COUNCIL 37 LOCAL 2507, on behalf of its
members,

Plaintiffs,

- against -

CITY OF NEW YORK,

Defendant.

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

### MURIEL GOODE-TRUFANT
### Acting Corporation Counsel of the City of New York
*Attorney for Defendant*
*100 Church Street, Rm. 2-117*
*New York, N.Y.  10007*

*Of Counsel:  Lora Minicucci*
*Tel: (212) 356-2078*
*Matter No. 2020-020833*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 2

PRELIMINARY STATEMENT ........................................................................... 7

ARGUMENT ....................................................................................................... 8

    POINT I ........................................................................................................ 8

    THE REQUESTED SERVICE AWARDS ARE REASONABLE ...................... 8

    POINT II ....................................................................................................... 9

    THE REQUESTED ATTORNEYS' FEES ARE EXCESSIVE ........................... 9

        A.      The Common Fund – or "Equitable
        Fund" – Doctrine Only Guarantees that Class
        Counsel Are Paid Reasonable Attorneys' Fees, not a
        POF……….. ........................................................................................ 10

        B.      The Circuit's Trend Toward the POF
        Method Is to Prevent Overly Compensating Class
        Counsel
                …………………………………………1
        1

        C.      The POF Method Is Meant to Mirror the
        Market Rate for Attorneys' Fees................................................. 12

        D.      Class Counsel Are Entitled to a
        Reasonable Fee According to the Lodestar Analysis ................. 13

        E.      Even if the Court Uses the POF Method,
        Granting Class Counsel 30 Percent of the QSF
        Would Be Inequitable and Result in Counsel's
        Overcompensation ..................................................................... 21

        F.    Despite Which Method the Court Uses, the
        Analysis Is the Same, and Class Counsel Are Not
        Entitled to Take 30 Percent of the QSF and Millions
        of Dollars of the Class's Backpay Because It Would
        Result in Counsel's Overcompensation ..................................... 22

CONCLUSION ................................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Aboud v. Charles Schwab & Co.*,
   No. 14 Civ. 2712, 2014 U.S. Dist. LEXIS 157205 (S.D.N.Y. Nov. 4, 2014) ..................21, 22

*Adorno v. Port Authority of N.Y. and N.J.*,
   685 F. Supp. 2d 507 (S.D.N.Y. 2010) (Chin, J.)....................................................................15

*Albemarle Paper Co. v. Moody*,
   422 U.S. 405 (1975).................................................................................................................3

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975).................................................................................................................3

*Amato v. City of Saratoga Springs*,
   991 F. Supp. 62 (N.D.N.Y. 1998)..........................................................................................13

*In re American Bank Note Holographics, Inc.*,
   127 F. Supp.2d 418 (S.D.N.Y. 2001).......................................................................................4

*Andrews v. City of New York*,
   118 F. Supp. 3d 630 (S.D.N.Y. 2015)....................................................2, 7, 13, 14, 17, 18, 19

*Animas v. Balcon Quiteno Inc.*,
   No. 14-CV-3763 (CBA) (VVP), 2015 U.S. Dist. LEXIS 177666 (E.D.N.Y.
   Sept. 14, 2015 ........................................................................................................................22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   522 F.3d 182 (2d Cir. 2007)..............................................................................2, 6, 10, 16, 17

*Au New Haven LLC v. YKK Corp.*,
   No. 15-CV-3411, 2018 U. S. Dist. LEXIS 3073 (S.D.N.Y. Jan. 5, 2018) ...............................8

*Barfield v. N.Y. City Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008).....................................................................................................12

*Barrella v. Vill. of Freeport*,
   43 F. Supp. 3d 136 (E.D.N.Y. 2014) .....................................................................................10

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................................22

*Benihana Inc. v. Benihana of Tokyo LLC*,
   No. 15-CV-7428, 2017 U. S. Dist. LEXIS 211045 (S.D.N.Y. Dec. 22, 2017) ........................9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................6

*Bridges v. Eastman Kodak Co.*,
  102 F.3d 56 (2d Cir. 1996) ......................................................................................2

*C. B. v. New York City Dep't of Educ.*,
  No. 18 Civ. 7337, 2019 U.S. Dist. LEXIS 111636 (S.D.N.Y. July 2, 2019) ...........7

*Chen-Oster v. Goldman Sachs & Co.*,
  No. 10-cv-6950-(AT-RWL) 2023 U.S. Dist. LEXIS 200333 (S.D.N.Y. Nov.
  7, 2023) ..................................................................................................................21

*Clark v. Gotham Lasik, PLLC*,
  No. 11 Civ. 1307 (LGS)(JCF), 2013 U.S. Dist. LEXIS 119012 (S.D.N.Y.
  2013) ........................................................................................................................7

*Clarke v. Frank*,
  960 F.2d 1146 (2d Cir. 1992) .................................................................................13

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ....................................................................................5

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990) ...................................................................................4

*Daiwa Special Asset Corp. v. Desnick*,
  2002 U.S. Dist. LEXIS 23073 .................................................................................13

*DiFilippo v. Morizio*,
  759 F.2d 231 (2d Cir. 1985) ...................................................................................13

*EEOC v. Enterprise Ass'n Steamfitters Local No. 638*,
  542 F.2d 579 (2d Cir. 1976) .....................................................................................3

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*,
  286 F. Supp. 3d 585 (S.D.N.Y. 2018) ......................................................................9

*Farbotko v. Clinton County of New York*,
  433 F.3d 204 (2d Cir. 2005) .....................................................................................6

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ............................................................................................2, 12

*Flores v. Anjost Corp*,
  2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. 2014) ...............................................21, 22

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................................................4

*Fox v. Vice*,
    131 S. Ct. 2205 (2011) ......................................................................................13

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)...............................................................3, 4, 5, 14, 15

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*,
    96 CIV. 8414, 2023 U.S. Dist. LEXIS 93257 (S.D.N.Y. May 24, 2023)............9, 15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................2, 6, 12

*Homeaway.com, Inc. v. City of N.Y.*,
    No. 18 Civ. 7742 (PAE), 523 F. Supp. 3d 573 (S.D.N.Y. Mar. 1, 2021) ...........9, 13

*House v. Wackenhut Servs.*,
    *No.* 10 Civ. 9476 (CM)(FM), 2012 U.S. Dist. LEXIS 118416 (S.D.N.Y. Aug.
    8, 2012) ..............................................................................................................6

*Houser v. Pritzker*,
    No. l0-cv-3105, ECF No. 377, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y.
    Sept. 20, 2016) ...................................................................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ..................14, 15

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009).........................................5, 7, 10, 11, 15, 21

*Johnson v. Brennan*,
    No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .....................15

