UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DARRYL CHALMERS, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v. 20 CV 03389

CITY OF NEW YORK,

Defendant.

Conference

------------------------------x

New York, N.Y.
March 17, 2025
10:00 a.m.

Before:

HON. ANALISA TORRES,

District Judge

APPEARANCES

MEHRI & SKALET, PLLC
Attorneys for Plaintiffs
BY: CYRUS MEHRI
MICHAEL LIEDER

VALLI KANE & VAGNINI, LLP
Attorneys for Plaintiffs
BY: SARA WYN KANE
MATTHEW L. BERMAN

NEW YORK CITY LAW DEPARTMENT
Attorney for Defendant
BY: LORA MINICUCCI

GLADSTEIN, REIF & MEGINNISS
Attorneys for Intervenor Plaintiffs
BY: JESSICA E. HARRIS

ALSO PRESENT:
Nicolette Moore

THE COURT: Good morning. We're here in the matter of *Chalmers v. City of New York*. Would you make your appearances, please?

MR. LIEDER: Michael Lieder of Mehri & Skalet in Washington, D.C., for the damages class and plaintiffs.

MR. MEHRI: Cyrus Mehri of Mehri & Skalet, along with co-counsel, representing the damages class and plaintiffs.

MS. KANE: Sarah Kane from Valli Kane & Vagnini, here with Matthew Berman. We're also representing damages class.

MS. HARRIS: Jessica Harris, Gladstein, Reif, Meginniss, representing the pay adjustment class, and I have with me an associate with my firm, Nicolette Moore, who is not yet admitted.

MS. MINICUCCI: Lora Minicucci for the City.

I just want to apologize for my lateness this morning. I miscalendered this. I'm very sorry.

MR. ASGAR ALI: I'm MD Asgar Ali. My son and I are in the damages class. He can say something if he's allowed?

THE COURT: You're asking whether he can speak?

MR. ASGAR ALI: Yes.

THE COURT: What is your name?

MR. SHAHRIAH: MD Shahriah.

THE COURT: Is that a member of the class?

MR. LIEDER: Yes. He's a member of the class. We have several of the damages plaintiffs here. He, Mr. Shahriah,

is a class member of the damages class.

THE COURT: He's not objecting to the settlement?

MR. LIEDER: No, he isn't. To the best of my understanding, and there's a bit of a language barrier, he believes he has a termination claim. I've been trying to explain to him that this is a pay claim, not a termination claim, but he can speak for himself.

THE COURT: All right. Sir, go ahead. You can step up to the podium if you would like. You can stand here.

MR. SHAHRIAH: I'm MD Shahriah. My father's name is MD Asgar Ali.

THE COURT: Sir, if you would speak a little bit more slowly to make sure that the reporter here can get down everything that you're saying. So, just talk a little more slowly. Okay?

Go ahead.

MR. SHAHRIAH: In connection with --

THE COURT: I can't hear you. Is that microphone on?

Step up to the microphone here, please.

MR. LIEDER: Is that your pen?

MR. SHAHRIAH: I don't know. I will take it back.

Is this sound clear?

THE COURT: Yes. Go ahead.

MR. SHAHRIAH: So, by my instruction from the Governor of the City of New York, I have tolerated a lot of things in

this country, but I have friends and a degree in engineering from Bangladesh. It was a painful destruction by the life of my humanist life. I have been destroyed. So, finally, I call the department, but it is not true that it is seemless or you can decide this is my fault, but my father was wrongfully terminated to -- it is my wrong word. So now true word --

THE COURT: Are you asking a question?

MR. SHAHRIAH: I'm saying truly now, the fact when I got the document of New York City Fire Protection Inspector, I completed the training, but they were -- illegally terminated to me, and that was the -- that's the cause to destroy my life. After that period, my soul was lost. They were saying in the class action that here is not okay, it is outside, because of a sample of many people. So I lost my connection. My father and mother won't -- understand he got the job. They came here, and they are now -- my father is lawyer in Bangladesh. He is now doing a gas station job. It is not -- it is okay, but it is not good for this situation.

THE COURT: So --

MR. SHAHRIAH: So I need to reinstate the job.

THE COURT: -- you're speaking on behalf of your father; is that correct?