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.
    Bergeron*, 489 U.S. 87 ......................................................................................16

*Joseph v. HDMJ Rest., Inc.*,
    970 F. Supp. 2d 131 (E.D.N.Y. 2013) ...................................................................6

*Kahlil v. Original Old Homestead Rest., Inc.*,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009)....................................................................2

*Kastrati v. M.E.G. Rest. Enterprises Ltd.*,
    No. 21 Civ. 481 (KHP), 2023 U.S. Dist. LEXIS 6929
    (S.D.N.Y. Jan. 13, 2023)....................................................4, 7, 8, 9, 13, 15, 21, 22

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998).................................................................13

*Lilly v. City of New York*,
  No. 16-CV-322 (ER), 2017 U. S. Dist. LEXIS 129815 (S.D.N.Y. Aug. 15,
  2017) .........................................................................................................8

*Local 1180, Communs. Workers of Am. v. City of New York*,
  392 F. Supp. 3d 361 (S.D.N.Y. 2019)..............................12, 17, 18, 19, 20

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1998)....................................................................6

*Macey v. Wells Fargo Bank, N.A.*,
  No. 11-CJC-004654, 2014 Cal. Super. LEXIS 1299 (C.A. Sup. Ct., San
  Francisco Cty., Mar. 5, 2014) ...............................................................23

*In re MagSafe Apple Power Adapter Litig.*,
  2015 U.S. Dist. LEXIS 11353 (N.D.C.A. Jan. 30, 2015) .......................23

*Maher v. Gagne*,
  448 U.S. 122 (1980).................................................................................2

*Manley v. Midan Rest. Inc.*,
  2017 U.S. Dist. LEXIS 44560 (S.D.N.Y. May 27, 2014).........................8

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)....................................................................4

*McNeely v. Metro. Life Ins. Co.*,
  No. 1:18-CV-00885-PAC, slip op. (S.D.N.Y. Jan. 15, 2020)...........21, 22

*Mercado v. Metro. Transp. Auth.*,
  No. 20 Civ. 6533 (AT), 2023 U.S. Dist. LEXIS 84303 (S.D.N.Y. May 15,
  2023) .......................................................................................................21

*Millea v. Metro-N. R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011)................................................................2, 6

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983).....................................................2, 13, 18

*Ni v. Bat-Yam Food Servs. Inc.*,
  13 Civ. 7274, 2016 U.S. Dist. LEXIS 7782 (S.D.N.Y. Jan. 27, 2016).....8

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010).........................................................5, 6, 19, 23

*Polk v. New York State Dep't of Corr. Servs.*,
    722 F.2d 23 (2d Cir. 1983)............................................................................6

*R.P. v. New York City Dep't of Educ.*,
    2022 U.S. Dist. LEXIS 76873 (S.D.N.Y. April 27, 2022) ........................7

*Reiter v. MTA New York City Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006)........................................................................6

*RJR Nabisco, Inc. v. U.S.*,
    955 F.2d 1457 (11 Cir. 1992)......................................................................5

*Roberts v. Texaco Inc.*,
    No. 94 Civ. 2015 (CLB), 1997 U.S. Dist. LEXIS 23848 (S.D.N.Y. Mar. 21,
    1997) ..........................................................................................................20

*Rosario v. City of New York*,
    No. 18-cv04023 (LGS)(SDA), 2023 U.S. Dist. LEXIS 15512 (S.D.N.Y. Jan.
    27, 2023) ......................................................................................................9

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)........................................................8

*Ryu v. Hope Bancorp, Inc.*,
    No. 18-CV-1236, 2018 U.S. Dist. LEXIS 148513 (S.D.N.Y. Aug. 29, 2018)...................7, 10

*S.K. v. New York City Dep't of Educ.*,
    2023 U.S. Dist. LEXIS 40893 (S.D.N.Y. March 10, 2023) .......................7

*Salama v. City of New York*,
    No. 13-cv09006 (PKC), 2015, U.S. Dist. LEXIS 88728 (S.D.N.Y. July 8,
    2015) ............................................................................................................7

*Santos v. Yellowstone Props., Inc.*,
    15 Civ. 3986 (PAE), 2016 U.S. Dist. LEXIS 61994 (S.D.N.Y. May 10, 2016)........................8

*Sewell v. Bovis Lend Lease LMB, Inc.*,
    No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ...............6, 21, 22

*Simmons v. N.Y. City Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009)........................................................................6

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................5

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) .........................8

*Union of Orthodox Jewish Congregations of Am. V. Royal Food Distribs. Ltd.*
*Liab. Co.*,
   665 F. Supp. 2d 434 (S.D.N.Y. 2009)..........................................................................9

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010)..........................................................................................4

*Williams v. Metro-North R. R.*,
   No. 17-cv-03847 (JGK), 2018 U.S. Dist. LEXIS 109422 (S.D.N.Y. June 28,
   2018) ..........................................................................................................................8

**Statutes**

42 U.S.C. § 2000e-5(k) ...............................................................................................2, 4

**Other Authorities**

Nathan Koppel and Ashby Jones, "'Billable Hour' Under Attack," Wall St. J.,
   Aug. 24, 2009 (last visited on Aug. 19, 2024).........................................................11

## PRELIMINARY STATEMENT

Defendant City of New York ("defendant" or "City") respectfully opposes Class Counsel's Motion for Attorneys' Fees. The plaintiffs in this case alleged that the New York City Fire Department ("FDNY") underpaid its Fire Protection Inspectors ("FPIs") because of unintentional race discrimination. After reaching a $29,907,500 settlement, presently awaiting the Court's approval, affording class members up to $25,099,216 as back wages, *see* Dkt. No. 162-1 at ¶ III.3, counsel seek nothing less than a gross overcompensation in claimed attorneys' fees. Indeed, Class Counsel asks this Court to order the Qualified Settlement Fund ("QSF"), to be established by the parties' settlement, to pay them 30% of $27,500,000, the sum reserved for the "Damages Class," an exorbitant and unwarranted amount totaling more than three times their market rate. Not only would this violate the purpose of the common fund doctrine, but it would inequitably shift several million dollars from the class members' compensation to overpay their attorneys. Indeed, and when combined with a high modifier, excessive billing, and pie-in-the-sky hourly rates, Class Counsel's requested fees, totaling just over $8,000,000, are unreasonable. Therefore, the Court should deny Class Counsel's motion and impose multiple reductions in their attorneys' fees, assigning the QSF to pay Class Counsel a sum of $2,332,658 for fees and $246,739.77 in expenses.