MR. SHAHRIAH: On behalf of my construction --

THE COURT: You're speaking on behalf of yourself?

MR. SHAHRIAH: Yes.

THE COURT: I hear you're talking about your father, and I want to hear what it is that he has to do with this.

MR. SHAHRIAH: He's the lawyer, because no lawyer representing me.

THE COURT: You're saying your father is a lawyer practicing in Bangladesh, and he's here today.

MR. SHAHRIAH: Yes.

THE COURT: Okay.

MR. SHAHRIAH: Darren Connors, Glenn Mendez, James Nova, Fatima Rosemond, and I'm still victim.

THE COURT: Are you finished?

MR. SHAHRIAH: And I'm on this.

THE COURT: Did you finish?

MR. SHAHRIAH: Yes.

THE COURT: Okay. So, I hear you saying, sir, that you have suffered, and I'm sorry to hear that. The way to redress your grievance is to bring a case in a different forum. This lawsuit is not the right place to address your problem, so you need to seek legal assistance to find out how you should handle your grievance.

Do you understand?

MR. SHAHRIAH: Yes.

THE COURT: Okay. All right.

MR. LIEDER: Your Honor?

THE COURT: Yes.

MR. SHAHRIAH: No. It's a question of --

MR. LIEDER: Mr. Shahriah received a notice, because he's a class member. My understanding, and it may be incorrect, is that he was terminated in 2019. At this point, I'm afraid the statute of limitations is probably going to bar any claim that he has. I have tried to explain that, but I don't know that I'm coming across when I try to tell him that any claim would have needed to be filed a little bit -- several years ago.

THE COURT: So, sir, you really need to speak with an attorney, so the attorney can explain your rights.

MR. SHAHRIAH: So, I explain my situation. If you want to meet claim, then $1 million I'm claiming. It is your wish, you can increase and decrease.

THE COURT: What I'm saying is the case that we have here right now does not pertain to the situation that you're describing, so you need to seek legal assistance in order to address the specific problem that you have.

In the meantime, I'm going to continue with the hearing, so I'm going to ask you --

MR. SHAHRIAH: Last questions. I have sent written document before February 15 to those -- instructed to the lawyers in that letter. It is clear in the document that, in the written document. Mr. Lieder can show you. If he can -- he may present. That's it.

THE COURT: All right. You may step back.

We are here for a fairness hearing. May 1st, 2020, plaintiffs filed this action alleging that the City of New York discriminates on the basis of race with respect to pay disparities between fire protection inspectors and building inspectors. The City denies wrongdoing.

On November 26, 2024, I granted preliminary approval to the settlement parties had reached; directed distribution of the notice of proposed settlement to class members; and established procedures for class members to opt out of and object to the proposed agreement. Those procedures included a deadline of 60 days after the mailing of the notice of settlement for class members to file objections to and to request exclusion from the proposed settlement.

Plaintiffs now report that the settlement administrator has received no objections to the settlement, and no class member has requested to be excluded. Together, plaintiffs Darryl Chalmers, Darren Connors, Glenn Mendez, James Nova, Fatima Rosemond, and AFSCME District Council 37 Local 2507, and intervenor plaintiffs Branden Bowman and Sebastian Stack, all of whom I shall collectively refer to as "movants," seek final approval of the class action settlement. The City does not oppose final approval, nor does it oppose movants' requested service awards.

Movants also seek a court order awarding fees and

costs to their attorneys, which the City opposes.

In advance of today's proceeding, I have closely reviewed the parties' submissions filed in connection with movants' requests for final approval, service awards, attorneys' fees and costs.

Are there any further submissions?

MR. LIEDER: No, your Honor.

THE COURT: Please be seated.

I will start by addressing class certification. In my November 26 order, I found that I would likely be able to certify the movants' proposed classes. Specifically, I found that the two proposed classes, the damages class, comprised of all persons whom the City has employed as a fire protection inspector at any time between May 1st, 2017, and August 31st, 2023, and the pay adjustment class, comprised of all persons who have served as a fire protection inspector or associate fire protection inspector in the New York City Fire Department, that is, the FDNY, at any time between September 1st, 2023, and February 14, 2025, will likely satisfy the requirements of Federal Rule of Civil Procedure 23 for class certification. I also found that the process for providing class members with notice of the settlement satisfied the requirements of Rule 23(e) and due process.