## ARGUMENT

### POINT I

### THE REQUESTED SERVICE AWARDS ARE REASONABLE

The parties negotiated over and agreed upon the service awards here. The undersigned recognizes and appreciates the recipients' efforts in bringing the parties to an ultimate settlement. Therefore, defendant agrees that these awards are fair and reasonable and joins in Class Counsel's request for the QSF to pay $95,000 in service awards to the appointed recipients. Dkt. No. 178.

## POINT II

### THE REQUESTED ATTORNEYS' FEES ARE EXCESSIVE

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5(k). Plaintiffs are prevailing parties when they "succeed on any significant issue in litigation which achieves some of the benefit sought" in the lawsuit. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Bridges v. Eastman Kodak Co.*, 102 F.3d 56, 58 (2d Cir. 1996). Thus, where plaintiffs obtain a favorable settlement, they constitute prevailing parties and are entitled to attorney's fees. *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634-637 (S.D.N.Y. 2015); *see also Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)).

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983). In determining a reasonable fee award, both the Supreme Court and the Second Circuit have held that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183

(2d Cir. 2007)); *see also Hensley*, 461 U.S. at 433. Therefore, the Court should determine Class Counsel's fee award using the lodestar method, not the percentage of fund ("POF") method.

However, Class Counsel—Mehri & Skalet, PLLC ("M&S") and Valli Kane & Vagnini, LLP ("VKV")— request this Court to order the QSF to pay them fees in the amount of $8,150,000 – or 30 percent of the QSF reserved for the Damages Class – plus costs in the amount of $246,739,77. *See* Pl. Memo., ECF dkt. 182, *generally.* Defendant agrees that Class Counsel are entitled to reasonable statutory attorneys' fees. But awarding Class Counsel 30 percent of the QSF reserved for the Damages Class would be both unreasonable and unjust to the class members.

The QSF, once the settlement is approved, will total $29,907,500, of which $25,099,216 is attributed as back pay earned by the FPI Damages Class members. *See* Dkt. No. 120-1 at ¶ III.3. The remaining funds represent attorneys' fees and costs as well as hotly contested and negotiated interest. *Id.* at, *inter alia*, ¶¶ 1, 11, 12, I.37, III.3, IV.1, IV.2, IV.4, IV.9, and IV.18. Therefore, if the Court grants Class Counsel's fee application, it will create a windfall to counsel by paying them several times more than what a market rate and lodestar would yield. *EEOC v. Enterprise Ass'n Steamfitters Local No. 638*, 542 F.2d 579, 590 (2d Cir. 1976) ("the purpose of backpay is to make whole the victims of discrimination") (*citing Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). Such a result would be contrary to the purpose of the common fund doctrine.

**A. The Common Fund – or "Equitable Fund" – Doctrine Only Guarantees that Class Counsel Are Paid Reasonable Attorneys' Fees, not a POF.**

"From time immemorial it has been the rule in this country that litigants are expected to pay their own expenses, including their own attorneys' fees, to prosecute or defend a lawsuit." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, there are exceptions to this so-called "American Rule," where instead of attorney's fees being paid pursuant to a fee

agreement between a party and counsel, a court determines a fee award based on statutory requirements or equitable doctrines. These exceptions include fee-shifting statutes such as the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York City Human Rights Law ("CHRL"). *See, e.g., Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 562-63 (7th Cir. 1994) (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990)); *see also* 42 U.S.C. § 2000e-5(k).

      Another exception to the "American Rule" is the "common fund" doctrine, also known as the "equitable fund" doctrine, which Class Counsel seek to employ here. It is well-established that, under the common fund doctrine, "attorneys who create a fund for the benefit of a class of plaintiffs are entitled to ***reasonable compensation*** from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010) (emphasis added); *see also Goldberger*, 209 F.3d at 47. They are not entitled to a POF as Class Counsel claims. Indeed, while the Circuit's approach to calculating fees has "evolved in a somewhat circuitous fashion," *Id.* at 48, under the common fund doctrine, ***courts may either use a POF or a lodestar calculation in awarding fees***. *Id.* at 50 (emphasis added); *see also Fresno Cty.*, 925 F.3d at 66; *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

## B. The Circuit's Trend Toward the POF Method Is to Prevent Overly Compensating Class Counsel

      Class Counsel are correct that the trend in this Circuit is toward the POF method. *See* Pl. Memo. at 11; *see also, e.g., In re American Bank Note Holographics, Inc.,* 127 F. Supp.2d 418, 431 (S.D.N.Y. 2001). However, they conveniently fail to explain why. This is because the Circuit's reason for preferring this method does not support Class Counsel's fee application. Indeed, the Circuit often prefers the POF method because it is less likely to overly compensate

class counsel, precisely what Class Counsel ask this Court to do. Therefore, in the face of this discarded principle, the Court should deny their application.

In fact, a case that Class Counsel cites, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009), is precisely on point. There, the Court granted counsel one-third of the net settlement, which was equal to the Court's adjusted lodestar and resulted in a *negative multiplier* of 0.7. *Id.* at 505-514. The Court explained that such a high POF was appropriate because it created "no real danger of over-compensation." *Id.* at 515. Indeed, overly compensating counsel would fly in the face of public policy and the purpose of the "equitable fund" doctrine. Therefore, no less here, the Court should deny Class Counsel's fee request and instead award fees according to an adjusted lodestar, as described below. *See* Point II(D) *infra*.

### C.  The POF Method Is Meant to Mirror the Market Rate for Attorneys' Fees

The POF method is intended to mirror what the market would pay. *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-263 (S.D.N.Y. 2003) (a case Class Counsel points to where counsel was granted $500,000 for working 9,838.78 hours, yielding an hourly rate of $50.82) *citing In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (the goal of the fee setting process "is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"); *RJR Nabisco, Inc. v. U.S.*, 955 F.2d 1457, at *7 (11 Cir. 1992) ("What should govern such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases."). However, the lodestar analysis ensures that just that. *Perdue v. Kenny A.*, 559 U.S. 542 (2010) ("The prevailing market rate is the rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). Therefore, the Court

should apply the lodestar method and ensure that Class Counsel are not excessively paid. *Goldberger*, 209 F.3d at 50.

### D.  Class Counsel Are Entitled to a Reasonable Fee According to the Lodestar Analysis

A "presumptively reasonable fee" approach in determining a fee award considers: (1) the number of hours spent by counsel and other personnel that are deemed reasonably necessary to a successful outcome for the client and (2) a reasonable rate for counsel. *Millea*, 658 F.3d at 166 (*quoting Arbor Hill*, 522 F.3d at 183); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Sewell v. Bovis Lend Lease LMB, Inc*., No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, *37-38 (S.D.N.Y. Apr. 16, 2012).