To date, nothing has changed that would affect my view of the class certification issues. The fact that more than

99 percent of class members appear to have received effective notice of the settlement provides only further support for the reasonableness of the settlement notice provisions.

I therefore find, by a preponderance of the evidence, that the damages and pay adjustment classes satisfy the requirements of Rule 23 for the reasons stated in my November 26 order.

I further find that notice of the settlement has been provided to class members in a reasonable manner, satisfying the requirements of both Rule 23(e) and due process.

Accordingly, I certify the damages class and the pay adjustment class for purposes of a judgment on the settlement. I will now consider the settlement.

The proposed settlement establishes a settlement fund of $29,907,150, which will be used for class member settlement awards, attorneys' fees, and costs for the damages class counsel, administrative expenses and service awards for certain class members. In addition to the nearly 30 million I just described, the City will also pay into the settlement fund its share of employment taxes and pension contributions for class members' back pay once those amounts are determined, although the lawyers representing the damages class will be paid out of the settlement fund. Any payment awarded to the lawyers representing the pay adjustment class will be made outside of the fund.

Under the settlement, each class member is entitled to a share of the amount of the settlement fund that remains after deductions for service awards, administrator and expert fees and expenses, and applicable attorneys' fees and costs. The share of the fund that each class member receives will be determined by factors such as the class or classes of which the member is a part; the position or positions they have held in the FDNY; the length of their employment in a qualifying position; the differences in average pay between their fire protection inspector position and the corresponding building inspector position; and the number of straight and overtime hours worked during the relevant period.

Awards for pay adjustment class members will be calculated first, and pay adjustment class members will receive 100 percent of the difference in wages they would have received if they were paid at the corresponding building inspector level for the hours worked during the period of time covering the pay adjustment class.

Damages class members will be allocated the remainder of the settlement fund after distributions to pay adjustment class members. Awards to damages class members will be allocated based on the length of the members' tenure as a fire protection inspector, and the difference between that members' salary and the average salary of comparable building inspectors for each year of employment.

All damages class members will receive a minimum award of $500, and the average award is expected to be around $34,500.

Many members of the pay adjustment class are also members of the damages class. They will, therefore, be entitled to awards corresponding to both classes.

As compensation for their work in this case, the lawyers representing the damages class seek $8,150,000 in attorneys' fees and $246,739.77 in costs. The requested attorneys' fees award is based on 30 percent of the amount of the settlement fund that the lawyers estimate will remain after distributions are made to the pay adjustment class, but before deductions for any costs, expenses, or fees. In other words, damages class counsel seeks approximately 30 percent of the settlement amount attributable to the damages class.

The approximately $250,000 in costs for which damages class counsel seeks reimbursement is based on the expenses that the lawyers have incurred in litigating this case over the past five years. As I stated previously, any attorneys' fees or costs that I award to damages class counsel will be deducted from the settlement fund directly.

The lawyers representing the pay adjustment class seek $109,527.50 in attorneys' fees and $1,335.72 in costs. If awarded, these amounts will not be deducted from the settlement fund, but, rather, will be paid separately by the City.

Finally, the settlement provides service awards of $20,000 to plaintiff Darryl Chalmers; $15,000 each to plaintiff's Darren Connors, Glenn Mendez, James Nova, and Fatima Rosemond; $10,000 to class member Michael Reardon; and $2,500 each to intervenor plaintiffs Branden Bowman and Sebastian Stack, subject to Court approval.

Under Federal Rules of Civil Procedure 23(e)(2), a court may approve a class action settlement provided it is fair, reasonable, and adequate. To determine whether the settlement is substantively and procedurally fair, courts apply the factors set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974) as well as the factors listed in Rule 23(e)(2)(C). Together, these include:

The adequacy of representation;

The existence of arms-length negotiations;

The adequacy of relief, including the reasonableness of the settlement fund in light of the defendant's ability to withstand a greater judgment, the best possible recovery, and the attendant risks of litigation;

Whether the settlement treats class members equitably;

The effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims;

The amount in terms of any requested attorneys' fees and costs; and

The reaction of the class to the settlement.