#### (1)  Hourly Rates

Unlike Class Counsel's claim that M&S are entitled to rates according to "the Laffey Matrix for complex litigation in Washington, D.C.," Pl. Memo. at 19 *citing House v. Wackenhut Servs., No*. 10 Civ. 9476 (CM)(FM), 2012 U.S. Dist. LEXIS 118416, at *5-6 (S.D.N.Y. Aug. 8, 2012) (where the court notes that rates are only relevant if they are in the district of the litigation), the Second Circuit adheres to the forum rule, "which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.,* 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (*citing Simmons v. N.Y. City Transit Auth*., 575 F.3d 170, 176 (2d Cir. 2009)); *see also Luciano v. Olsten Corp*., 109 F.3d 111, 115 (2d Cir. 1998) (*citing Polk v. New York State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983)). Thus, the Laffey Matrices for Washington D.C. are irrelevant here.

To determine the reasonable rate, the Court "looks to the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672. The prevailing market rate is the rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Farbotko v. Clinton County of New York*, 433 F.3d 204, 208 (2d Cir. 2005); *see*

*also Reiter v. MTA New York City Transit Auth*., 457 F.3d 224, 232 (2d Cir. 2006) (*quoting Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

In this District, paralegals, generally, receive rates of $100 to $125 an hour, and "with evidence of specialized qualifications typically receive $120-or $125-per-hour." *C. B. v. New York City Dep't of Educ*., No. 18 Civ. 7337, 2019 U.S. Dist. LEXIS 111636, at *9 (S.D.N.Y. July 2, 2019) (collecting cases); *see R.P. v. New York City Dep't of Educ.*, 2022 U.S. Dist. LEXIS 76873, at *4 (S.D.N.Y. April 27, 2022) (concluding $125 was a reasonable hourly rate for experienced paralegals). *Travel Leaders Grp., LLC.*, No. 19-CV-1595, 2019 U.S. Dist. LEXIS 210850 at *41 (S.D.N.Y. Dec. 5, 2019) (finding that the reasonable rate for paralegals is $100/hr); *Andrews*, 118 F.Supp.3d at *642-643 (reducing paralegal's hourly rate from $290 to $100 in employment class action).

Evidence of special qualifications include "formal paralegal training, licenses, degrees, or certifications or longer paralegal experience." *C.B.*, 2019 U.S. Dist. LEXIS 111636, at *9; *S.K. v. New York City Dep't of Educ.*, 2023 U.S. Dist. LEXIS 40893, *21 (S.D.N.Y. March 10, 2023); *Ryu v. Hope Bancorp, Inc.*, No. 18-CV-1236, 2018 U.S. Dist. LEXIS 148513 at *18 (S.D.N.Y. Aug. 29, 2018) (awarding paralegal with 20 years' experience $200 and the paralegals with lesser experience $150 and $125/hr); *Clark v. Gotham Lasik, PLLC*, No. 11 Civ. 1307 (LGS)(JCF), 2013 U.S. Dist. LEXIS 119012 at *22 (S.D.N.Y. 2013) ("[P]aralegal fees at the rate of $175–185 per hour is higher than the market. Courts have generally found that paralegals should be awarded $100 per hour."), *adopted by, judgment entered by*, 2013 U.S. Dist. LEXIS 118138, 2013 WL 4437220 (S.D.N.Y. Aug. 20, 2013).

Moreover, Courts have found that hourly rates between $0 and $150 are reasonable for a law clerk's work. *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d at 508

(where the Court denied any compensation for clerks, finding their fees to be part of overhead); *see also Salama v. City of New York*, No. 13-cv09006 (PKC), 2015, U.S. Dist. LEXIS 88728 at *5 (S.D.N.Y. July 8, 2015)(finding $100 hourly rate for law student interns is reasonable); *Santos v. Yellowstone Props., Inc.*, 15 Civ. 3986 (PAE), 2016 U.S. Dist. LEXIS 61994, at *4 (S.D.N.Y. May 10, 2016) (awarding law clerk hourly rate of $125); *Ni v. Bat-Yam Food Servs. Inc*., 13 Civ. 7274, 2016 U.S. Dist. LEXIS 7782, at *7 (S.D.N.Y. Jan. 27, 2016) (awarding hourly rate of $120 to law clerk); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, at *14-*15 (S.D.N.Y. July 31, 2014) (awarding hourly rate of $125 to law clerk); *Manley v. Midan Rest. Inc.*, 2017 U.S. Dist. LEXIS 44560, *33 (S.D.N.Y. May 27, 2014) (finding that a $100 hourly rate for the work of the paralegal and an hourly rate of $100 for the law clerk's work are reasonable.).

Precedent in this district demonstrates that a reasonable hourly rate for a civil rights attorney in an individual case can range from $250 to $650 with the lower end reserved for experienced associates and the higher end reserved for experienced partners. *See Lilly v. City of New York,* No. 16-CV-322 (ER), 2017 U. S. Dist. LEXIS 129815 (S.D.N.Y. Aug. 15, 2017). However, courts in this district have awarded even higher hourly rates to experienced employment litigators with high reputations working on complex litigation. *See, e.g., Williams v. Metro-North R. R.*, No. 17-cv-03847 (JGK), 2018 U.S. Dist. LEXIS 109422, at *20 (S.D.N.Y. June 28, 2018) (citing *Houser v. Pritzker*, No. l0-cv-3105, ECF No. 377, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) (awarding hourly rates of $875 for partner; $850 for a senior counsel; $450 for an eighth year associate)); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) (awarding fees to a partner at an hourly rate of $675 in a discrimination case); *Au New Haven LLC v. YKK Corp.*, No. 15-CV-3411, 2018 U. S. Dist. LEXIS 3073 (S.D.N.Y. Jan. 5,

2018) ("district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour and rates for law firm associates in the range of $200 to $450 per hour") (internal citations and quotations omitted)); *Benihana Inc. v. Benihana of Tokyo LLC*, No. 15-CV-7428, 2017 U. S. Dist. LEXIS 211045 (S.D.N.Y. Dec. 22, 2017) (awarding fees ranging from $350 to $750 per hour); *Union of Orthodox Jewish Congregations of Am. V. Royal Food Distribs. Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (awarding a partner at a rate of $735 per hour; an associate at a rate of $445 an hour)*; Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (awarding experienced patent attorney $765 per hour); *Rosario v. City of New York*, No. 18-cv04023 (LGS)(SDA), 2023 U.S. Dist. LEXIS 15512, *20 (S.D.N.Y. Jan. 27, 2023) (awarding $400 hourly fee to a partner with 13 years of experience in civil rights litigation).