All of the *Grinnell* and Rule 23(e)(2)(C) factors weigh in favor of approval here.

The named plaintiffs and class counsel have adequately represented the class. As I explained in my November 26 order, the representative plaintiffs and class counsels' interests are not at odds with those of the class members. The damages class and the pay adjustment class are represented by separate counsel, with no conflict of interest. The plaintiffs representing the pay adjustment class, Branden Bowman and Sebastian Stack, are members of only that class. As I stated in my November 26 order, as well as in my September 19, 2022, class certification decision, class counsels' experience in other cases and their work on behalf of the classes in this case demonstrate they're qualified and experienced to represent the classes here.

There is no indication that the settlement was reached through collusive negotiations. The record reflects that the parties engaged in arms-length bargaining. First, over nine months before an experienced and respected JAMS mediator; and, second, after intervenor plaintiffs joined the lawsuit, over multiple weeks in private negotiations led by counsel. This arms-length bargaining by experienced attorneys raises a presumption that the settlement meets the requirements of due process. *See Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396

F.3d 96, 116 (2d Cir. 2005).

The settlement was reached after five years of litigation that involved expansive discovery, including large amounts of payroll data, preparation of expert reports, depositions of fact and expert witnesses, as well as motion practice, including two motions to dismiss, a motion for class certification, and *Daubert* motions.

Accordingly, I find that counsel has had sufficient information to act intelligently on behalf of the classes in negotiating a settlement. It is possible and perhaps likely that the City could withstand a greater judgment. However, taking into account the best possible recovery and the risks that class members would face if they proceeded to trial, the settlement is reasonable. Considering the plaintiffs' relatively novel and untested legal theories, the settlement amount is substantial, and it includes compensation for claims that extend beyond the statute of limitations under the continuing violation doctrine.

The settlement also ensures that any relief class members receive is timely and comes without the expense and risks of lengthy and complex litigation, including the risk that class members ultimately could receive nothing for their claims. The settlement treats class members equitably relatively to one another. It ensures that members of the narrowly time-bounded pay adjustment class receive their full

awards before distribution is opened up to the larger damages class, whose members are entitled to a minimum payment of $500 and are expected to receive average awards totaling more than $30,000, depending on objective factors such as the members' length of tenure in their position, the positions they held during that time, their hours worked, and the comparable pay of building inspectors. The proposed service payments total $95,000, or less than half of one percent of the settlement fund, and are, therefore, not so large as to render the settlement inequitable.

Additionally, I find that the settlement's method of distributing relief to class members is effective. All class members have been identified, and more than 99 percent were successfully contacted through the settlement's notice provisions. The settlement provides for the settlement administrator, as well as a neutral expert, Charles Scherbaum, to calculate and process class member awards.

By April 23, the administrator will mail each pay adjustment class member a letter setting forth that member's award, as calculated by Mr. Scherbaum, based on the neutral formula provided in the settlement. After allowing members an opportunity to object to their awards, the administrator will distribute payment to the pay adjustment class members.

By June 2nd, the administrator will inform Mr. Scherbaum of the amount of money that remains to be

distributed to damages class members. Mr. Scherbaum will then calculate the awards for damages class members. After giving counsel the opportunity to resolve any disagreements over the awards and the City the opportunity to calculate the amount of money to be withheld for pension purposes, all money left in the settlement fund will be distributed to damages class members in accordance with each member's award. Overall, this distribution process is sensible, fair, and efficient.

I also find that the attorneys' fees and costs sought by class counsel are reasonable in relation to the settlement. The amount of fees and costs awarded to the pay adjustment class counsel will have no impact on class members' recovery, because it will be paid outside of the settlement fund. The amount sought by damages class counsel, which will be deducted from the fund, amounts to less than one-third of a reduced portion of the fund, specifically, the portion that is attributable only to the damages class.

In other words, damages class counsel's requested fee and costs has no material impact on the relief available to the pay adjustment class, and pay adjustment class counsels' request has no impact on the relief available to the damages class.

Finally, no class member has objected to the settlement or sought to be excluded from it. This is a strong indication of the settlement's fairness. *See In re Electronic*

*Books Antitrust Litigation*, 639 F. App'x 724, 727 (2d Cir. 2016).