Just last year, the *Gulino* Court found that the following hourly rates for class counsel in this disparate impact race discrimination claim were reasonable:

> $650 per hour for partners; $500 per hour for counsel; $400 per hour for senior associates (class of 2014 and earlier); $350 per hour for mid-level associates (class years 2015-2018); $300 per hour for junior associates (class of 2019 and later); $175 per hour for paralegals. These rates also are in line with rates recently awarded in this District.

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 96 CIV. 8414, 2023 U.S. Dist. LEXIS 93257, *25-27 (S.D.N.Y. May 24, 2023), *citing Kastrati v. M.E.G. Rest. Enterprises Ltd.*, No. 21 Civ. 481 (KHP), 2023 U.S. Dist. LEXIS 6929, at **3-4 (S.D.N.Y. Jan. 13, 2023) (awarding rates of $650 for partner with significant employment law experience, $325 for associates that graduated in 2018 with three years employment law experience, and $300 for junior associate following significant, litigated discovery disputes that led to settlement of employment discrimination and retaliation case); *Homeaway.com, Inc. v. City of N.Y.*, No. 18 Civ. 7742 (PAE),

16

523 F. Supp. 3d 573, at **17-18 (S.D.N.Y. Mar. 1, 2021) (awarding similar rates in a complex civil rights case).

Here, Class Counsel are seeking between $508 and $997 per hour for their attorneys, $225 per hour for M&S's paralegals, and $200 per hour for VKV's law clerk, which are beyond the average rate for highly experienced attorneys and paralegals in this district. Specifically, M&S partners bill at a whopping $997 per hour (Lieder – class of 1984; Mehri – class of 1988; Eardley – class of 2003; Karsh – class of 1989. *See* Lieder Decl., Dkt. No. 124, at ¶¶ 42-45, and their senior associates, Aisha Rich (class of 2015. *See* Lieder Decl., Dkt. No. 124, at ¶ 46) and Desiree Langley (class of 2017. *See* https://www.linkedin.com/in/desire%C3%A9-langley-0163bb23/ ) bill at $773 per hour and $508 respectively, which is beyond the high range for experienced attorneys in this district.[1]

While M&S partners have significant experience in complex litigation and labor and employment law, they do not state what their customary billing rates are, nor do they submit any evidence, such as a retainer agreement, of billing at that rate in this or any other action. *Ryu v. Hope Bancorp, Inc.*, No. 18 CV 1236 (JSR)(KHP), 2018 U.S. Dist. LEXIS 148513 at *15 (S.D.N.Y. Aug. 29, 2018) ("An attorney's customary billing for a fee-paying client is ordinarily the best evidence of a reasonable hourly rate."), *adopted by, motion granted by, in part*, 2018 U.S. Dist. LEXIS 169660 (S.D.N.Y. Sept. 27, 2018). Thus, their requested rates should be disregarded.

For purposes of the lodestar, "[a] reasonable rate is the rate that a reasonable, paying client would be willing to pay." *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y. 2014) (internal quotation omitted); *see also Arbor Hill*, 522 F.3d at 184. In fact, the *In re Initial Pub. Offering Sec. Litig.* Court, a case Class Counsel uses to support their fee application, noted

---

[1] VKV partners bill at reasonable rates, which defendant does not seek to reduce.

that it is often the practice among law firms to accord clients a discount on fees while maintaining

high billing rates. 671 F. Supp. 2d 467, 506-508 (S.D.N.Y. 2009). Therefore, "while a partner's

stated hourly rate might be nine hundred dollars per hour [even less than M&S partners], the client

may not actually pay this rate. In addition, several firms have begun utilizing flat fees, which are

often substantially less than the fees a firm would receive if it billed by the hour." *Id.* at 506 *citing*

Nathan Koppel and Ashby Jones, "'Billable Hour' Under Attack," Wall St. J., Aug. 24, 2009,

http://online.wsj.com/article/SB125106954159552335.html (last visited on Aug. 19, 2024).

      Based on these two observations, the *In re Initial Pub. Offering Sec. Litig*. Court

reduced the hourly rates of their attorneys and paralegals and recalculated counsel's lodestar. The

Court found:

> In determining maximum rates for partners and associates, the Court considered the proposed hourly rates of the most senior partners and associates.
>
> For instance, Arthur Miller of Milberg LLP charges **$995 per hour. Such rate is clearly exorbitant.** Although senior partners from large law firms were known to charge such rates in 2007, it is hard to imagine clients … paying such rates. While [class counsel] may argue that Miller's high billable rate is justified by his status as a nationally renowned scholar of civil procedure, his expertise in that field was not instrumental in this case.

*In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d at 506-508 (emphasis added). Ultimately,

the Court reached an "adjusted lodestar" and reduced plaintiffs' fee request, which is precisely

what the Court should do here. *Id.*

      Here, the Court should order the QSF to pay Class Counsel's paralegals at a rate of

$125 per hour, their law clerk no more than $100 per hour, their associate Aisha Rich at a reduced

rate of $450 per hour, their associate Desiree Langley no more than $350 per hour, and their

partners at a rate of between $625 and $875 per hour, depending on the partner. Specifically, Lieder

and Mehri should be paid at a reduced rate of no more than $875 per hour – the highest hourly rate recognized by this district. Ellen Eardley and Joshua Karsh should be paid no more than $750 per hour, and all other partners should be paid at their requested hourly rate, $625 and $650.

### (2) Hours Expended

It is well-settled that hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in each case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar*, 506 U.S. at 114). Here, the success Class Counsel achieved possibly dwarfs what they could have obtained at trial and further fails to warrant their excessive billing for four or more attorneys at once.

Indeed, with respect to hours expended, Class Counsel provided contemporaneous billing records for the relevant time. Counsel claims they spent approximately 4,682 hours of time litigating this case from inception to the last time Class Counsel billed for work on this case. However, this number of hours is excessive.

As demonstrated by their records, Class Counsel sent at least four attorneys to every mediation session. *See Dkt. Nos.* 124-2 at 94-224 and 125-3 at 83-175. Considering that defendant was represented by a single attorney during all times of the litigation, including every session of the mediation, and defeated the class's attempts to gain equitable or programmatic relief, there was no need for Class Counsel to send or bill for so many attorneys at once. *Local 1180, Communs. Workers of Am. v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019) (Court refused to pay for more than three class counsel in an alleged disparate impact discriminatory pay case, noting

that, "a reasonable client would not agree to pay for the work of more than three lawyers in a case of this size and kind."). Therefore, the Court should reduce their billable hours by 20 percent.

Further warranting this reduction is the top-heavy staffing in this case. Of the 4,682 hours expended on this case, over 50% of the work was performed by partners charging significantly higher rates. Even with a fee reduction, the reasonable paying client cannot expect the lion's share of the work to be performed by the firm's most expensive staff. *See Homeaway.com Inc.*, 523 F.Supp.3d at 592 (reducing fees by an additional 15% where bulk of litigation was performed by partners and could have been pursed with less-partner-heavy staffing). Therefore, the Court should reduce Class Counsel's hours by 20 percent.