Taking all these factors into account, I find that the settlement is fair, reasonable, and adequate. I, therefore, approve it.

I will now address the matter of attorneys' fees and costs. As I stated earlier, movants seek an award of $8,150,000 in attorneys' fees for the lawyers representing the damages class, that is, the lawyers who initiated this lawsuit five years ago.

Movants also seek about $250,000 to reimburse those lawyers out-of-pocket costs incurred during the course of the litigation. In determining what constitutes a reasonable attorney's fee, I look to the factors set forth by the Second Circuit in *Goldberger v. Integrated Resources Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). These include:

The time and labor expended by counsel;

The magnitude and complexities of the litigation;

The risk of the litigation;

The quality of representation;

The requested fee in relation to the settlement; and

Public policy considerations.

The Supreme Court has held that when counsel has created a common fund, attorneys' fees are properly determined based on a percentage of the fund, a method endorsed by the

Second Circuit in *Goldberger*. *See Blum v. Stenson*, 465 U.S. 886, 900 at footnote 16 (1984); *Goldberger*, 209 F.3d at 48-49.

Still, courts will also calculate the lodestar as a cross-check to ensure the reasonableness of class counsels' percentage rate fee request. The lodestar looks at whether the award sought by the lawyers is within a fair multiple of the total number of hours the lawyers reasonable billed at a standard hourly rate. As I mentioned earlier, this was a complex case that entailed significant risk and required substantial time and labor from class counsel, who performed at a high level and litigated this case for a period of five years, fronting significant out-of-pocket costs and foregoing other streams of revenue with no guarantee of payment.

The award sought for the damages class attorneys was less than one-third of a reduced portion of the fund's amount. Specifically, the portion that applies only to the damages class. Courts in this district routinely approve attorneys' fees of one-third or less of a common fund. *Rodriguez v. It's Just Lunch International*, 07 Civ. 9227, 2020 WL 1030983, at *10 (S.D.N.Y. March 2, 2020).

Based on the number of hours the attorneys have billed in this case, multiplied by the billing rates that correspond with their position and experience, the attorneys' claimed lodestar amount is approximately $3.7 million. Accordingly, the fee that the attorneys seek is about 2.23 times greater

than the lodestar amount.

Courts ordinarily accept a reasonable multiple of the lodestar amount as a measure of compensation for the risk that the attorneys took on in bringing a lawsuit such as this. Indeed, the multiplier of 2.23 is well within the range of multipliers applied by courts in this circuit in common fund cases. *Pearlstein v. Blackberry Limited*, 13 Civ. 7060, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022).

The billing rates used to calculate damages class counsels' lodestar are also reasonable. The hourly billing rate set forth from $225 for law clerks to $997 for senior partners with at least 20 years experience. These rates are comparable to those courts have approved for peer law firms litigating complex and novel civil rights matters of similar magnitude in this district. Having reviewed the billing records and compared them against those submitted in similar cases, and having considered the complexity of this case, I agree with movants that damages class counsel did not overstaff this matter or engage in unreasonable, top heavy billing.

Ultimately, courts in this circuit continue to award two to three times the lodestar in class action settlements. *Johnson v. Brennan*, 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. September 16, 2011). In 2023, the Second Circuit affirmed a fee award of $523,000,000, which resulted in a lodestar multiplier of 2.45, which is far above the lodestar

multiplier here. *Fikes Wholesale, Inc. v. HSBC Bank USA*, 62 F.4th 704, 726-27 (2d Cir. 2023). This lodestar cross-check underscores that the requested fee award is reasonable and does not constitute a windfall for damages class counsel.

Movants also seek an award of costs to reimburse damages class counsel for court fees, experts, discovery management and legal research. This request is supported by documentation and, given the length and complexity of the litigation, is reasonable.

I also find that the fees and costs requested for the pay adjustment class counsel are reasonable. The fees will be paid separately by the City and will have no impact on the award made to any class members. Even so, as a measure of the fees' reasonableness, I have considered the fact that the requested $109,527.50 in fees amounts to only 15 percent of the more than $700,000 in additional pay adjustments that counsel secured with a pay adjustment class, and only about 5 percent of the total estimated distribution that will go to pay adjustment class members from the settlement fund.