The Supreme Court has found that "trial courts need not, and indeed should not, become green-eyeshade accountants," "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).[2] Upon finding that counsel seeks compensation for excessive hours, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Carey*, 711 F.2d at 1146). Therefore, here, the Court should impose a reasonable 20 percent reduction in hours expended in this case, requiring the QSF to pay for Class Counsel's fees in the reduced amount of 3,745.60 hours, totaling $2,332,658. *See, e.g., Andrews,* 118 F. Supp. 3d at 644 (Court reduced fee request by 20 percent).

---

[2] The Second Circuit encourages district courts to apply their legal experience, billing judgment, and direct knowledge of the case, to estimate how much time should reasonably have been expended. *See DiFilippo v. Morizio*, 759 F.2d 231, 235-236 (2d Cir. 1985). "With respect to the evaluation of time sheets and expense records, "'it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'" *Daiwa*, 2002 U.S. Dist. LEXIS 23073, *4-6 (quoting *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65 (N.D.N.Y. 1998) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)) (reducing fees by 50 percent).

**E.  Even if the Court Uses the POF Method, Granting Class Counsel 30 Percent of the QSF Would Be Inequitable and Result in Counsel's Overcompensation**

Awarding fees in the amount of 30 percent of the class's recovery would result in an unwarranted windfall to Class Counsel. Indeed, counsel for these working-class FPIs would receive 3.5 times more than reasonable statutory fees and an adjusted lodestar. Worse yet, such a fee award would be taken from backpay that would otherwise go to these civil servant class members. Such an outcome is unfair and unnecessary because the QSF already includes sufficient funds to pay Class Counsel attorneys' fees according to an adjusted lodestar without touching a single cent of the class's backpay. *See* Point II(D) *infra*.

Moreover, if Class Counsel's fee application were granted, the average award per class member would go from $53,753.97 to just $37,679.01 per person. *See* Pl. Memo. at 25-26 (pointing out how a simple reduction of just 3.5 percent of their fee application amounts to almost $9,000,000). Rather, if the Court granted their fees according to an adjusted lodestar – or $2,332,658 – the average net award to each class member would be *increased* to $53,753.97.  Thus, the Court should use the adjusted lodestar analysis to determine what sum constitutes a reasonable attorney's fee in this action, not a POF. *Andrews*, 118 F. Supp. 3d at 637.

However, if the Court elects to use a POF method, it should only grant Class Counsel a low percentage that bears an inverse relationship to the settlement's amount. Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable. *Goldberger*, 209 F.3d at 52; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *6 (S.D.N.Y. Sept. 29, 2003). Thus, when applying a POF, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.

> [T]he percentage used in calculating any given fee
> award must follow a sliding-scale and *must bear an
> inverse relationship to the amount of the settlement*.
> Otherwise, those law firms who obtain huge
> settlements, whether by happenstance or skill, will be
> over-compensated to the detriment of the class
> members they represent.

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 *quoting In re Indep. Energy Holdings
PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, *6 (S.D.N.Y. Sept. 28, 2003)
(emphasis added).

Where the size of the fund is relatively small, courts typically find that requests for
a greater POF are reasonable. *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS
105775, at * 18 (S.D.N.Y. Sept. 16, 2011). However, here, Class Counsel admits that the
settlement is "remarkable." *See* Pl. Memo. at 1. Therefore, a POF, certainly one of 30 percent, is
inappropriate, and the Court should award fees according to the adjusted lodestar.

**F. Despite Which Method the Court Uses, the Analysis Is the Same, and Class Counsel
Are Not Entitled to Take 30 Percent of the QSF and Millions of Dollars of the Class's
Backpay Because It Would Result in Counsel's Overcompensation**

Regardless of which method the Court choses, the analysis is effectively the same. In calculating a reasonable common fund fee, district courts are to be guided by the
following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities
of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested
fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at
50. (alteration in original) (citation omitted). Most courts in this district also follow a three-step
approach in determining a fee award. First, they analyze the above factors to set a reasonable
hourly rate. Second, they review the attorneys' time entries to determine whether the amount of
time spent on the matter was appropriate. And third, courts make any other reasonable
adjustments. *Gulino*, 2023 U.S. Dist. LEXIS 93257, *22-24 *citing, e.g., Adorno v. Port Authority*

*of N.Y. and N.J.*, 685 F. Supp. 2d 507, 514-15 (S.D.N.Y. 2010) (Chin, J.), *reconsidered in part on other grounds*, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

However, in civil rights cases brought pursuant to Title VII, district courts must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. In assessing reasonableness, courts have traditionally looked to: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (declining to grant fee award in amount stipulated in attorney-client agreement).

Courts in the Second Circuit also look to: (1) the complexity and difficulty of the case; (2) the available expertise and capacity of the client's other counsel (if any); (3) the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics); (4) the timing demands of the case; (5) whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself; (6) whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent

23

remuneration); and (7) other returns (such as reputation, etc.) that an attorney might expect from the representation. *Arbor Hill*, 522 F.3d at 184.

### (1) Class Counsel Failed to Demonstrate that They Lost Clients or Work Because of This Case

Defendant does not deny that Class Counsel are highly experienced attorneys with excellent reputations. But that isn't the only factor in determining their reasonable fee. Counsel failed to demonstrate many of the factors required for gaining a high hourly rate or a modifier of the lodestar. For example, Class Counsel never mentioned whether their firms were forced to turn away clients or lose work because of the resources needed to represent this case. Considering how large and successful M&S and VKV are and their failure to mention otherwise, defendant can only surmise that they were not forced to do any such thing. Moreover, making any such assertions on reply would improperly deprive defendant from the ability to respond to those claims. Therefore, the Court should not consider granting Class Counsel a POF or a modifier of their lodestar; rather, it should grant them fees based on the adjusted lodestar above. *See* Point II(D) *supra.*

### (2) Class Counsel Failed to Demonstrate How Much the Case Was Worth Versus How Much They Achieved Through the Settlement

More importantly, Class Counsel boast of how remarkable the settlement is. *See* Pl. Memo. at 1. But they fail to show how much the case was worth had the class succeeded on all its claims at trial. Indeed, they neglect to note how much their claims may have been worth had the class been successful in gaining damages back to 2005 under a continuing violation theory. *Id., generally.* This is because such evidence would demonstrate that the amount Class Counsel achieved through this settlement possibly dwarfs the damages the class sought to gain if it succeeded at trial. Thus, the Court should only grant fees in the amount of the adjusted lodestar.