The billing rates used to calculate pay adjustment class counsels' lodestar are also reasonable. The hourly billing rates range from $125 for a law clerk, to $600 for a named partner with 46 years experience. These rates are reasonable for the reasons I described earlier. See also *Lewis v. American Sugar Refining, Inc.*, 14 Civ 2302, 2019 WL 116420

at *4, (S.D.N.Y. January 2, 2019).

The City contends that the hours pay adjustment class counsel expended in this matter are excessive and should be cut by 30 percent across the board in large part because by the time pay adjustment class counsel entered the picture, this matter was already settled in principle.

I disagree. I rejected the settlement in principle that the City refers to precisely because it did not involve the participation of independent counsel to represent the interests of the pay adjustment class. When intervenor plaintiffs joined this action, represented by pay adjustment class counsel, they were entering a case in which the slate had been wiped clean, and any resolution, including trial, was possible.

To carry out their duty to their clients in an independent and effective manner pay adjustment class counsel expended significant hours reviewing discovery and forming their own judgment of the claims and the possible negotiated resolutions.

Having reviewed the billing records submitted by pay adjustment class counsel, I find that the hours they expended and their allocation of attorney time, are reasonable given the complexity of the case and the delicate negotiations into which they entered with the City and the damages class. I, therefore, agree with the movants that damages class counsel

did not over-staff this matter, engage in unreasonable "top-heavy" billing, or utilize overly vague billing records.

I also note that no class member has objected to any of the proposed fee and cost awards.

Accordingly, I award the damages class counsel $8,150,000 in attorneys' fees and $246,739.77 in costs, and I award the pay adjustment class counsel $109,527.50 in attorneys' fees and $1,335.72 in costs.

Finally, I approve the $20,000 service award to plaintiff Darrell Chalmers, the $15,000 awards to plaintiffs Darren Connors, Glenn Mendez, James Nova, and Fatima Rosemond; and the $10,000 award to class member Michael Reardon; and the $2,500 award to intervenor plaintiff Branden Bowman and Sebastian Stack.

Service awards "are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes v. Altamarea Group, LLC*, 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. August 16, 2011). Service awards may also be used to compensate non-named plaintiff class members like Michael Reardon, who devote substantial time and energy to assisting the case.

The representative plaintiffs in this case estimate

that they have dedicated between 100 and 500 hours of their time toward this case over the past five years. They sat for depositions, answered discovery requests, participated in strategy sessions, reviewed documents for accuracy, prepared declarations, liaised with class members, and participated in the mediation sessions that resulted in the settlement. By identifying themselves on the public docket and speaking about their experiences in the FDNY, they took on reputational risk and emotional burdens.

I also find that the service awards for the pay adjustment class representatives are appropriately discounted to account for the fact that they did not go through the discovery process. A modest service award is appropriate for these plaintiffs because of the reputational risk they took on and for their participation in this complex process that resulted in the settlement approved today.

A modest service award is also appropriate for class member Michael Reardon. Although he did not ultimately become a named plaintiff in this matter, Mr. Reardon was instrumental in organizing the lawsuit. He was involved in all strategy conferences; he participated in in-person mediation sessions; and he served as a liaison with other class members.

Finally, I note that the City does not oppose the requested service awards, and the administrator has not received any objection to the awards.

For all of these reasons, I find that the proposed service awards are reasonable payments for the time and effort the named plaintiffs, the named plaintiff-intervenors, and the class member have expended in this case.

In sum, I approve the parties' settlement, the request for attorneys' fees and costs, and the service awards.

Are there any further applications?

MR. LIEDER: Nothing from damages class.

MS. MINICUCCI: Nothing from the City, your Honor.

MS. HARRIS: Nothing from the pay adjustment class, your Honor.

THE COURT: I'd like to thank the attorneys representing the parties, as well as the plaintiffs that I just mentioned --

MR. LIEDER: They are in the back there.

THE COURT: -- who have dedicated their time and efforts to see this case through. Congratulations are in order to all of those involved in bringing this case to a fair and just resolution.

The matter is adjourned.

(Adjourned)