### (3) Class Counsel Failed to Demonstrate That This Case Was More Difficult than *Andrews* or *Local 1180*

*Andrews*, 118 F. Supp. 3d 630, and *Local 1180*, 392 F. Supp. 3d 361, are similar cases from this district against the City that alleged disparate impact discriminatory pay and compared two different titles like here. Indeed, the undersigned used these cases as guides for reaching a settlement in this case, and in neither of these cases was class counsel awarded anywhere approaching what Class Counsel asks for here.

In *Andrews,* the collective was comprised of 5,213 individuals employed by the City as School Safety Agents, a predominantly female group, alleging that they were paid less than Special Officers, a predominantly male group who performed similar work. 188 F. Supp. 3d at 633. The collective brought alleged disparate impact discriminatory pay under, among other things, Title VII and the Equal Pay Act, which involved liquidated damages. *Id; see also* Point II(D)(4)(ii)*.* After reaching a settlement, plaintiffs' counsel made a fee application asking for a POF. Not only did the Court deny them a POF, but it reduced the attorneys' fee rates to, variously, $250, $300, $450, and $575 per hour, the highest of which was reserved for an attorney having over 30 years of experience. *Id.* at 639-641.

The Court also applied a 20 percent reduction to their hours, finding that,

> "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." Accordingly, courts have endorsed utilizing percentage reductions as a "practical means of trimming fat" from a fee application.

*Andrews,* 118 F. Supp. 3d at 644 *quoting Carey*, 711 F.2d at 1146 (collecting cases).

It went on to explain that,

> An enhancement of the lodestar may only be awarded in "rare and exceptional" circumstances and the fee applicant bears the burden of proving that an enhancement is necessary through "specific evidence." … the Court finds that no enhancement is warranted.

25

*Andrews*, 118 F. Supp. 3d at 644-645 *quoting Perdue*, 559 U.S. at 554 (internal quotations omitted).

Here, Class Counsel failed to demonstrate that this case was any more difficult than *Andrews,* where the Court significantly reduced the lodestar and found no reason to grant a modifier. Indeed, this case does not involve liquidated damages. *See* Point II(F)(4)(ii), *infra.* So, if the Court grants Class Counsel's fee application, several million dollars of counsel's fees will be paid from the class's apportionment of backpay. Therefore, the Court should follow precedent and direct the QSF to pay Class Counsel fees in the amount of $2,332,658, the adjusted lodestar. This lodestar recognizes Class Counsel's skill, experience, and reputation by attributing them an hourly rate far more than counsel in *Andrews.* Therefore, granting them anything more would be unjust.

Finally, in *Local 1180,* the class alleged disparate impact discriminatory pay by comparing their title to other similar City titles and reached a settlement after five years of negotiation before filing suit. 392 F. Supp. 3d 361. There, class counsel requested 25 percent of the backpay award, which, *unlike here,* the parties agreed to.[3]

The *Local 1180* Court noted that,

> in some respects[,] the litigation was not complicated, it did have some complexities to it. For example, Plaintiffs needed to address standing issues, as well as issues regarding the joint employer doctrine. Moreover, the litigation involved over 2,000 class members.

392 F. Supp. 3d at 378-379. Importantly, none of those challenging factors are present here.

---

[3] To be clear, while Class Counsel claim that the parties agreed that Class Counsel would not seek more than 30 percent of the QSF, *see* Pl. Memo. at p. 19, this is not true. As per the settlement agreement, Class Counsel agreed not to seek more than 30 percent of the QSF, and defendant reserved its right to oppose counsel's fee application. *See* Dkt. No. 120-1 at ¶¶ III.3 and V.2. This is because the City vigorously opposes Class Counsel's request and has always made that clear.

Additionally, the *Local 1180* Court found that "Plaintiffs' requested fee of 25% of the Back Pay award is somewhat higher than what is reasonable." *Id.* at 379. Ultimately, the Court found "that an hourly rate of $600 is a reasonable rate for [the lead counsel, and b]ased upon [the other main attorney's] background and experience, … an hourly rate of $350 [wa]s a reasonable rate..." *Id.* at 381. There is no reason that Class Counsel should be entitled to a POF in the amount of 30 percent and several times their proposed lodestar that uses inflated hourly rated when the *Local 1180* Court awarded class counsel far less. Therefore, the Court should only order the QSF to pay Class Counsel, the adjusted lodestar amount of $2,332,658.

> **(4) The Cases That Counsel Uses to Support Their Position Are Either Inapposite or Support Defendant's Position**

> **i.  Unlike the Cases in Counsel's Brief, Class Counsel Did Not Attain Demanded Programmatic or Injunctive Relief Through This Settlement**

Class Counsel point to many cases that they claim support their position for receiving fees in the amount of 30 percent of the QSF. However, most, if not all, of them are inapposite. First, counsel points to *Roberts v. Texaco Inc*., No. 94 Civ. 2015 (CLB), 1997 U.S. Dist. LEXIS 23848 (S.D.N.Y. Mar. 21, 1997), to support their position that M&S are such impressive attorneys that they deserve 3.5 times more than their market worth. *See* Pl. Memo. at p. 9. However, in *Roberts,* counsel gained significant programmatic relief for a class of 1,348 persons in a $115 million settlement, yielding an average award of $63,000 per class member. Yet, even there, the Court awarded counsel just $204,054.09 in fees, a far cry from what they originally requested in that case – 30 percent of $115 million. Here, counsel did not achieve significant programmatic relief. The collective bargaining agreement for FPIs was not amended, and FPIs' salaries were not adjusted. Thus, there is no reason that Class Counsel should be paid more here than in *Roberts.*

Next, in *Chen-Oster v. Goldman Sachs & Co.,* No. 10-cv-6950-(AT-RWL) 2023 U.S. Dist. LEXIS 200333 (S.D.N.Y. Nov. 7, 2023), the parties reached a settlement after 13 years of protracted litigation, including an appeal of this Court's decision to grant class certification. Your Honor found that a fee award of 30 percent of the common fund, representing the claimed lodestar with a multiplier of 1.52, was reasonable. However, in that case, class counsel achieved a settlement that included back pay, front pay, compensatory damages, emotional distress damages, injunctive relief, punitive damages, and fees. *Id.* Additionally, plaintiffs' counsel achieved an adjustment to defendant's performance evaluation and promotion process and required them to perform a pay equity analysis. *Id.* at *9-13. Here, Class Counsel achieve nothing even close to that.

### ii. Unlike the Cases in Plaintiffs' Brief, Liquidated Damages Are Not an Available Remedy Here

Most of the cases Class Counsel use to support its request for 30 percent of the QSF are FLSA cases, which include liquidated damages. *See* Pl. Memo., *generally, citing, inter alia, e.g., Sewell*, 2012 U.S. Dist. LEXIS 53556, *37-38 (an FLSA settlement where the fee application was unopposed); *Flores v. Anjost Corp,* 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. 2014) (FLSA settlement where fee application went unopposed); *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467 (FLSA settlement where Court adjusted the lodestar down because plaintiffs' counsel were asking for inflated rates, the litigation spanned eight years, and the Court noted that "[t]his litigation will certainly go down in history as one of the longest and most protracted multi-district securities litigations in the country."); *Mercado v. Metro. Transp. Auth*., No. 20 Civ. 6533 (AT), 2023 U.S. Dist. LEXIS 84303 (S.D.N.Y. May 15, 2023) (FLSA settlement where Court approved a modifier of 1.59); *McNeely v. Metro. Life Ins. Co.*, No. 1:18-CV-00885-PAC, slip op. at 5-6 (S.D.N.Y. Jan. 15, 2020) (FLSA settlement where fee application was unopposed); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 U.S. Dist. LEXIS 157205 (S.D.N.Y. Nov. 4, 2014)

(FLSA settlement where motion for fees was unopposed and defendant asked the Court to grant the request. *See* Dkt. No. 49.); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (FLSA settlement with an unopposed fee application).

FLSA cases, like Equal Pay Act cases, involve liquidated damages equal to the amount of backpay. *Animas v. Balcon Quiteno Inc.*, No. 14-CV-3763 (CBA) (VVP), 2015 U.S. Dist. LEXIS 177666, *26 (E.D.N.Y. Sept. 14, 2015) ("The liquidated damages are calculated at 100% of the unpaid wages earned"). In cases involving liquidated damages, a fee application for 30, or even 50, percent would not result in part of the class's backpay being used to overly compensate their counsel. Instead, it would come from the liquidated damages. Therefore, this case is not properly compared to FLSA cases, and the Court should disregard them when making its decision.

### iii. Unlike Many of the Cases in Plaintiffs' Brief, Class Counsel's Fee Application is Opposed

As noted above, many of the cases Class Counsel used to support their request for fees in the amount of 30 percent of the fund are decisions on unopposed fee applications. *See* Pl. Memo., *generally, citing, inter alia, e.g., Sewell*, 2012 U.S. Dist. LEXIS 53556, *37-38; *Flores*, 2014 U.S. Dist. LEXIS 11026; *McNeely*, slip op. at 5-6; *Aboud*, 2014 U.S. Dist. LEXIS 157205; *Beckman*, 293 F.R.D. at 482. As evidenced by the parties' settlement agreement, Dkt. No. 120-1 at ¶ V2, and this opposition, defendant entirely opposes Class Counsel's fee application for 30 percentage of the QSF. The City neither agreed to nor intended Class Counsel to take part of the class's backpay, and the Court should disregard any decisions concerning unopposed fee applications when deciding this fee application.

### iv. The Adjusted Lodestar Accounts for the Litigation's Risk and Class Counsel's Skill, Experience, Reputation, and Work Performed

Class Counsel argue that they are entitled to a generous modifier of their proposed lodestar, derived from inflated hourly rates and excessive billing, because of the litigation's risk and their skill, experience, and reputation. However, the adjusted lodestar already takes these things into account, and courts have found as much regarding M&S. For example, the Court in *In re MagSafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353, *45 (N.D.C.A. Jan. 30, 2015), another case Class Counsel use to support their fee application, *see* Pl. Memo. at 22, found that M&S, who were appointed class counsel, failed to persuasively argue why a multiplier of just 1.2 should be awarded against a mega tech company.

There, the Court held that,

> Class counsel's time, labor, and skill, as well as the settlement amount involved[,] and the results obtained have been considered in the lodestar calculation... Accordingly, the court will decline to apply a multiplier.

*Id.* (internal citations omitted). If the court refused to grant Class Counsel a multiplier there, this Court should also refuse to grant them a multiplier here.[4]

### (5) Granting Class Counsel 30 Percent of the QSF Violates Public Policy

As the Supreme Court has pointedly noted, attorney's fees in cases involving public entities "are paid in effect by…local taxpayers, and because…local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Perdue*, 559 U.S. at 559 (2010); *Torres v. City of New York*, No. 18

---

[4] Additionally, in *Macey v. Wells Fargo Bank, N.A.*, No. 11-CJC-004654, 2014 Cal. Super. LEXIS 1299, *1-2 (C.A. Sup. Ct., San Francisco Cty., Mar. 5, 2014), the Court appointed, among others, M&S as Class Counsel. Class Counsel requested $1,000,000 in attorneys' fees to be paid from the Settlement Fund. The Court found that the attorneys' fees requested by Class Counsel were reasonable. The requested fees were one-third of the Settlement Fund, "and ***less than Class Counsel's unmodified lodestar***. This sum is well within the norm for contingency attorneys' fees and amply justified by Class Counsel's experience, the work performed, the risk undertaken, and the result achieved." *Id.* (emphasis added). This case differs because plaintiffs' requested percentage of 30 percent is far more than a lodestar analysis, and defendant is a local municipality, not a megabank. Thus, the requested award is unreasonable.

CV 3644 (LGS)(KHP), 2020 U.S. Dist. LEXIS 86863 at *11 (S.D.N.Y. May 18, 2020)( "The Court also is mindful that when the attorneys' fees are sought from a public entity, any fee awarded is paid by the local taxpayers and impacts the amount of money available for other public programs and services.")(internal citation omitted). With this cautionary note in mind, Class Counsel has utterly failed to justify their outsized demand for the payment of just over $8,000,000 to come from the public fisc. Accordingly, the Court should deny plaintiff's motion subject to a reduction in fees, totaling $2,332,658.

## CONCLUSION

For the reasons set forth above, Class Counsel's motion for attorneys' fees and costs should be denied and reduced to $2,332,658 by reducing M&S's paralegals' hourly rate to $125 per hour, VKV's law clerk's rate to $100 per hour, M&S's associates hourly rate to $350 per hour for Langley and $450 per hour for Rich, and M&S's partner rates to $750 per hour for Eardley and Karsh, and $875 per hour for Mehri and Lieder, and reducing their hours by 20 percent across-the-board.

Dated:    New York, New York
          August 23, 2024

Respectfully submitted,

**Muriel Goode-Trufant**
Acting Corporation Counsel of the City of New York
*Attorneys for Defendant*
100 Church Street, Room 2-117
New York, New York 10007
(212) 356-2078

By:    _____/s/_____
       Lora Minicucci
       Assistant Corporation Counsel

31